**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SOLO INVESTMENT, LLC, | ) | |
| | ) | |
| BOZENA TARNASIEWICZ, | ) | Case No. |
| | ) | |
| JAROSLAW TARNASIEWICZ, | ) | Hon. |
| | ) | |
| and | ) | |
| | ) | |
| SYLWIA TARNASIEWICZ, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GMINA LUDWIN, a political subdivision of | ) | |
| the Republic of Poland, Ministry of Justice | ) | |
| (Ministerstwo Sprawiedliwości) Department | ) | |
| Współpracy Międzynarodowej i Praw | ) | |
| Człowieka, Al. Ujazdowskie 11, 00-950 | ) | |
| Warsaw P.O. Box 33 Poland, | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiffs Solo Investment, LLC ("Solo"), Bozena, Jaroslaw, and Sylwia Tarnasiewicz,

members of the Tarnasiewicz Family (hereinafter collectively referred to as "Plaintiffs") bring

this Complaint against Defendant Gmina Ludwin (hereinafter referred to as the "Commune"),

a local Polish municipality commune near Lublin, Poland and a political subdivision of the

Republic of Poland, in order to be reimbursed for the illegal expropriation by the Commune, a

governmental arm, of a Polish holiday resort property in which Plaintiffs had invested their life

savings, leaving the family without any further recourse and legal remedy after, as described

below, all of their Poland-based remedies have been exhausted.

## INTRODUCTION

Plaintiffs constructed a holiday resort on government-owned land (hereinafter referred

to as the "Resort") and entered into a contract with the Commune for the Resort to be

transferred to Plaintiffs upon their completion of its development. However, after being forced to construct the Resort on government property and to spend over 20,000,000 PLN (over $5 million dollars) of their own money, the Commune representatives in their official positions in effect expropriated the property fraudulently and in violation of international law and the *Treaty Between the United States of America and the Republic of Poland Concerning Business and Economic Relations*, Mar. 21, 1990, *amended* May 1, 2004, T.I.A.S. 94-806, 2016 WL 7021002 (hereinafter referred to as the "U.S.-Polish Treaty" or the "Treaty"). Put another analogous way, the Commune expropriated the property in violation of the Agreement they entered into with Plaintiffs and denied Plaintiffs the bargained-for right to buy the land upon completion of construction as promised. The ostensible "excuse" was that there were third-party encumbrances; encumbrances which the Agreement explicitly had represented were non-existent. The apparent concealment and/or misrepresentation of this fact, the bad-faith negotiations, and the false reassurances by a Polish state-unit, acting in a commercial as opposed to a "governmental" manner, make this case ripe for review by this Court.

The individual Plaintiffs, dual residents of the United States and Poland, and Plaintiffs' development company have unfortunately exhausted all of their Polish and even international remedies. To clarify the issue, Plaintiffs now come before this Court seeking not a review of the discretionary actions of a foreign political institution and/or the possible procedural errors committed by a foreign court. Instead, what this Court is being asked to undo is a blatant action taken against an American family to strip them of their life savings and deceive them in a commercial transaction which was entirely fraudulent and which we believe is legally reviewable under the commercial activities exception to the Foreign Sovereign Immunities Act ("FSIA') and the U.S.-Polish Treaty.

## **THE PARTIES**

1.      Plaintiff Solo Investment, LLC ("Solo") is a limited liability company

organized under Polish law, which, as is described below, was the entity which held the contractual rights to purchase, own, and manage the Resort and is the successor-in interest to Antar, Ltd., the original family-run company which executed the Agreement with the Commune.

2.      The remaining three (3) Plaintiffs are members of the Tarnasiewicz family, who reside in the United States, and constitute the executive board members of Solo. Bozena and Sylwia Tarnsiewicz are the sole owners and sole shareholders of Solo. Jaroslaw is a general manager and representative of Solo. All three members are citizens of the United States, residing in Chicago, Illinois.

3.      Gmina Ludwin (the "Commune") is a "political subdivision" (as defined in 28 U.S.C. § 1603(a)) of the Republic of Poland.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction and personal jurisdiction over the Ludwin Commune under 28 U.S.C. §1330 (a) and (b), as Defendant is not entitled to immunity under 28 U.S.C. §§ 1605-7 (the Foreign Sovereign Immunities Act) ("FSIA"). Process shall be served on Defendant in accordance with U.S.C. § 1608.

5.      Jurisdiction is further based on 28 U.S.C. §§ 1603(a) and 1605(a)(3), which provide, in pertinent part, that the Commune as an instrumentality of a foreign state (including a political subdivision thereof), is not immune from suit where, as here, that instrumentality is engaged in a commercial activity in the United States []".

6.      The "commercial activity in the United States" in this proceeding arises out of the development and ownership rights in the Resort Piaseczno (referred to above and below as the "Resort"), which Plaintiffs allege were wrongfully expropriated by the Commune's representatives from its rightful owners, in violation of public and private international law.

7.      The Commune is directly engaged in commercial activity within the United

States through the promotion and advertising of the Resort in the American media as a Polish vacation spot.[1]

8.    Plaintiffs submit that all acts of expropriation, including acts of discrimination, without just compensation violate customary international law.

9.    The Treaty between the United States of America and the Republic of Poland Concerning Business and Economic Relations, provides another basis for this Court's jurisdiction on separate but consistent grounds. The relevant portion of the Treaty, which is attached in its entirety as Exhibit "B" to this Complaint, reads as follows:

> "A national or company of either Party that asserts that all or part of its investment has been expropriated shall have a right to prompt review by the appropriate judicial or administrative authorities of the other Party to determine whether any such expropriation has occurred and, if so, whether such expropriation, and any compensation therefor, conforms to the provisions of this Treaty and to principles of international law."

