# EXHIBIT B

TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF POLAND CONCERNING BUSINESS AND ECONOMIC RELATIONS

PREAMBLE

The United States of America and the Republic of Poland; (hereinafter referred to as "the Parties");

Desiring to develop further the friendship between the American and Polish peoples;

Recognizing that the further development of business and economic ties can contribute to a general strengthening of their relations;

Desiring to promote greater economic cooperation between them with respect to investment by nationals and companies of one Party in the territory of the other Party;

Recognizing that agreement upon the treatment to be accorded such investment will stimulate the flow of private capital and the economic development of the Parties;

Agreeing that fair and equitable treatment of investment is desirable in order to maintain a stable framework for investment and maximum effective utilization of economic resources;

Desiring to develop long-term business and economic cooperation based upon the principles of sovereign equality and mutual benefits;

Recognizing that the development of business and economic ties can contribute to the well-being of workers in both countries and promote respect for fundamental worker rights;

Convinced that private enterprise operating within a free and open market offers the best opportunities for raising living standards and the quality of life for the inhabitants of the Parties; and

Recognizing the desire of the Republic of Poland to reduce the role of state enterprises and privatize its economy;

Agree as follows:

ARTICLE I

Definitions

1. For the purposes of this Treaty,

(a) "company of a Party" means any kind of corporation, company, association, state enterprise, or other organization, legally constituted under the laws and regulations of a Party or a political subdivision thereof whether or not organized for pecuniary gain, or privately or governmentally owned;

(b) "investment" means every kind of investment, in the territory of one Party owned or controlled directly or indirectly by nationals or companies of the other party, and includes:

(i) tangible and intangible property, including rights, such as mortgages, liens and pledges;

(ii) a company or shares of stock, or other interests in a company or interests in the assets thereof;

(iii) a claim to money or a claim to performance having economic value, and associated with an investment;

(iv) intellectual property which includes, rights relating to: literary and artistic works, including sound recordings, patent rights, industrial designs, semiconductor mask works, trade secrets, and trademarks, service marks, and trade names; and

(v) any right conferred by law or contract, and any licenses and permits pursuant to law;

(c) "national of a Party" means, a natural person who is a national of a Party under its applicable law;

(d) "return" means an amount derived from or associated with an investment, including profit; dividend; interest; capital gain; royalty payment; management, technical assistance other fees; or returns in kind;

(e) "associated activities" are activities associated with an investment, such as the organization, control, operation, maintenance and disposition of companies, branches, agencies, offices, factories or other facilities for the conduct business; the making, performance and enforcement of contracts; the acquisition, use, protection and disposition of property of all kinds including intellectual property rights; the borrowing of funds; the purchase and issuance of equity shares and other securities; and the purchase of foreign exchange;

(f) "nondiscriminatory" treatment means treatment that is at least as favorable as the better of national treatment or most-favored nation treatment;

(g) "national treatment" means treatment that is at least as favorable as the most favorable treatment accorded by a Party to companies or nationals of that Party in like circumstances;

(h) "most-favored nation treatment" means treatment that is at least as favorable as that accorded by a Party to companies and nationals of third parties in like circumstances;

(i) "commercial activity" means activities carried on by nationals or companies of a Party related to the sale or purchase of goods and services and the granting of franchises or rights under license, which are not investments or related activities; and

(j) "control" means having a substantial interest in or the ability to exercise substantial influence over the management and operation of an investment, provided that such an influence will not be deemed to exist solely as a result of a contractual relationship for the provision of goods or services or the extension of commercial credits in connection with such contracts.

2. Each Party reserves the right to deny to any company the advantages of this Treaty if nationals of any third country control such company and, in the case of a company of the other Party, that company has no substantial business activities in the territory of the other Party or is controlled by nationals of a third country with which the denying Party does not maintain normal economic relations.

3. Any alteration of the form in which assets are invested or reinvested undertaken in accordance with the laws of the Party concerned, provided that the application of such laws does not impair any rights conferred by this Treaty, shall not affect their character as investment.

*ARTICLE II*

*Treatment of Investment*

1. Each Party shall permit, in accordance with its relevant laws and regulations, and treat investment and associated activities on a nondiscriminatory basis, subject to the right of each Party to make or maintain exceptions falling within one of the sectors or matters listed in the Annex to this Treaty. Each Party agrees to notify the other Party before or on the date of entry into force of this Treaty of all laws and regulations of which it is aware concerning the sectors or matters listed in the Annex. Moreover, each Party agrees to notify the other of any future exception with respect to the sectors or matters listed in the Annex, and to limit such exceptions to a minimum. Any future exceptions by either Party shall not apply to investment existing in that sector or matter at the time the exception becomes effective. Except as stated otherwise in the Annex, the treatment accorded pursuant to any exceptions shall not be less favorable than that accorded in like situations to investments and associated activities of nationals or companies of any third country, except with respect to ownership of real property. Rights to engage in mining on the public domain shall be dependent on reciprocity.

2. Subject to the laws relating to the entry and sojourn of aliens, nationals of either Party and their families shall be permitted to enter and to remain in the territory of the other Party for the purpose of establishing, developing, administering or advising on the operation of an investment to which they, or a company of the first Party that employs them, have committed or are in the process of committing a substantial amount of capital or other resources.

3. Companies of a Party which are investments shall be permitted to engage professional, technical, and managerial personnel of their choice, regardless of nationality.

4. Neither Party shall impose, as a condition of establishment, expansion or maintenance of investments, any performance requirements which require or enforce commitments to export goods produced, or which specify that goods or services must be purchased locally, or which impose any other similar requirements or measures.