*Treaty Between the United States of America and the Republic of Poland Concerning Business and Economic Relations*, art. VII, Mar. 21, 1990, *amended* May 1, 2004, T.I.A.S. 94-806, 2016 WL 7021002. Separately, under the text of the Treaty mentioned, subject matter jurisdiction also exists here because the FSIA denies immunity to any foreign state which "has waived its immunity either explicitly or by implication." 28 U.S.C § 1605 (a) (1).

10.    Venue is proper in this judicial district under 28 U.S.C. §1391(f)(4) because the action is brought against the Commune, a political subdivision of the Republic of Poland, all of the individual Plaintiffs reside within this federal district and Plaintiff Solo operates most of its real estate investment activities from Plaintiffs' residence in the Chicago metropolitan area.

## STATEMENT OF FACTS

11.    In 2006, Plaintiff Jaroslaw Tarnasiewicz (hereinafter referred to as "Plaintiff JT" or "JT"), was the owner (with his immediate family) of Antar LLC ("Antar"), a successful

---

[1] *See* Exhibit "A", which is a true and correct copy of an example of a representative advertisement which was published in or around July of 2020.

real-estate development company. Knowing of Antar's success in real estate development, both in Poland and in the United States, including the successes of Jaroslaw Tarnasiewicz as a U.S. developer, the Commune solicited Antar to invest in the construction of a new family-run Polish holiday resort, under the name "Resort Piaseczno," in exchange for Antar obtaining the first right to purchase the underlying real property.

12. During the negotiations between the parties, Plaintiffs informed the Commune representatives that they desired to invest in the costly construction work only after the acquisition of the land was completed. Defendant's representatives advised Plaintiffs that they were insisting on the sale not taking place before the end of construction because they were concerned that Plaintiffs might otherwise sub-divide the land into smaller plots and sell them for a quick profit as opposed to building a holiday resort. The Commune therefore proposed that Plaintiffs lease the land with the right to immediately acquire it after completing the agreed-upon investment. Plaintiffs accepted these terms.

13. During the negotiations, Defendant's representatives specifically and continually reassured Plaintiffs that there were no third-party claims against the Resort property.

14. On February 15, 2007, the parties entered into the above-referenced Agreement. The Agreement contained several relevant and important representations based on verbal assurances provided to Plaintiffs in the course of the negotiations. These key provisions included the following:

(i) Section 1, point 1 stated that the "Lessor declares that he is the owner of the property constituting the plots marked in the land register of the village of Rozpłucie Pierwsze No. 90 and 94/2 with a total area of 9.1 ha. pursuant to the decision of Wojewoda Lubelski GP.GT-2/8237/1 / WL-2/32/91 at 09/10/1991."

(ii) Section 1, point 4, defined the Agreement's "purpose" as "the adaptation of the property by the Investor to run a modern holiday resort."

(iii) Section 12, point 1, declared that "The Lessee has the right to purchase the subject of the lease contract in the way of no tender (no auction) on the terms

specified in separate regulations (in the case of development based on a building permit)."

(iv) In Section 2, the Commune represented, that "The Lessor declares that the real property indicated in § 1 is free from all encumbrances and rights in property and liabilities of third parties and does not know about any circumstances that preclude the use of real property for running a holiday resort."

(v) Section 5 authorized the Plaintiffs to assign the Agreement to any entity with the consent of the Commune.

(vi) Section 9 provided that the settlement of investments would be made by a protocol acceptance of costs by the Commune based on cost estimates specifying the value of Plaintiffs' aggregate expenditures.

*See* Agreement attached to this Complaint as Exhibit "C".

15.     As noted in the Agreement, Plaintiffs were to undertake various construction improvements and would then be entitled to purchase the land. Defendant's representatives were well aware, and the language and intent of the Agreement made quite clear, that Plaintiffs had entered into the transaction to ultimately purchase the real property. (*Solo Investment LLC v. Ludwin Commune*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D", and *Solo Investment LLC v. Ludwin Commune*, Case No. IV CSK 214/17 (Supreme Court of Poland, Feb. 6, 2018), Exhibit "E", ***concurring***). After purchasing the real property Plaintiffs were to manage, and ultimately either sell the Resort or obtain bank financing to recover the substantial funds expended in its development.

16.     During the signing of the Agreement, the Commune's personal lawyer altered the contract templates to deprive Plaintiffs of the right to unilaterally terminate the contract with the possibility of obtaining reimbursement for the Plaintiffs' expenditures.[2] This was noticed only after the contract was executed and immediately reported to the Commune.

---

[2] For example, the Commune's lawyer deceitfully removed **"and § 10"** ("the lessee has the right to terminate the contract with a 12-month notice period") from § 11, point 2 (describing that after termination of the contract, the Lessor is obliged to return the expenses incurred by the lessee). This created a great contractual imbalance by safeguarding only the Commune's interests solely and limiting Plaintiffs protections to §8 point 1 (providing that the contract can be terminated by mutual agreement).

Despite numerous assurances by Defendant's representatives that this substitution did not affect the right to purchase the land, the Commune never corrected it.

17.    In 2007, immediately after executing the Agreement, Plaintiffs proceeded to implement their plan, which included the construction and development of almost twenty-three (23) acres of real estate and the development of a portion of the lake, with accompanying design, preparatory work and demolition. The Commune approved expenditures related to this work that amounted in the aggregate to 1,073,665.51 PLN.