5. The treatment accorded by the United States of America to investments and associated activities under the provisions of this Article shall in any State, Territory or possession of the United States of America be the treatment accorded therein to companies legally constituted under the laws and regulations of any other State, Territory or possession of the United States of America.

6. Investment shall at all times be accorded fair and equitable treatment, shall enjoy full protection and security and shall in no case be accorded treatment less than that required by international law. Neither Party shall in any way impair by arbitrary and discriminatory measures the management, operation, maintenance, use, enjoyment, acquisition, expansion or disposal of investments. Each Party shall observe any obligation it may have entered into with regard to investments.

7. Each Party shall provide effective means of asserting claims and enforcing rights with respect to investments under this Treaty and authorizations relating thereto, with the exception of denials thereof, and investment agreements.

8. Subject to the right to make or maintain exceptions falling within one of the sectors or matters listed in the Annex, each Party shall accord nondiscriminatory treatment to nationals and companies of the other Party in the conduct of their investment and associated activities with respect to:

(a) the granting of franchises or rights under licenses;

(b) the issuance of registrations, licenses, permits and other approvals necessary for the conduct of commercial activity, which shall in any event be issued expeditiously;

(c) access to financial institutions and credit markets;

(d) access to their funds held in financial institutions;

(e) the importation and installation of equipment necessary for the normal conduct of business affairs, including, but not limited to office equipment and automobiles, and the export of any equipment and automobiles so imported;

(f) the dissemination of commercial information;

(g) the conduct of market studies;

(h) the appointment of commercial representatives, including agents, consultants and distributors and their participation in trade fairs and promotion events;

(i) the marketing of goods and services, including through internal distribution and marketing systems and by direct contract with individuals and companies;

(j) access to public utilities, public services and commercial rental space at nondiscriminatory prices, if the prices are set or controlled by the government;

(k) access to raw materials, inputs and services of all types at nondiscriminatory prices, if the prices are set or controlled by the government.

9. Subject to the right to make or maintain exceptions falling within one of the sectors or matters listed in the Annex, for purposes of facilitating investment and associated activities, each Party shall accord nondiscriminatory treatment to nationals and companies of the other Party with respect to the sale, offering for sale and acquisition of equity shares and other securities. With respect to acquisition of interests in any governmentally-owned enterprise or organization undergoing privatization, the Republic Poland shall provide most-favored nation treatment to nation and companies of the United States.

### ARTICLE III

#### Business Facilitation and Business Rights

1. Each Party will encourage the participation of its national and companies in trade promotion events such as fairs, exhibition, missions and seminars held in the territory of the other Party. Similarly, each Party will encourage nationals and companies of the other Party to participate in trade promotion events in its territory. Subject to the laws in force within their territories, the Parties agree to allow the import and re-export on a duty-free basis of all articles for use in trade promotion events, provided that such articles are not sold or otherwise transferred.

2. Subject to the right to make or maintain exceptions falling within one of the sectors or matters listed in the Annex, for purposes of facilitating trade between the Republic of Poland and the United States in goods and services, each Party shall accord non-discriminatory treatment to nationals and companies of the other Party in the conduct of their commercial activities with respect to:

(a) the granting of franchises or rights under licenses;

(b) the issuance of registrations, licenses, permits and other approvals necessary for the conduct of commercial activity which shall in any event be issued expeditiously;

(c) access to financial institutions and credit markets;

(d) access to their funds held in financial institutions;

(e) the importation and installation of equipment necessary for the normal conduct of business affairs, including, but not limited to office equipment and automobiles, and the export of any equipment and automobiles so imported;

(f) the dissemination of commercial information;

(g) the conduct of market studies;

(h) the appointment of commercial representatives, including agents, consultants and distributors and their participation ir trade fairs and promotion events;

(i) the marketing of goods and services, including through internal distribution and marketing systems and by direct con tact with individuals and companies;

(j) access to public utilities, public services and commercia rental space at nondiscriminatory prices, if the prices are sei or controlled by the government;

(k) access to raw materials, inputs and services of all types ai nondiscriminatory prices, if the prices are set or controlled by the government.

3. Nationals and companies of each Party in the conduct of commercial activities shall at all times be accorded fair and equitable treatment, shall enjoy full protection and security and shall in no case be accorded treatment less than that required by international law. Neither Party shall in any way impair by arbitrary and discriminatory measures the conduct of commercial activities. Each Party shall observe any obligation it may have entered into with regard to the conduct of commercial activities.

4. Each Party agrees to notify the other Party before or on the date of entry into force of this Treaty of all laws and regulations of which it is aware concerning the sectors or matters listed in the Annex. Moreover, each Party agrees to notify the other of any future exceptions with respect to the sectors or matters listed in the Annex, and to limit such exceptions to a minimum. Any future exceptions by either Party shall not apply to commercial activities conducted in that sector or matter at the time the exception becomes effective. Except as stated otherwise in the Annex, the treatment accorded pursuant to any exceptions shall not be less favorable than that accorded in like situations to commercial activities of nationals or companies of any third country.

5. Each Party shall provide effective means of asserting claims and enforcing rights with respect to agreements in connection with the conduct of commercial activity.

6. The Parties endorse the use of arbitration, under internationally recognized rules, for the settlement of commercial disputes between nationals and companies of the Republic of Poland and nationals and companies of the United States. Neither Party shall require that the place of any arbitration be in the United States or the Republic of Poland.

7. Subject to the laws relating to the entry and sojourn of aliens, nationals of either Party and their families shall be permitted to enter and to remain in the territory of the other Party for the purpose of carrying on trade between the territory of the two Parties and engaging in commercial activities.