18.    Early in 2008, Antar mistakenly built two sanitary buildings without obtaining all of the necessary permits. This resulted in Antar being instructed to (and agreeing to) immediately dismantle the buildings. After the Ministry of Infrastructure inspected the property, the Commune's representatives reported that there would be no further regulatory problems. Despite this representation, the "illegal building issue" was later used by the Commune as one of the bases for discrediting the Plaintiffs.

19.    After resolving the problem with regard to the sanitary buildings, in July of 2008 Plaintiffs commenced major construction, including construction of the energy, water and sewage infrastructure, media networks, and a hotel, restaurant, campsite, beach house, and related amenities. Plaintiffs' 2008 approved expenditures totaled 7,458,555.70 PLN (amounting to 53% of the total approved investment).

20.    In 2009, construction continued without any obstacles and the planning process began. Plaintiffs determined that the completion of construction and the future management of the Resort required a new special purpose company, connected with the Resort for this purpose, Plaintiffs proceeded to assign, with the Commune's consent, all responsibility for the project from Antar to Solo Investment LLC, another qualified and fully-owned and operated entity. The parties executed an appropriate transfer of the Agreement and since September of 2009 Plaintiff "Solo" has served as the formal successor in interest to Antar in dealing with all

matters relating to the Resort.

21.     By 2011, construction was completed and the Commune accepted further expenditures, including one protocol in the amount of 2,564,443.45 PLN and another for 2,792,591.80 PLN (the remaining 38% of the investment).  In total, from 2007 to 2011, the Commune accepted Plaintiffs' expenditures on the property for 13,889,256.46 PLN (Plaintiffs' accounting records show a total of 15,000,000 PLN in expenditures). Importantly, these were **only construction expenditures.** Towards the end of the construction process, the Commune arbitrarily rejected some construction expenses. It also rejected all other expenses incurred to equip the center which exceeded 5,000,000 PLN, even though they were necessary to complete the project as originally agreed. Finally, after four (4) difficult years, Solo had fully performed its obligations under the Agreement, and had built, and equipped, the entire Resort Piaseczno. The Resort was at that point ready to be operated.

22.     Faced with such a huge investment, Plaintiffs reasonably assumed that the Commune would fulfill its end of the bargain, so that the Plaintiffs could quickly consummate the purchase, recover some of their incurred liabilities, and start their business.

23.     However, in a response dated August 29, 2011, the Commune stated for the first time that the property was not for sale, without giving an adequate reason for its action. This refusal was directly contrary to the Agreement, amounted to an illegal "partial expropriation", and effectively prevented Plaintiffs from obtaining any financing for the repayment of their construction expenditures and/or any start-up funds.

24.     On September 15, 2011, Plaintiffs asked the Commune's representatives to explain their changed position regarding Solo's right to purchase the property pursuant to the Agreement. In response, by letter dated September 22, 2011, the Commune claimed that there were certain third party "encumbrances" which prevented the sale of the Resort to Plaintiffs.

25.     The letter made it clear that Plaintiffs were deceived by the Commune's officials

throughout the negotiation and construction processes. They knew that the basic essence of Plaintiffs' investment in constructing a holiday resort was to have the right to immediately thereafter acquire the property.[3] Moreover, Section 2 of the Agreement contained a specific representation that the property was free from all encumbrances and claims of third parties.[4] In a concurrent discussion with counsel, Plaintiff JT for the first time learned that Polish law allegedly precluded the sale of real property if there were in existence any judicial proceedings brought by third parties which involved claims against the property.[5]

26.     The Commune's refusal to sell the property left Plaintiffs with no access to outside financing and without any right to dispose of their property, while they concurrently were deprived of the financial liquidity which was tied to their ultimate ownership.

27.     Plaintiffs were forced to take out private loans to marginally maintain the Resort and could not conduct any profitable business on the site. They also lost the trust of their prospective business partners who immediately withdrew from the plans for further development. Indeed, Solo was then (and is now) on the verge of bankruptcy because of the actions of the Commune.

28.     It was also revealed that without the knowledge and consent of the Plaintiffs, the Commune re-zoned the entire property (around twenty-three acres) and designated a

_____

[3] Plaintiffs entered the Agreement to purchase the property. *Solo Investment LLC*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D", pg. 14, 16, 23; *Ludwin Commune*, Case No. I Aca 537/16 (Court of Appeal in Lublin, 1st Civ. Dept., Jan. 24, 2017), Exhibit "G", pg. 9; *Solo Investment LLC*, Case No. IV CSK 214/17 (Supreme Court of Poland, Feb. 6, 2018), Exhibit "E", pg. 3, 7.

[4] The Commune officials, including the former Vice-Head Czubacki, knew about the third-party claims and did not inform the Plaintiffs. *Solo Investment LLC*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D", pg. 14, 17, 21; *Ludwin Commune*, Case No. I Aca 537/16 (Court of Appeal in Lublin, 1st Civ. Dept., Jan. 24, 2017), Exhibit "G", pg. 9. It should also be noted that there were no entries in the land and mortgage register regarding any limitations of rights or claims. *2016 Decision of the Prosecutor to Discontinue the Investigation*, Exhibit "F", pg. 7. The Commune was the only empowered entity to make such entries.