8. The treatment accorded by the United States of America to nationals and companies of the Republic of Poland under the provisions of this Article shall in any State, Territory or possession of the United States of America be the treatment accorded therein nationals and companies legally constituted under the laws and regulations of any other State, Territory or possession of the United States of America.

## ARTICLE IV

### Protection of Intellectual Property

The Parties shall provide adequate and effective protection and enforcement of intellectual property rights. To establish such protection, each Party agrees, inter alia, to:

-extend copyright protection to computer program as literary works;

-provide product as well as process patent protection for pharmaceuticals and chemicals for a term at least equivalent to that provided to other patentable subject matter;

-provide adequate and effective protection for integrated circuit layout design (mask works);

-provide adequate and effective protection against unfair competition.

## ARTICLE V

### Transfers

1. Each Party shall permit all transfers related to an investment of commercial activity to be made freely and without delay into and out of its territory. Such transfers include:

(a) returns;

(b) compensation pursuant to Article VII

(c) payments arising out of an investment dispute or commercial dispute;

(d) payments made under a contract, including amortization of principal and accrued interest payments made pursuant to a loan agreement;

(e) proceeds from the sale or liquidation of all or any part of an investment; and

(f) additional contributions to capital for the maintenance or development of an investment. 2. Except as provided in Article VII paragraph 1, transfers shall be made in a freely usable currency at the prevailing market rate of exchange for commercial transactions on the date of transfer with respect to spot transactions in the currency to be transferred.

3. Notwithstanding the provisions of paragraphs 1 and 2, either Party may maintain laws and regulations (a) requiring reports of currency transfer; and (b) imposing income taxes by such means as a withholding tax applicable to dividends or other transfers. Furthermore, either Party may protect the rights of creditors, or ensure the satisfaction of judgments in

adjudicatory proceedings, through the equitable, nondiscriminatory and good faith application of its law.

## ARTICLE VI

### Taxation

1. With respect to its tax policies, each Party should strive to accord fairness and equity in the treatment of investment of, and commercial activity conducted by, nationals and companies of the other Party.

2. Nevertheless, the provisions of this Treaty, and in particular Articles IX and X, shall apply to matters of taxation only with respect to the following:

(a) expropriation, pursuant to Article VII;

(b) transfers, pursuant to Article V; or

(c) the observance and enforcement of terms of an investment agreement or authorization as referred to in Article IX(l) (a) or (b), to the extent they are not subject to the dispute settlement provisions of a convention for the avoidance of double taxation between the two Parties, or have been raised under such settlement provisions and are not resolved within a reasonable period of time.

## ARTICLE VII

### Compensation for Expropriation

1. Investments shall not be expropriated or nationalized either directly or indirectly through measures tantamount to expropriation or nationalization ("expropriation") except for a public purpose, in a nondiscriminatory manner, upon payment of prompt, adequate and effective compensation, and in accordance with due process of law and the general principles of treatment provided for in Article II (6). Compensation shall be equivalent to the fair market value of the expropriated investment immediately before the expropriatory action was taken or became publicly known, whichever is earlier; be paid without delay; include interest at a commercially reasonable rate, such as LIBOR plus an appropriate margin, from the date of expropriation; be fully realizable; be freely transferable; and calculated on the basis of the prevailing market rate of exchange for commercial transactions on the date of expropriation.

2. A national or company of either Party that asserts that all or part of its investment has been expropriated shall have a right to prompt review by the appropriate judicial or administrative authorities of the other Party to determine whether any such expropriation has occurred and, if so, whether such expropriation, and any compensation therefor, conforms to the provisions of this Treaty and to principles of international law.

3. Nationals or companies of either Party whose investments suffer losses in the territory of the other Party owing to war or other armed conflict, revolution, state of national emergency, insurrection, civil disturbance or other similar events shall be accorded nondiscriminatory treatment by such other Party as regards any measures it adopts in relation to such losses.

## ARTICLE VIII

### Exchange of Information and Transparency

1. Each Party acknowledges the desirability of facilitating the collection and exchange of all non-confidential, non-proprietary information relating to investments and commercial activities within its territory.

2. Each Party shall make publicly available all non-confidential, non-proprietary information which may be useful in connection with investment and commercial activities. In addition, each Party shall promptly make public all laws, regulations, administrative practices and procedures, and adjudicatory decisions having general application that pertain to or affect commercial activities or investments.

3. The Parties shall disseminate to their respective business communities such information made available under paragraph 2 which will assist their nationals and companies in pursuing the most expeditious and equitable settlement of any dispute affecting them which may arise under this Treaty. Such information may be related to timeliness of decisions and vindication of rights under the Treaty.

*ARTICLE IX*

*Settlement of Disputes Between a Party and an Investor of the Other Party*

1. For purposes of this Article, an investment dispute is defined as a dispute involving (a) the interpretation or application of an investment agreement between a Party (including any agency or instrumentality of such Party) and a national or company of the other Party; (b) the interpretation or application of any investment authorization granted by a Party's foreign investment authority to such national or company; or (c) an alleged breach of any right conferred or created by this Treaty with respect to an investment. A decision of a Party which denies entry if an investment shall not constitute an investment dispute within the meaning of this Article.

2. In the event of an investment dispute between a Party and a national or company of the other Party, the parties to the dispute shall initially seek to resolve the dispute by consultation and negotiation, which may include the use of non-binding, third party procedures. Each Party shall encourage its nationals and companies to resort to local courts, especially for the resolution of disputes relating to administrative actions. Subject to paragraph 3 of this Article, if the dispute cannot be resolved through consultation and negotiation, the dispute shall be submitted for settlement in accordance with previously agreed, applicable dispute-settlement procedures. Any dispute-settlement procedures, including those relating to expropriation, specified in the investment agreement shall remain binding and shall be enforceable in accordance with the terms of the investment agreement, relevant provisions of domestic laws and applicable international agreements regarding enforcement if arbitral awards.