[5] *Solo Investment LLC*, Case No. IV CSK 214/17 (Supreme Court of Poland, Feb. 6, 2018), Exhibit "E", pg. 7.

property consisting mainly of forests, protected meadows and other lands as "construction land" and applied a maximum tax rate.[6]

29.     Plaintiffs attempted to have the Commune retain the Resort and simply reimburse Plaintiffs' expenditures, but the Commune on several occasions in its letters addressed to the Plaintiffs stated that the only way to resolve this dispute would be to terminate the lease agreement by mutual agreement without any reimbursements, including ironically even for any approved expenditures.

30.     On November 17, 2011, Plaintiffs filed under Polish law a "denouncement" of the Agreement. In the explanatory memorandum, which accompanied the denouncement, Plaintiffs noted the various false representations discussed above.

31.     In a reply dated December 1, 2011, the Commune claimed that the termination was unacceptable and that all representations of the Commune included in the Agreement were accurate.

32.     Plaintiffs finally were forced to file a lawsuit against the Commune on January 13, 2012 in the Lublin District Court (Case Ref. IC 28/12), seeking the return of 13,889,256.46 PLN, which was the equivalent of the aggregate amount of approved expenditures.

33.     Additionally, in order to avoid further costs, and possible tax burdens while the litigation was pending, on February 24, 2012, Plaintiffs requested that the Commune take over possession of the Resort and attempted to transfer the property through protocol to the Commune. The Commune refused to physically take possession, thus forcing Plaintiffs to

---

[6] Regardless of the fact that this classification change required a special procedure and ministerial consent, the Commune on its own created the new tax liabilities. The action was appealed to the Tax Appeal Court in Lublin in 2011, which annulled the tax reclassification and ordered the Commune to address the changes in the land qualifications and the Commune reversed its reclassification. During the discussion before the Tax Appeal Court in 2011, it came to light that the Commune had already made these unlawful changes to the land qualification in 2008, and that the Commune's representatives did not inform JT of this change as it was certain that such information would immediately cause Antar to freeze the investment.

continue to incur the maintenance and administrative costs for the Resort, which obviously could not be left unattended. At the same time, the Commune decided that if the Plaintiffs "supervised" the Resort, they should be subject to substantial tax obligations. This led to the paradox whereby Plaintiffs lost all of their investment, but were still unfairly forced to solely bear the burdens, costs and tax liabilities arising from their maintaining and managing the Resort.

34.     During the pre-trial proceedings, Plaintiffs tried to settle the case by having the Commune separate and exclude from the lease part of "Plot no. 90" which was not subject to any return proceedings, and to approve the sale to the Plaintiffs so that they could at least apply for some bank financing.

35.     On May 10, 2012, Defendant rejected this proposal, claiming that it was "incompatible" with the Agreement because the subject matter of the Agreement allegedly constituted an organized "economic whole," making it impossible to separate the property.

<u>LOWER COURT PROCEEDINGS - DISTRICT COURT RULING</u>

36.     At the initial trial, the Lublin District Court reviewed all of the documentary evidence for the four (4) years during which the Resort was being constructed, examined the credibility and intentions of the interrogated parties and witnesses, and commissioned a forensic construction litigation expert in order to evaluate the investment costs incurred by the Plaintiffs for the disputed property, which were found to amount to 11,481,329.10 PLN.

37.     On December 29, 2015, the District Court ordered the Commune to pay Plaintiffs 11,239,951.09 PLN, as well as statutory interest dating from December 3, 2011, ruling that:

(1) The parties' intentions under the Agreement were obviously to have a two-step process: first, the construction of the Resort and second, the subsequent acquisition of the property by Plaintiffs after the project was fully developed; (2) The Commune had misled the Plaintiffs at the time of negotiating the contract by making and submitting false statements about the absence of any claims, encumbrances, or any proceedings regarding the real estate; (3) The Commune had wrongfully refused to

sell the real estate to the Plaintiffs; (4) Plaintiffs had lawfully transferred the Agreement from "Antar LTD LLC" to "Solo Investment LLC" with the explicit consent of the Commune; and (5) the amount awarded complied with the appraisal made by the court expert was proper as evidenced by the fact that his valuation method was accepted by both parties.

*Solo Investment LLC v. Ludwin Commune*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D".

38.     Had this very direct and positive District Court ruling remained in effect there would obviously have been no need for any of the subsequent legal proceedings, including this current federal court proceeding. However, the Lublin Court of Appeal reversed the well-reasoned decision in *Ludwin Commune v. Solo Investment, LLC*, Case No. I Aca 537/16 (Court of Appeal in Lublin, 1st Civ. Dept., Jan. 24, 2017), Exhibit "G," issuing an appellate opinion which contradicted all facts established by the District Court.

<u>THE PROSECUTOR'S INVESTIGATION AND THE APPEAL PROCESS</u>

39.     During the District Court proceedings, the local District Prosecutor's Office was asked to conduct an investigation—i.e., to investigate the possibility that the Commune's personnel had committed a crime by misleading the Plaintiffs. Despite their report's initial conclusions that clearly indicated the potential commission of a crime and deliberate misappropriation of the company's assets, the investigation was quickly and permanently discontinued on specious grounds in 2016 with the Prosecutor entirely discounting all of the findings and judgment of the District Court in Lublin. The District Prosecutor made its own and separate fallacious legal argument that the current expropriation proceedings against the Commune that formed the basis of its justification for not selling the property to Plaintiffs is not a claim burdening the property, hence the Commune was truthful and justified in including such a provision in the contract. These "grounds" are set forth on the attached Exhibit "F."