3. (a) At any time after six months from the date on which the dispute arose, the national or company concerned may choose to consent in writing to the submission of the dispute for settlement by conciliation or binding arbitration to the International Centre for the Settlement of Investment Disputes ("Centre") or to the Additional Facility of the Centre or pursuant to the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") or pursuant to the arbitration rules of any arbitral institution mutually agree between the parties to the dispute. Once the national or company concerned has so consented, either party to the dispute may institute such proceeding provided:

(i) The dispute has not been submitted by the national or company for resolution in accordance with any applicable previously agreed dispute-settlement procedures; and

(ii) the national or company concerned has not brought the dispute before the courts of justice or administrative tribunals or agencies of competent jurisdiction of the Party that is a party to the dispute.

If the parties disagree over whether conciliation or binding arbitration is the more appropriate procedure to be employed, the opinion of the national or company concerned shall prevail.

(b) Each Party hereby consents to the submission of an investment dispute for settlement by conciliation or binding arbitration:

(i) To the Centre, in the event that the Republic of Poland becomes a party to the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States done at Washington, March 18, 1965 ("Convention") and the Regulations and Rules of the Centre, and to the Additional Facility of the Centre, and

(ii) to an arbitral tribunal established under the UNCITRAL Rules, as those Rules may be modified by mutual agreement of the parties to the dispute, the appointing authority referenced therein to be Secretary General of the Centre.

(c) Conciliation or arbitration of disputes under (b) (i) shall be done applying the provisions of the Convention and the Regulations and Rules of the Centre, or of the Additional Facility as the case may be.

(d) The place of any arbitration conducted under this Article shall be a country which is a party to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

(e) Each Party undertakes to carry out without delay the provisions of any award resulting from an arbitration held in accordance with this Article. Further, each Party shall provide for the enforcement in its territory of such arbitral awards.

3. In any proceeding involving an investment dispute, a Party shall not assert, as defense, counterclaim, right of set-off or otherwise, that the national or company concerned has received or will receive, pursuant to an insurance or guarantee contract, indemnification or other compensation for all or part of its alleged damages. However, to the extent that a Party succeeds to the rights or claims of the national or company concerned by reason of subrogation or assignment, the national or company concerned shall not continue to pursue such rights and claims in its own name unless authorized to do so on behalf of the subrogee or assignee.

5. In the event of an arbitration, for the purposes of this Article any company legally constituted under the applicable laws and regulations of either Party or a political subdivision thereof but that, immediately before the occurrence of the event or events giving rise to the dispute, was an investment of nationals or companies of the other Party, shall be treated as a national or company of such other Party, in accordance with Article 25(2)(b) of the Convention.

*ARTICLE X*

*Consultation and Settlement of Disputes Between the Parties*

1. The Parties agree to consult promptly, on the request of either Party, to resolve any disputes in connection with this Treaty, or to discuss any matter relating to the interpretation or application of this Treaty.

2. Any dispute between the Parties concerning the interpretation or application of this Treaty which is not resolved within six months through consultations or other diplomatic channels, shall be submitted, upon the request of either Party, to an arbitral tribunal for binding decision in accordance with this Treaty and the applicable rules of international law. In the absence of an agreement by the Parties to the contrary, the arbitration rules of the United Nations Commission on International Trade Law (UNCITRAL), except to the extent modified by the Parties or by the arbitrators, shall govern.

3. Within two months of receipt of a request, each Party shall appoint an arbitrator. The two arbitrators shall select a third arbitrator as Chairman, who is a national of a third State. The UNCITRAL Rules for appointing members of three member panels shall apply mutatis mutandis to the appointment of the arbitral panel except that the appointing authority referenced in those rules shall be the Secretary General of the Centre.

4. Unless otherwise agreed, all submissions shall be made and all hearings shall be completed within six months of the date of selection of the third arbitrator, and the Tribunal shall render its decisions within two months of the date of the final submissions or the date of the closing of the hearings, whichever is later.

5. Expenses incurred by the Chairman, the other arbitrators, and other costs of the proceedings shall be paid for equally by the Parties. The Tribunal may, however, at its discretion, direct that a high proportion of the costs be paid by one of the Parties. Each Party shall bear the expense of its representation in the proceedings before the arbitral tribunal.

### ARTICLE XI

#### Disputes Not Covered by Articles IX and X

The provisions of Articles IX and X shall not apply to a dispute arising (a) under the export credit, guarantee or insurance programs of the Export-Import Bank of the United States or (b) under other official credit, guarantee or insurance arrangements pursuant to which the Parties have agreed to other means of settling disputes.

### ARTICLE XII

#### Reservation of Rights

1. This Treaty shall not derogate from:

(a) laws and regulations, administrative practices or procedures, or administrative or adjudicators decisions of either Party;

(b) international legal obligations; or

(c) obligations assumed by either Party, including those contained in an investment or commercial agreement or an investment authorization, that entitle commercial activities, investments or associated activities to treatment more favorable than that accorded by this Treaty in like situations.

2. The nondiscrimination and most-favored nation provisions of this Treaty shall not apply to advantages accorded by either Party to nationals or companies of any third country by virtue of:

(a) that Party's binding obligations that derive from full membership in a free trade area or customs union or existing binding obligations under the Council of Mutual Economic Assistance; or

(b) that Party's binding obligations under any multilateral international agreement under the framework of the General Agreement on Tariffs and Trade entered into subsequent to this Treaty.