40.     Critically, the appellate court in its ruling, which is attached to this Complaint and excerpted as Exhibit "G", relied only on the Prosecutor's review, without any specific

discussion of either the intentions of the parties or the testimony of witnesses, and, based on the files, further failed to preserve any witness transcripts. Put another way, the appellate judges acted without any appearance of due process by failing to conduct the most minimal form of judicial review and instead appears to have relied exclusively on the cursory review of the Prosecutor's office.

41.     Indeed, and Plaintiffs are convinced not coincidentally, there are a number of striking similarities between the 2016 Decision of the Prosecutor to Discontinue the Investigation (Exhibit "F"), led by the Lublin District Prosecutor's Office, and the Court of Appeals so-called "justifications."

42.     As an example of the inexplicable appellate ruling, the Court of Appeals relied on certain letters concerning construction permits (such as the ones sent by the County of Leczna) to suggest that Plaintiffs should have drawn from them the conclusion that there were third party claims against the property already in 2008 and that as a result the statutory deadline to file a claim had already passed in 2009. This suggestion has no basis in law or in fact, or in real estate practices. Such communications, quite common in real estate development, when viewed objectively are only relevant if a construction permit is denied and, as a matter of common practice, are rarely even noticed by a developer.[7] It has not been established in this case that these decisions were ever reviewed by the members of Antar's management board.

43.     The second circumstance cited by the appellate court (allegedly showing the Plaintiffs should have drawn from it the conclusion that there were third party claims against the property already in 2008) was related to the visual inspection in 2008 by the Ministry of

---

[7] *Solo Investment LLC v. Ludwin Commune*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D", pg. 11 ("the Leczna County refused to suspend the [building permit] proceedings, indicating at the same time that Jerzy Wojtasiewicz [heir of the previous owners of the expropriated property in the 1970s] is not a party to them"). See also pg. 18.

Infrastructure[8] (as discussed in ¶ 18). This explanation was pure sophistry as the third-party contractors present at the visual inspection were not Antar employees, were not part of the company's management board, and were not authorized via their scope of powers to avoid the legal consequences of the Agreement.[9] Consequently, their knowledge cannot as a matter of law be imputed to Plaintiff JT.

44.     Interestingly, the Court of Appeal seemed to have accepted all facts established by the District Court, including that neither the company's management nor JT had been informed on the matter of any third-party claims.[10] Nevertheless, the Court of Appeal drew different conclusions from the same evidence that the error had been detected by the company in 2008, despite fundamental law that only the management of the company was authorized and in position to detect the error of any third-party claims against the property and evade the consequences.

45.     Plaintiffs' legal counsel duly noted the absurdity of the Court of Appeal's *ratio legis,* that in light of the alleged "doubts" cast by the letters and the visitation of the Ministry of Infrastructure representatives to the property in 2008, Plaintiffs still chose to continue with the project without any objection or commotion, including no exchanges in the form of written letters, calls or emails to that effect, and somehow made the ridiculous decision to proceed with 90 percent of their investment concluding in 2011.[11]

---

[8] It was revealed during the pre-trial proceedings, that the Ministry of Infrastructure inspection related to the return of the real estate in light of a prior alleged expropriation, **and not** the permitless sanitary buildings built by Plaintiffs (as previously assumed). *Ludwin Commune*, Case No. I Aca 537/16 (Court of Appeal in Lublin, 1st Civ. Dept., Jan. 24, 2017), Exhibit "G," pg. 8 (The [Plaintiffs'] company was not a party to this [expropriation] proceeding.)
[9]   *Id.,* pg. 8.
[10]   *Id.,* pg. 7. ("Wiesław Tokarz [third-party contractor] did not provide this type of information to the company's authorities, considering that it is not within his competence").
[11] See also, *Solo Investment LLC v. Ludwin Commune*, Case No. I C 28/12 (District Court in Lublin, 1st Civ. Dept., Dec. 29, 2015), Exhibit "D", pg. 29 (discussing assurances and reinforcement by the representatives of the Commune who claimed that the investment was not endangered and consistently denied any doubts as to the legal status of the real estate and its consequent sale).

POST-APPEAL EVENTS

46.     After the unfavorable appellate ruling the Plaintiffs were financially paralyzed; their business was suspended and it was inherently impossible to manage the Resort due to Plaintiffs' lack of financial resources and further hostile actions by the Commune. Plaintiffs were charged with court costs, their loan liabilities reached their maximum, and the Commune began to carry out tax executions against them.

47.     In addition, in an apparent effort to maximize the tax burden, the Commune shockingly re-zoned the disputed real estate for the second time by changing forests and meadows to be zoned as construction sites, which resulted in a 1300% increase in tax burden on the real estate. The Commune also ordered the valuations of all utilities and any non-utility buildings to be included in new executions to further increase the tax burden. As already mentioned in ¶ 28, in early 2011 the Tax Court ordered the land to be restored to its original qualification, and the Commune followed the Court's order. But the Commune again silently changed the land qualifications by the end of 2011 and did not inform the Plaintiffs about it until the end of 2016 when the decision was final. This was unveiled to Plaintiffs in another judicial-tax proceeding in 2018.

48.     This led to a total absurdity—not only did Plaintiffs expend millions of PLN in building the resort, followed by substantial sums expended to maintain a property belonging to the Commune, without retaining any property rights, but they also were faced with further demands for the payment of onerous taxes based on their development.