3. This Treaty shall, not preclude the application by either Party of measures necessary for the maintenance of public order, the fulfillment of its obligations with respect to the maintenance or restoration of international peace or security, or the protection of its own essential security interests.

4. This Treaty shall not preclude either Party from prescribing special formalities in connection with the establishment of investments or the conduct of commercial activities, but such formalities shall not impair the substance of any of the rights set forth in this treaty.

5. This Treaty shall not preclude either Party from establishing qualifications for the practice of professions.

*ARTICLE XIII*

*Application to Political Subdivisions*

This Treaty shall apply to the political subdivisions of the Parties.

ARTICLE XIV

*Entry Into Force and Termination*

1. This Treaty shall be ratified and shall enter into force on the thirtieth day following the date of the exchange of instruments of ratification which shall take place in Warsaw. It shall remain in force for a period of ten years and shall continue in force unless terminated in accordance with paragraph 3 of this Article.

2. This Treaty shall apply to investments and associated activities and to commercial activities existing at the time of entry into force as well as to investments made or acquired and commercial activities undertaken while this Treaty is in force.

3. Either Party may, by giving one year's written notice to the other Party, terminate this Treaty at the end of the initial ten year period or at any time thereafter.

4. With respect to investments made or acquired and commercial activities undertaken prior to the date of notice of termination of this Treaty and to which this Treaty otherwise applies, the provisions of all of the other Articles of this Treaty shall thereafter continue to be effective for a further period of ten years from such date of termination.

5. The Annex, Protocol and related letters exchanged this day on assistance to investors, tourism and travel-related services, intellectual property, and entry of United States investments shall form an integral part of the Treaty.

IN WITNESS WHEREOF, the respective plenipotentiaries have signed this Treaty.

DONE in duplicate at Washington on the twenty-first day of March, 1990 in the English and Polish languages, both texts being equally authentic.

For the United States of America:

George Bush.

For the Republic of Poland:

Tadeusz Mazowiecki.

ANNEX

1. Consistent with Article II, paragraph 1, the United States reserves the right to make or maintain limited exceptions in the sectors or matters it has indicated below:

air transportation; ocean and coastal shipping; banking; insurance; government grants; government insurance and loan programs; energy and power production; custom house brokers; ownership of real estate; ownership and operation of broadcast or common carrier radio and television stations; ownership of shares in the Communications Satellite Corporation; the provision of common carrier telephone and telegraph services; the provision of submarine cable services; use of land and natural resources;

2. Consistent with Article II, paragraphs 1 and 9, the United States shall accord treatment in accordance with its laws and regulations with respect to primary dealership in U.S. government securities; maritime related services; and the sale, offering for sale and acquisition of equity shares and other securities and all services and activities related thereto.

3. Consistent with Article III, paragraph 2, the United States reserves the right to make or maintain limited exceptions in the sectors or matters noted in paragraph 1 of this Annex.

4. Consistent with Article 11, paragraph 1, the Republic of Poland reserves the right to make or maintain limited exceptions in the sectors or matters it has indicated below:

air transportation; ocean and coastal shipping; banking; insurance; government grants; government insurance and loan programs; energy and power production; custom house brokers; ownership and use of real estate; ownership and operation of broadcast or common carrier radio and television stations; the provision of postal, telephone, telegraph and other telecommunications services; exploitation of natural resources; commercial agency and broker activities performed for third parties; railway transportation; dealership in securities; the sale, offering for sale and acquisition of equity shares and other securities; maritime related services; publishing and printing activities; lotteries and games of chance; public utilities; spirits and alcoholic beverages; operation of ports and airports.

The Republic of Poland reaffirms its intention to eliminate the state monopoly status of a number of sectors and matters listed above. As the process of privatization and demonopolization progresses, the Republic of Poland intends to remove some of these sectors or matters from the list of exceptions in this Annex. The Republic of Poland will notify the Government of the United States the measures being taken in fulfillment of the Republic of Poland takes note of the particular interest in the sectors of telecommunications, publishing and printing, banking and other financial services (including insurance).

5. Consistent with Article II, paragraph 8(c), the Republic of Poland shall accord the treatment provided therein with respect to access to financial institutions and credit markets only to (i) nationals of the United States legally resident in the territory of the Republic of Poland; and (ii) companies incorporated in the republic of Poland which are owned or controlled directly

or indirectly by nationals or companies of the United States. The Parties understand that these Limitations shall be eliminated upon the introduction of the full convertibility of the zloty.

6. Consistent with Article III, paragraphs 2(c) and 3, the Republic of Poland shall accord the treatment provided therein with respect to access to financial institutions, credit markets and foreign exchange only to (i) nationals of the United States legally resident in the territory of the Republic of Poland; and (ii) companies incorporated in the Republic of Poland which are owned or controlled directly or indirectly by nationals or companies of the United States. The Parties understand that these limitations shall be eliminated immediately upon the introduction of the full convertibility of the zloty.

7. During the period of transformation of Polish economic law but in no case beyond December 31, 1992, the Republic of Poland may add to the list of sectors or matters indicated in this Annex if needed in order to comply with changes in Polish law, provided that any such modifications shall be kept to a minimum and shall not significantly impair investment or commercial opportunities for nationals and companies of the United States under this Treaty. Any modifications under this paragraph shall not apply to investments and associated activities existing at the time such modifications become effective.

## PROTOCOL

1. The Republic of Poland agrees that nationals and companies of the United States shall be free to select commercial agents of their choice and to agree upon commission rates with such agents.