49.     Plaintiffs made a last-ditch effort to fight for justice by appealing the case to the Polish Supreme Court in *Solo Investment LLC v. Ludwin Commune*, Case No. IV CSK 214/17 (Supreme Court of Poland, Feb. 6, 2018), Exhibit "E". Plaintiffs' counsel submitted to the Supreme Court a very comprehensive brief, arguing clear violations of substantive law and most importantly the violation of procedural law based on the Court of Appeal's improper

application and failure to make its own findings, failure to explain the factual basis for its ruling, and erroneously limiting itself to reporting the factual findings of the District Court without indicating whether the Court of Appeal accepts them or not when Defendant's appeal was based on the allegation that the District Court made erroneous factual findings. Nonetheless, the Supreme Court upheld the Court of Appeal's judgment.[12]

## ATTEMPTED EXTRAORDINARY CESSATION TO THE NATIONAL ATTORNEY GENERAL AND OMBUDSMAN

50.     During the period when the Supreme Court was considering the cessation of the judgment, the Polish Legislature introduced into law a new remedy referred to as an "extraordinary complaint" which was described in the Act of December 8, 2017 in Article 89 para. 1 as follows:

> *"An extraordinary complaint may be lodged against a final judgment of a common court or military court ending proceedings in a case, if it is necessary to ensure the rule of law and social justice and (i) The judgment violates the principles or freedoms and human and citizen rights set out in the Constitution; (ii) The judgment grossly violates the law by incorrect interpretation or misapplication and (iii) There is an obvious contradiction between the court's significant findings and the content of the evidence gathered in the case - and the judgment may not be set aside or amended by other extraordinary means of appeal."*

51.     On May 22, 2018, a request to introduce such an extraordinary complaint on behalf of the Plaintiffs was submitted to Poland's Prosecutor General, and separately to Poland's Ombudsman, as the sole individuals and/or institutions, as the case may be, authorized

---

[12] The Supreme Court Ruling can be paraphrased as follows: The plaintiff is correct that the intention of Paragraph 2, referring to "no third-party encumbrances," of the lease contract was to provide the Plaintiff company/lessee with the right that the property has no legal burden disrupting the creation of the plaintiff's performance, which by law makes it impossible to make a contractual provision to be able to purchase the leased real estate in a non-tender mode if a significant part of the property cannot be sold. This is an error that justifies an evasion of the results of the declaration of will. **However**, the lessee obtained information about the pending reimbursement proceedings when the plaintiff obtained sufficiently precise knowledge in 2008, therefore the deadline to file a 'statement of the error' claim expired after one-year in 2009. The statement of the error is not a legal act, but a specific state of consciousness based on the information obtained. *Solo Investment LLC v. Ludwin Commune*, Case No. IV CSK 214/17 (Supreme Court of Poland, Feb. 6, 2018), Exhibit "E", pg. 7.

to consider such an extraordinary remedy of overturning the judgement of the Court of Appeal in Lublin of 24 January 2017, I ACa 537/16.

52.      In February 2019, the Ombudsman refused to grant an extraordinary complaint, because he saw no chance of success.

53.      On June 10, 2019, the General Prosecutor also refused to grant an extraordinary complaint. The refusal to file an extraordinary complaint did not include a justification or any specific explanations. For this reason, Plaintiffs requested the National Prosecutor's Office to provide reasons for this refusal. In response, the National Prosecutor's Office representative sent a response refusing to give reasons, stating that according to the law the prosecutor is not obliged to issue it.

<u>APPEAL TO THE EUROPEAN COURT OF HUMAN RIGHTS & POLISH PROSECUTOR</u>

54.      Having exhausted all relevant domestic remedies, Plaintiffs had no other course of action left, other than to file a writ with the European Commission of Human Rights ('ECHR") in Strasbourg, France on or about July 27, 2018.

55.      Plaintiffs' ECHR application also cited the improper and inaccurate time-limits (based on Poland's alleged one-year annual deadline from "the detection of the error") to file a claim and improper court discretion in choosing a doubtful date and time.

56.      Unfortunately, in September of 2018, the ECHR Court rejected the application.

57.      Shortly thereafter, the National Prosecutor General's Office referred the case to the District Prosecutor's Office in Lublin, ordering it to conduct an investigation.

58.      On January 16, 2019, the District Prosecutor's Office in Lublin informed Plaintiffs that it was maintaining its 2016 position and did not see any grounds for resuming the proceedings or taking any new legal steps against the Commune. In addition, she referred to the Court of Appeal judgment of January 24, 2017, which presented in essence the same position as the District Prosecutor's office original decision (*see* discussion at ¶ 39).

59.     After numerous exchanges by letter between the Plaintiffs and the District Prosecutor's Office, on May 9, 2019, the District Prosecutor's Office in Lublin sent a letter to the Plaintiffs informing them that the investigation against the Commune would in fact again resume.

60.     However, over a year later, on June 23, 2020, the District Prosecutor issued a decision once again discontinuing the investigation, by yet another new theory—i.e. that Plaintiffs learned about the ongoing "fraud" as early as 2006 while the contract was being negotiated. The Prosecutor introduced the new testimony of Mrs. Bijata, the Commune's personal lawyer (who altered the contract templates in 2006) (*see* discussion at ¶ 16 above).

61.     The Prosecutor also introduced the new testimony of a witness (who was now involved in business dealings with the Commune), who in June of 2020 suddenly made statements contradictory to what he testified to under oath in 2012 (and as a result perjuring himself which itself resulted in an investigation by the Prosecutor launched on July 28, 2020) that the Plaintiffs knew about third-party claims on the land as early as 2006 (at the time the negotiations were first underway).