2. The Parties understand that with respect to transfers referred to in Article V, paragraph 1 of the Treaty, the term "without delay" means that transfers should be made in accordance with normal banking and commercial practices. The Parties further understand that normal banking and commercial practices in the Republic of Poland are generally governed by the National Bank of Poland. Under current provisions issued by the Bank, companies which are investments can obtain foreign exchange within three working days if such foreign exchange is obtained from a bank lised to conduct foreign exchange transactions, and eight working days in all other instances in connection with payments for imported goods and related services.

3. The Republic of Poland affirms its policy of ensuring that bank deposits held within the territory of Poland receive a positive real rate of interest.

4. Notwithstanding the provisions of Article V, paragraph with regard to the Republic of Poland the transfer of profits derived from an investment exceeding the amount transferrable under Article 19, paragraph 1, of the Law of December 23, 1988 on Economic Activity with the Participation of Foreign Parties shall be made according to the following schedule:

As of 1st January 1992: 20 percent of the remaining profits gained in 1990-1991 and not previously transferred.

As of lst January 1993: 35 percent of the remaining profits gained in 1990-1992 and not previously transferred.

As of lst January 1993: 50 percent of the remaining profits gained in 1990-1993 and not previously transferred.

As of lst January 1995: 80 percent of the remaining profits gained in 1990-1993 and not previously transferred.

As of lst January 1996: 100 percent of the remaining profits gained in 1990-1995 and not previously transferred, and 100 percent of profits gained thereafter.

If the Republic of Poland introduces full convertibility of its currency before lst January 1996, transfers of profits shall be made without restrictions from the date of introduction of full convertibility.

5. The Republic of Poland shall ensure that the opportunity exists to invest profits which cannot be transferred in accordance with paragraph 3 of this Protocol in a bank account that yields a positive real rate of interest.

DEPARTMENT OF COMMERCE,

*Washington, DC, March 21, 1990.*

Mr. DARIUSZ LEDWOROWSKI,

*Undersecretary of State,*

Ministry of Foreign Economic Relations,

Warsaw, Poland

DEAR MR. MINISTER: I have the honor to confirm the following understanding in relation to United States companies and Polish companies which was reached between the delegations of the United States and the Republic of Poland in the course of negotiations of the Treaty Concerning Business and Economic Relations signed this day:

The Government of the Republic of Poland agrees to designate within the Agency for Foreign Investments a Deputy President to assist U.S. nationals and companies in deriving the full benefits of the Treaty in connection with their investment and associated activities.

The Deputy President will serve as the government coordinator and problem solver for investors experiencing difficulties with registration, licensing, nondiscriminatory access to utilities regulatory and other matters.

The office will provide the following types of services:

information on current national and local business/investment regulations, including licensing and registration procedures, taxation, labor regulation, accounting standards and access to credit;

a notification procedure on proposed regulatory or legal changes affecting investors and circulation of notices on regulatory changes and their entry into force;

coordination with Polish government agencies at the national and local level to facilitate investment and resolve disputes;

identification and dissemination of information on investment projects and their sources of finance;

assistance to investors experiencing difficulties in repatriating profits and obtaining foreign exchange.

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business a Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your Government.

Sincerely,

Robert A. Mosbacher

*Secretary of Commerce.*

[DEPARTMENT OF STATE, DIVISION OF LANGUAGE SERVICES-TRANSLATION LS No. 132108 A JS/AO Polish]

MINISTRY OF ECONOMIC COOPERATION WITH FOREIGN COUNTRIES,

*Under Secretary of State*.

Hon. ROBERT A. MOSBACHER,

*Secretary of Commerce, US. Department of Commerce, Washington,*

DEAR MR. SECRETARY: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland and the United States in the course of the negotiations of the Treaty Concerning Business and Economic Relations signed this day:

[The English translation of this letter agrees in all substantive respects with the text of Secretary Mosbacher's letter on assistance to investors.]

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your Government.

Respectfully,

(S) D. LEDWOROWSKI.

WASHINGTON, March 21, 1990.

DEPARTMENT OF COMMERCE,

*Washington DC, March 21, 1990.*

Mr. DARIUSZ LEDWOROWSKI,

*Under Secretary of State,*

Ministry of Foreign Economic Relations,

*Warsaw, Poland*.

DEAR MR. MINISTER: I have the honor to confirm the following understanding in relation to United States companies and Polish companies providing tourism and travel-related services, which was reached between the delegations of the United States and the Republic of Poland in the course of negotiations of the Treaty Concerning Business and Economic Relations signed this day.

1. The Parties recognize the need to encourage and promote the growth of tourism and travel-related investment and trade between the United States of America and the Republic of Poland,

2. The Parties recognize the benefits to both economics of increased tourism and travel-related investment in and trade between their two territories.

3. Each Party shall ensure, within the scope of its legal authority, that any company owned, controlled or administered by that Party, or any joint venture therewith, which effectively controls a significant portion of supply of any travel or tourism services shall provide that service to the nationals and companies of the other Party on a fair and equitable basis.

In furtherance of the provisions of this letter, we take note of the Agreement between the Government of the United States of America and the Government of the Polish People's Republic on the Development and Facilitation of Tourism, signed on September 20, 1989.

Nothing in this understanding shall be construed to mean that tourism and travel-related services shall not receive the benefits from the Treaty Concerning Business and Economic Relations as fully as other industries and sectors.

I have the honor to propose that this understanding be treated as an integral party of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your Government.

Sincerely,

ROBERT A. MOSBACHER,

*Secretary of Commerce*.