62.     Complaints were subsequently lodged by Plaintiffs' attorneys against the decision to discontinue the investigation in its entirety in light of the fact that the Supreme Court ruling of 2018 showed that the Commune made false statements about third-party claims in the Agreement (*see* ¶ 49) and the fact that the Commune never argued in any judicial proceedings that the Plaintiffs knew about the third-party claims at the time of negotiation (even though it could have been another avenue for their defense), which according to both the Court of Appeal and Poland's Supreme Court, occurred at the earliest in 2008.

63.     On August 18, 2020, the Lublin Criminal Court (case no. PO I Ds 51.2019.S) ruled without any factual analysis that Plaintiffs' complaints were unfounded and did not deserve to be upheld because the Prosecutor based its justification on properly collected

evidence, made an accurate determination of the facts and its proper criminal law assessment.

THE COMMUNE'S MOST RECENT ACTIONS

64.     After executing further tax executions on the real property, the Commune wrote various letters to the President of Solo Investment, Plaintiff Bozena Tarnasiewicz informing her that the Commune has down-valued the property, along with the invested outlays, to PLN 4,602,000.00, and that the tax issue would also need to be addressed in any future sale transaction.

65.     Moreover, the Mayor of the Ludwin Commune, in one of his letters in 2019 to the Plaintiffs also pushed for a delineation of the property which was previously rejected by the Commune in 2012 (as shown in ¶ 34 & 35 of this Complaint), further evidencing that the Commune never intended to sell the underlying real property, but instead was constantly adding additional obstacles to the fulfilment of the original Agreement.

66.     On August 13, 2020, the Commune publicly listed the property for sale. *See* Exhibit "H".

67.     By then it was clear that the Commune had always acted in bad-faith and never intended to sell the property to Plaintiffs or anyone from the public, evidenced especially by, among other things, (1) an increase of taxes by almost 1300% imposed on the Plaintiffs (as discussed in ¶¶ 28, 33 and 47), which the Commune officials said would need to be settled for the last 9 years (taxes amounting in the millions of PLN) separately, but in connection with the sale of the real estate, (2) other letters from the Commune over the last 9-years for impossible to agree requests (as discussed above), including a proposition for terminating the Agreement only if Plaintiffs would not insist on the refunding of any costs incurred (as described in ¶ 29), (3) the Commune's unconscionable decision to unilaterally down-value Plaintiffs' investment, and (4) the Commune refusing to respond to other third-parties requests to bid on the public sale of the Resort.

19

68.     Upon information and belief, the Commune secretly located a closed-door buyer and a sale is currently in the process of being arranged. It is further reasonably believed that the Commune has an ongoing financial interest in preserving the appearance of business-as-usual during its finalization of the preparations for the ultimate sale to their chosen closed-door buyer.

69.     Upon information and belief, in or around July 2020, the Commune's representatives started advertising the Resort by entering into a relationship with the United-States based travel agency referenced in the recent ad (see ¶ 7, *supra*) which allows for direct bookings at the Resort.

70.     All of the pursued and exhausted legal remedies, have left the Plaintiffs without any redress, remedy, compensation, or recourse due to the expropriation.

## FIRST CAUSE OF ACTION
## RESCISSION

71.     Plaintiffs incorporate by reference paragraphs 1 through 70 as though fully set forth herein.

72.     Defendant presumably claims that Plaintiffs were, or at least should have been aware, of the third-party encumbrances which allegedly prevented Defendant from consummating the transaction by which Plaintiffs were to purchase the Resort.

73.     Plaintiffs allege that the agreement to sell the Resort property and the representations that the property did not have any encumbrances were both integral and indispensable parts of the consideration for Antar-Solo entering into the Agreement and committing substantial expenditures in constructing the Resort.

74.     If Plaintiffs had known that the Commune officials never intended to sell the property to them in the manner provided in the Agreement and/or knew that the representations about the absence of third party claims against the Resort property were false and misleading, Plaintiffs would not have entered into the Agreement and/or would not have agreed to expend

substantial funds in connection with the pre-sale construction work described above.

75.    Plaintiffs contend that Defendant's fraud in the inducement and fraud in the execution with regard to these promises and representations represented a failure of the key consideration for the Agreement and that since Plaintiffs did not receive the benefit of their bargain Plaintiffs are accordingly entitled to rescind the Agreement and to recover all of the sums reasonably expended in connection with the construction process.

**SECOND CAUSE OF ACTION**
**DAMAGES FOR EXPROPRIATION AND CONVERSION**

76.    Plaintiffs incorporate by reference paragraphs 1 through 75 as though fully set forth herein.

77.    Defendant engaged in unlawful conduct by denying Plaintiffs' the right to purchase the property when their investment concluded because of undisclosed third-party encumbrances which the Agreement had represented were non-existent, leading to over nine (9) years of fruitless litigation and resulting in the "public sale" of the subject property announced by the Commune on August 13, 2020, without providing any just compensation for Plaintiffs.

78.    Defendant further safeguarded its commercial interest through massive taxes imposed on Plaintiffs hindering any possibility of a future sale.

79.    Plaintiffs have indisputably not received any benefit from their Investment. Instead, Plaintiffs had been substantially damaged by fraud and deceit of Defendant, having lost in excess of 20 million PLN (over $5,000,000) which with interest is currently valued in excess of $10 million, all subject to proof at trial, and it would be unjust and unfair for the Commune to continue to retain all of the benefits of what amounts to a conversion and "expropriation" of U.S. nationals' property for a malevolent and commercial purpose in light of the FSIA exception which has been followed in many other American cases, and the commercial treaty between Poland and the United States.