[DEPARTMENT OF STATE, DIVISION OF LANGUAGE SERVICES-TRANSLATION LS No. 132108 A JS/AO Polish]

MINISTRY OF ECONOMIC COOPERATION WITH FOREIGN COUNTRIES,

*Under Secretary of State.*

Hon. ROBERT A. MOSBACHER,

Secretary of Commerce,

U.S. Department of Commerce,

Washington, D.C.

DEAR MR. SECRETARY: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland the United States in the course of the

negotiations of the Treaty Concerning Business and Economic Relations signed this day. [The English translation of this letter agrees in all substantive respects with the text of Secretary Mosbacher's letter on tourism.]

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your Government.

Respectfully,

(S) D. LEDWOROWSKI.

WASHINGTON, March 21, 1990

U.S. TRADE REPRESENTATIVE,

EXECUTIVE OFFICE OF THE PRESIDENT,

Mr. DARIUSZ LEDWOROWSKI,

*Under Secretary of State,*

Ministry of Foreign Economic Relations,

*Warsaw, Poland.*

DEAR MR. MINISTER: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland and the United States of America in the course of negotiating the Treaty Concerning Business and Economic Relations signed on this day.

The Republic of Poland will adhere to the Paris Act of the Berne Convention for the Protection for Literary and Artistic Works before 1 January 1991.

The Republic of Poland will explicitly extend copyright protection to computer software before 31 December 1991. The terms of protection for computer software will be equivalent to that provided for other literary works.

The Republic of Poland will provide a term of protection of twenty years from filing for patents in all areas of technology will limit the scope of application of criteria of compulsory lice by 31 December 1991, as provided in the attached Annex 1.

The Republic of Poland will provide patent protection for food-stuffs, pharmaceutical products, and chemical products by 31 December 1992. The protection provided will have the characteristics enumerated in the attached Annex 1.

The Republic of Poland will provide adequate and effective protection for integrated circuit layout designs by 31 December 1991. The protection provided will have the characteristics enumerated in the attached Annex 2.

The Republic of Poland will provide adequate and effective protection against unfair competition, particularly protection for proprietary information by 31 December 1991. The protection provided will have the characteristics enumerated in the attached Annex 3.

The Republic of Poland will participate constructively in the Uruguay Round Negotiations on Trade-Related Aspects of Intellectual Property Protection.

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared By your Government.

Sincerely,

CARLA A. HILLS,

U.S. Trade Representative.

## ANNEX 1

### PRODUCT PROTECTION

The Republic of Poland will provide adequate and effective Protection of patents, which includes the following characteristics:

1. Parties may limit the patent owner's exclusive rights solely through non-exclusive compulsory licenses and only to remedy an abuse of exclusive rights, such as adjudicated violation of competition laws or to address, during its existence, a declared national emergency. Compensation to the patent owner commensurate with the market value for the license of the patent shall be required when the compulsory license is issued. Such compulsory licenses shall be subject to judicial review.

2. The Parties may use patents for governmental purposes on a non-exclusive basis provided that such use does not substantially prejudice the legitimate economic interests of the patent owner.

3. For the purpose of satisfying the Polish market through local manufacture, if economically justifiable, the Republic of Poland shall provide transitional protection for products not currently patentable under Polish law which have the following characteristics:

(i) The product will be patentable after 31 December 1992 in the Republic of Poland;

(ii) A patent has been issued for the product in a country which currently grants product patents for that class of inventions; and

(iii) The product has not been marketed in the Republic of Poland.

Owners of products meeting these criteria shall have the right to obtain an exclusive registration to produce and market the product in the Republic of Poland if the patent owner applies for Polish marketing approval within six months of obtaining their first marketing approval in any country and if they meet Polish requirements for marketing approval.

The term of the exclusive right to produce and market in the Republic of Poland shall be the same as the unexpired term of the patent in the country of original registration.

## ANNEX 2

### PROTECTION INTEGRATED CIRCUIT LAYOUT DESIGNS

The Republic of Poland will provide protection for integrated circuit layout designs. The protection will have the following characteristics.

1. Protection shall be granted to any original layout design incorporated in a semiconductor integrated circuit chip, however the layout design is fixed or encoded.

2. If protection is conditioned upon registration of the layout designs, the applicant for a registration must be given at least two years from first commercial exploitation of the layout design to apply for registration. If deposits of identifying material or other material related to the layout design are required, the applicant for registration must not be required to disclose sensitive or confidential information unless it is essential to allow identification of the layout design.

3. The term of protection shall be at least ten years from the date of registration or, if registration is not required, from the date first commercial exploitation, whichever is earlier.

4. The owner of the layout-design shall have the exclusive right to: reproduce the layout design; incorporate the layout design in a semiconductor integrated circuit chip; and import or distribute a semiconductor integrated circuit chip incorporating the layout design including products incorporating such chips.

5. Protection does not have to extend to layout-designs that are commonplace in the integrated circuit industry at the time of their creation, or to layout-designs that are exclusively dictated by the functions of the integrated circuit to which they apply.

6. Compulsory licenses shall be non-exclusive and shall only be granted to remedy an abuse of an exclusive right such as adjudicated violation of competition laws or to address, during its existence, a declared national emergency. Semiconductor integrated circuit layout-designs may be used for governmental purposes on a non-exclusive basis. Compensation commensurate with the market value of license of the semiconductor integrated circuit layout design shall be provided when the government uses a layout design for governmental purposes or grants a compulsory license during a declared, national emergency. Decisions to grant a compulsory license and the compensation provided shall be subject to judicial review

7. The following acts should be exempted from liability:

a. reproduction of a layout design for purposes of teaching, analysis, or evaluation in the course of preparation of a layout design that is itself original;

b. importation and distribution of semiconductor integrated circuit chips, incorporating a protected layout design, which were sold by or with the consent of the owner of the layout design; and

c. importation or distribution of a semiconductor integrated circuit chip incorporating a protected layout design by a person who establishes that he or she did not know, and had no reasonable grounds to believe, that the layout design was protected, provided that such person is liable for reasonable royalties after notice is received.