### THIRD CAUSE OF ACTION
### DAMAGES FOR VIOLATIONS OF INTERNATIONAL LAW

80.     Plaintiffs incorporate by reference paragraphs 1 through 79.

81.     The Commune violated international law by knowingly participating in, and by profiting from, a fraudulent scheme to coerce Plaintiffs into utilizing their life savings to develop the Resort in anticipation of exercising their post-construction right to obtain full title to the property, and by concealing the fact that certain third-parties had existing claims against the same property interests that were promised to Plaintiffs under the Agreement.

82.     The above-referenced actions were undertaken in violation of customary international law principles. A state is responsible under international law for injury resulting from (1) a taking by the state of the property of a national of another state that (2) is not for public purpose, (3) is discriminatory, or (4) is not accompanied by provision for just compensation. *Restatement (Third) of the Foreign Relations Law of the United States* § 712 (1987).

88.     As a result of the Commune's violations of international law, Plaintiffs were unfairly treated and discriminated as U.S. nationals when the Commune directly solicited them to enter the fraudulent real estate transaction, without ever seeing the need to compensate Plaintiffs as a result of Defendant's illegal actions taken against them.

89.     Additionally, as a result of the Commune's violations of international law, Plaintiffs had their investment property and their life savings wrongfully expropriated by the Commune for a non-public purpose for its own benefit to the detriment of Plaintiffs, and therefore Plaintiffs are entitled to just compensation.

### FOURTH CAUSE OF ACTION
### DAMAGES FOR VIOLATION OF THE U.S.–POLAND TREATY

90.     Plaintiffs incorporate by reference paragraphs 1 through 89.

91.     This case involves not only a violation of customary international law as set forth in other rules of conduct governing the law of nations, but also represents a clear violation of the specific United States-Poland Treaty, which reads in pertinent part as follows:

1.  Investments shall not be expropriated or nationalized either directly or indirectly through measures tantamount to expropriation or nationalization ("expropriation") except for a public purpose, in a nondiscriminatory manner, upon payment of prompt, adequate and effective compensation, and in accordance with due process of law and the general principles of treatment provided for in Article II (6). Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the expropriatory action was taken or became publicly known, whichever is earlier; be paid without delay; include interest at a commercially reasonable rate, such as LIBOR plus an appropriate margin, from the date of expropriation; be fully realizable; be freely transferable; and calculated on the basis of the prevailing market rate of exchange for commercial transactions on the date of expropriation.

2.  A national or company of either Party that asserts that all or part of its investment has been expropriated shall have a right to prompt review by the appropriate judicial or administrative authorities of the other Party to determine whether any such expropriation has occurred and, if so, whether such expropriation, and any compensation therefor, conforms to the provisions of this Treaty and to principles of international law."

*See Treaty.* Article VII, Compensation for Expropriation (Exhibit "B").

92.     Plaintiffs have indisputably not received *any* benefit from their investment. Instead, they have lost in excess of twenty million PLN and it would be unjust and unfair for the Commune to continue to retain all of the benefits of what amounts to an "expropriation" of U.S. nationals' property for a malevolent and commercial purpose in light of the treaty and the FSIA exception (see discussion at ¶¶ 5 and 9 of this Complaint, supra).

93.     Plaintiffs have suffered substantial injury from the treaty violations and are entitled to judgment for compensatory damages in an amount to be determined by this Court.

### FIFTH CAUSE OF ACTION
### DAMAGES FOR RESTITUTION BASED ON UNJUST ENRICHMENT

94.     Plaintiffs incorporate by reference paragraphs 1 through 93 as though fully set forth herein.

95.     The Commune was unjustly and unlawfully enriched at the expense of

Plaintiffs. Defendant deprived Plaintiffs of their contractual rights and property interests through violations of international law, duress, and deceit, and has wrongfully refused to transfer title to the Resort property to Plaintiffs.

96.     As a result, the Commune has been unjustly enriched and Plaintiffs are entitled to restitution of their assessed investment of over 20,000,000 PLN (over $5,000,000), which with interest is currently valued in excess of $10 million.

97.     It would be unconscionable for Defendant to continue to enjoy the benefits of the now-developed Resort without fairly compensating the Plaintiffs.

98.     As a result of Defendant's wrongful acts, Plaintiffs have been damaged and are entitled to full restitution.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for the following relief:

1.     A declaration pursuant to the Declaratory Judgement Act that Defendant's conduct was illegal, unlawful and in violation of international law and under the above-referenced United States-Poland treaty, and that Plaintiffs' investment should be disgorged and remitted;

2.     For damages to be proven at trial, reasonably believed to be at least $10 million;

3.     For an order directing Defendant to disgorge any profits earned and to reimburse Plaintiffs for their lost profits;

4.     For appropriate pre- and post-judgment interest; and

5.     For such other and further relief as this Court should deem fair and just.

Dated: October 30, 2020

Respectfully Submitted,

MCGUIRE LAW, P.C.

By: /s/ Eugene Y. Turin
Eugene Y. Turin
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

Donald S. Burris, Esq. *(pro hac vice application to be submitted)*
BURRIS &, SCHOENBERG, LLP
12121 Wilshire Boulevard, Suite 800
Los Angeles, CA 90025
Tel: (310) 442-5559
Fax: (310) 442-0353
don@bslaw.net

*Counsel for Plaintiffs*