ANNEX 3

PROTECTION OF PROPRIETARY INFORMATION

The Republic of Poland will provide adequate and effective protection for proprietary information, which includes any formula, device, compilation of information, computer

program, pattern, technique or process that is used or could be used in the owner's business and has actual or potential economic value from not being generally known. The protection will have the following characteristics.

1. The Republic of Poland will provide protection for proprietary information, whether such information is of a technical or commercial nature, provided that such proprietary information.

a. has actual or potential commercial value from not being known to the relevant public;

b. is not readily accessible; and

c. has been subject to reasonable efforts, under the circumstances, by the rightful proprietor to maintain the secrecy.

2.a. The appropriation, disclosure, and use of proprietary information without the consent of the proprietor shall be unlawful.

b. The Republic of Poland shall provide a equate legal remedies in administrative, civil, and criminal law to deter unlawful appropriation, use, and disclosure of proprietary information and provide full compensation for injury incurred. The lifespan of proprietary information shall not be limited so long as the conditions in paragraph 1 are met.

3.a. The Republic of Poland shall not discourage or impede voluntary licensing of proprietary information by granting licensees legal permission to disclose such information to third parties or to the public without the consent of the proprietor or by imposing excessive or discriminatory conditions on such licenses.

b. The Republic of Poland, when requiring that proprietary information be submitted to carry out governmental functions, shall not use the information for the commercial or competitive benefit of the government or of any person other than the owner, except with the owner's consent, on payment of the reasonable value of the use, r if a reasonable period of exclusive use is given the owner.

c. The Republic of Poland may disclose such proprietary information, or require that the owners of the proprietary information disclose it to third parties, only with the owner's consent or to the degree required to carry out necessary government functions, or when the owner is given an opportunity to enter into confidentiality agreements with any non-government agency receiving proprietary information to prevent further disclosure.

[DEPARTMENT OF STATE, DIVISION OF LANGUAGE SERVICES-TRANSLATION LS No. 132108 A JS/AO Polish]

MINISTRY OF ECONOMIC COOPERATION WITH FOREIGN COUNTRIES, Under Secretary of State.

Hon. CARLA HILLS,

*Representative for U.S. Commercial Affairs*,

Washington, DC.

DEAR MS. AMBASSADOR: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland and the United States in the course

of the negotiations of the Treaty Concerning Business and Economic Relations signed this day.

[The English translation of this letter agrees in all substantive respects with the text of Ambassador Hills' letter on intellectual property.]

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your Government.

Respectfully,

(S) D. LEDWOROWSKI.

WASHINGTON, DC, *March 21, 1990.*

U.S. TRADE REPRESENTATIVE,

EXECUTIVE OFFICE OF THE PRESIDENT,

*Washington, DC, March 21, 1990.*

Mr. DARIUSZ LEDWOROWSKI

*Under Secretary of State,*

Ministry of Foreign Economic Relations,

*Warsaw, Poland.*

DEAR MR. MINISTER: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland and the United States of America in the course of negotiating the Treaty concerning Business and Economic Relations (the "Treaty") signed on this day.

In the implementation of Article II, paragraph I relating to the entry of investments, the Republic of Poland shall, in its application of its relevant laws and regulations, observe the following procedures and conditions in reviewing applications for entry of United States investments:

A permit for entry of United States investments shall be issued automatically within sixty days of submission of an application unless the U.S. investor is notified in writing of denial and the grounds and reasons thereof within sixty days from the date of the submission;

A permit for entry of the U.S. investment may be denied only if it presents a threat to state economic interests, to national security or to the environment;

In evaluating the impact of the proposed investment on the environment, the standards used shall be those applied to domestic enterprises;

The criterion of "threat to state economic interests" shall be used only in exceptional cases and not for the purpose of limiting competition;

In implementing its investment review procedures, the Republic of Poland shall accord nationals and companies of the United States treatment at least as favorable as that provided the nationals and companies of any third country;

Within two years from the entry into force of the Treaty, the Governments of the Republic of Poland and the United States shall review the existing statutory provisions on screening with a view to narrowing the scope of investments that require a formal entry permit and subsequently phasing out such permits..

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding is shared by your government.

Sincerely,

CARLA A. HILLS,

*U.S. Trade Representative.*

[DEPARTMENT OF STATE, DIVISION OF LANGUAGE SERVICES-TRANSLATION LS No. 132108 A JS/AO Polish]

MINISTRY OF ECONOMIC COOPERATION WITH FOREIGN COUNTRIES, Undersecretary of State.

Hon. MS. CARLA HILLS,

*Representative for U.S. CommercialAffairs, Washington, DC.*

DEAR Ms. AMBASSADOR: I have the honor to confirm the following understanding reached between the delegations of the Republic of Poland and the United States in the course of the negotiations of the Treaty Concerning Business and Economic Relations signed this day.

[The English translation of this letter agrees in all substantive respects with the text of Ambassador HILLS' letter on entry of investments.]

I have the honor to propose that this understanding be treated as an integral part of the Treaty Concerning Business and Economic Relations.

I would be grateful if you would confirm that this understanding shared by your Government.

Respectfully,

(S) D. LEDWOROWSKI.

WASHINGTON, DC, March 21, 1990.