# EXHIBIT C

# AGREEMENT

**for the lease of the "JAGODA" holiday resort on the Piaseczno Lake.**

On February 15, 2007 between the Ludwin Commune represented by:

**Mayor of the Commune - ZYGMUNT OGOREK**
hereinafter referred to as "Lessor", and '' Antar LTD '' a limited liability partnership. with its registered office in Lublin at Romanowskiego 20, 20-707 Lublin, entered in the register of entrepreneurs of the National Court Register under No. 0000102536 kept by the District Court - Commercial Court in Lublin, XI Division of the National Court Register represented by the President of the Board - ANDRZEJ PAWLAK
hereinafter referred to as "Lessee", the following contract was concluded:

§ 1

1. Lessor declares that he is the owner of the property constituting the plots marked in the land register of the village of Rozpłucie Pierwsze No. 90 and 94/2 with a total area of 9.19 ha. pursuant to the decision of Wojewoda Lubelski GP.GT-2/8237/1 / WL-2/32/91 as of October 9, 1991.
2. The Lessee is taking the lease, and the Lessor gives the lease for the period from March 1, 2007 till December 31, 2032 the property consisting of:
plots marked with No. 90 and 94/2 with a total area 9, 19 ha built-up by:
    1. a guesthouse for 50 beds,
    2. a fast food bar,
    3. an outbuilding,

    and a campsite, excluding a 2m wide strip of a land counting from the fence grid, from the northern side for the pedestrian passage, based on the Resolution of the Council of Ludwin Commune No. VI / 146/03 of April 11, 2003 (Appendix No. 1) and Resolution No. 1/2007 of the Extraordinary General Meeting of Shareholders of Antar Ltd dated February 8, 2007 (Appendix No. 2).
3. Indicated in point 1 real estate in accordance with the local spatial development plan of Piaseczno Lake is intended as a tourist services area with the maintenance of a widely available Holiday Resort.
4. The lessee will use the subject of the lease for running a business:
    – the Lessee's goal is to adapt the property to the needs of a modern high-standard holiday resort, where vacationers will be able to have comprehensive physical and mental recreation services available in accordance with the Program and Spatial Concept of the summer recreation center at Lake Piaseczno constituting Annexe No. 3 to this Agreement.
5. The subject matter of the lease contract will be passed over on the basis of the acceptance protocol signed by the parties or persons authorized by them until the date of February 28, 2007.

§2

The Lessor declares that the real property indicated in § 1 is free from all encumbrances and rights in property and liabilities of third parties and does not know about any circumstances that preclude the use of real property for running a holiday resort.

§3

1. The Lessee undertakes to conduct the subject of the lease in accordance with the principles of a rational economy, and in particular to keep the building and equipment in good condition,
2. The Lessee's duties include maintaining order and cleanliness in the area being the subject of the lease.
3. The Lessee undertakes not to destroy or cut down trees and shrubs subject to point 4.
4. The removal of trees and shrubs of the sick, withered or threatening the safety of persons and those colliding with the planned modernization and extension of the center may take place in the mode of the Nature Conservation Act.

§4

1. The Lessor gives to the Lessee the property listed in § 1 for exclusive use and collection of benefits.
2. The Lessor undertakes to secure the passage from the property to the lake through areas belonging to the State Forests.
3. The Lessor agrees to secure the possibility of development and use by the Lessee of the coastal belt and the beach parallel to the real estate being the subject of the contract.

§5

1. The lessee may not rise buildings on the leased property without the consent of the Lessor subject to § 9
2. Without the consent of the Lessor, the Lessee may not transfer rights in its entirety resulting from this contract for third parties
3. The Lessee will have the right to assign the rights and obligations arising from this contract in the case of transformation of the Lessee's company or for the benefit of a subsidiary or related to the Lessee

§6

1. The lessee bears responsibility for own devices located in the area constituting the subject of the lease contract.
2. The obligation to insure the subject of the lease of fortuitous events and civil liability in respect of the conducted activity is subject to the Lessee.
3. The lessee should acquire the insurance referred to in paragraph 2 within 30 days from the date of signing this contract.

§7

1. The lessee will pay the Lessor a rent of PLN 50,000.00 + 22% VAT (in words: fifty thousand zlotys + 22% VAT) for the settlement period.
2. The parties agree that the settlement period will be a period of 12 months calculated from the date of validity of the contract, on March 1, 2007.
3. The rent determined in point 1 is valid until the end of the first billing period.
4. The rent for subsequent settlement periods will be determined until March 31 of each year preceding the lease year, taking into account only and exclusively the inflation rate adopted in the budget act for a given year.
5. In addition to the rent, the Lessee undertakes to pay the Lessor 10% of the "net" profit obtained from running the Holiday Resort by

    April 15 each year.
6. The payment of the rent will be from the bottom to the last day of the settlement period for the benefit of the Ludwin Commune to the indicated account.
7. Change in rent in the mode of point 4 does not require changing the contract in the form of an annex.
8. In the event of delay in payment of the rent or profit of the Lessor, statutory interest is payable, subject to § 10 point 2.

§8

1. The parties may terminate this contract before the end of the period for which it was concluded on the basis of mutual agreement.
2. The Lessor may terminate the contract with immediate effect without notice periods if the Lessee violates the contractual provisions set out in § 3, § 5 and § 6 point 3.
3. The solution for the reasons referred to in point 2, may take place only after prior request and appointment of an additional deadline to remove or refrain from violation.

§9

1. The Lessee undertakes to incur real estate expenses, and the Lessor agrees that his own expenses on the property documented by the Lessee will be deducted from the rent. If the amount of expenditure exceeds the amount of rent in a given year, the difference will be taken into account in subsequent years.
2. By the expenditures referred to in point 1 should be understood:
   a. investment outlays in the course of adapting the real estate for use as a modern Holiday Resort and in the course of real estate use and operation of the facility
   b. costs of replacement, reconstruction and dismantling of used infrastructure, demolition and construction of buildings, structures and other construction objects
3. The Lessee undertakes, and the Lessor agrees to adapt the property for use as a modern holiday resort through: exchange, reconstruction and demolition of used infrastructure, demolition and construction of new buildings, structures and other construction objects.
4. The Lessee declares that he will endeavor to adapt the property for the purpose of operating the Holiday Resort by using external funds, among others European Union funds or other target funds.
5. Determination by the parties of the amount of outlay, consisting of the deduction for rent in the mode of point 1 shall take place each time before they are borne by the Lessee based on an investment cost estimate.
6. Lack of the Lessor's consent to the material scope of the outlays (determined on the basis of the investor's cost estimate) results in the lack of a basis for including them in the amount of the rent. At the same time, the lack of the Lessor's consent for the material scope of expenditures may take place only and exclusively if the given expenditure exceeds the scope of expenditures specified in point 2 and was not included in the investor's cost estimate.
7. The crediting or not crediting by the Lessor of expenses incurred by the Lessee referred to in point 2 must be made in writing within 14 days from the date of the cost estimate by the Lessee.

§ 10

1. The Lessee has the right to terminate this contract with a 12-month notice period.
2. The Lessor has the right to terminate the contract without observing the time limit

termination if the Lessee is delayed to pay more than three months to pay the rent. However, prior to the termination of the contract, the Lessor is required to notify the Lessee by providing him with an additional three-month period to pay the overdue rent.

§ 11

1. After the termination of the lease contract pursuant to § 8 point 2 and § 10 the lessee is obliged to:
   1) leave adaptations and upgrades as well as other expenditures on the subject of this contract to the property of the Lessor without returning their equivalent
   2) the equipment and other components of the property should be returned in a condition not worse than specified in the acceptance report drawn up at the conclusion of the contract, taking into account consumption as a result of the activity.

2. After the termination of the contract in accordance with § 8 point 1 the Lessor is obliged to return the expenses incurred by the Lessee, not counted towards the rent in accordance with § 9 point 5 and 6.

§ 12

1. The Lessee has the right to purchase the subject of the lease contract in the way of no tender (no auction) on the terms specified in separate regulations (in the case of development based on a building permit).

§ 13

In matters not regulated by the contract, the provisions of the Civil Code shall apply.

§ 14

Any disputes that may arise from the contractual relationship are submitted to the competent common court.

§ 15

Amendments to the contract must be made in writing under pain of nullity, subject to § 7 point 7.
.

§ 16

The contract was drawn up in two identical copies, 1 for each party.

Lessee:                                                                                          Lessor:

Attachments:
1. Resolution of the Ludwin Commune Council no. VI / 146/03 of 11/04/2003.
2. Resolution of the Extraordinary General Meeting of Shareholders of Antar Ltd dated 8.02.07
3. Program and spatial concept of a recreational resort on the lake Piaseczno

# ORIGINAL

SOLO INVESTMENT SP. z O.O.
vs
GMINA LUDWIN

## ZAŁĄCZNIK nr 2

*Uwierzytelniona kopia Umowy dzierżawy Ośrodka Wypoczynkowego 'JAGODA' nad Jeziorem Piaseczno*

PREZES ZARZĄDU
„Solo Investment" Sp. z o.o
*[signature]*
Jarosław Tarnasiewicz-Heldut

**"SOLO INVESTMENT"**
Sp. z o.o.
Regon 141629941  Nip 7010176454
**RESORT PIASECZNO**
Rozpłucie Pierwsze, Gmina Ludwin
21-075 Ludwin

**ZA ZGODNOŚĆ Z ORYGINAŁEM**
**SOLO INVESTMENT SP. Z O.O.**
*Jarosław Tarnasiewicz-Heldut*
Prezes Zarządu

# UMOWA

dzierżawy Ośrodka Wypoczynkowego "JAGODA" nad jeziorem Piaseczno.

Dnia 15.02.2007r. pomiędzy Gminą Ludwin reprezentowana przez:

**Wójta Gminy – ZYGMUNTA OGÓRKA**
zwaną w dalszej treści umowy "Wydzierżawiającą", a "Antar LTD" spółka z o.o. z siedzibą w Lublinie przy ul. Romanowskiego 20, 20-707 Lublin wpisaną w rejestrze przedsiębiorców Krajowego Rejestru Sądowego pod nr 0000102536 prowadzonego przez Sąd Rejonowy- Sąd Gospodarczy w Lublinie, XI Wydział Krajowego Rejestru Sądowego reprezentowana przez
**Prezesa Zarządu – ANDRZEJA PAWLAKA**
zwaną w dalszej treści umowy "Dzierżawcą" została zawarta umowa następującej treści:

§ 1

1. Wydzierżawiająca oświadcza, że jest właścicielem nieruchomości stanowiącej działki oznaczone w ewidencji gruntów wsi Rozpłucie Pierwsze nr 90 i 94/2 o łącznej powierzchni 9,19ha. na mocy decyzji Wojewody Lubelskiego GP.GT-2/8237/I/WL-2/32/91 z dnia 09.10.1991r.
2. Wydzierżawiająca oddaje w dzierżawę, a Dzierżawca bierze w dzierżawę, na okres od 01.03.2007r. do dnia 31.12.2032r. nieruchomość składającą się z:
   działek oznaczonych nr 90 i 94/2 o łącznej pow. 9,19 ha zabudowanych:
   1) pensjonatem na 50 miejsc noclegowych,
   2) barem szybkiej obsługi,
   3) budynkiem gospodarczym,
   
   oraz pole namiotowe, z wyłączeniem pasa gruntu o szerokości 2mb licząc od siatki ogrodzeniowej, od strony północnej z przeznaczeniem na ciąg pieszy, na podstawie Uchwały Rady Gminy Ludwin nr VI/146/03 z dnia 11.04.2003 (Załącznik nr 1) oraz Uchwały nr 1/2007 Nadzwyczajnego Walnego Zgromadzenia Wspólników Antar Ltd z dnia 8.02.2007 (Załącznik nr 2).
3. Wskazana w ust. 1 nieruchomość zgodnie z miejscowym planem zagospodarowania przestrzennego Jeziora Piaseczno przeznaczona jest jako teren usług turystyki z utrzymaniem ogólnodostępnego Ośrodka Wypoczynkowego.
4. Dzierżawca będzie wykorzystywał przedmiot dzierżawy na prowadzenie działalności gospodarczej:
   - celem Dzierżawcy jest przystosowanie nieruchomości na potrzeby nowoczesnego Ośrodka Wypoczynkowego o wysokim standardzie, gdzie osoby wypoczywające będą mogły mieć udostępnione kompleksowe usługi w zakresie rekreacji fizycznej i psychicznej zgodnie z Koncepcją programowo-przestrzenną ośrodka rekreacji letniej nad jeziorem Piaseczno stanowiącą Załącznik nr 3 do niniejszej umowy.
5. Wydanie przedmiotu umowy nastąpi na podstawie protokołu zdawczo-odbiorczego podpisanego przez strony lub osoby przez nie upoważnione w terminie do dnia 28.02.2007.

§ 2

Wydzierżawiająca oświadcza, iż wskazana w § 1 nieruchomość jest wolna od obciążeń i praw rzeczowych oraz zobowiązań osób trzecich oraz nie wie o żadnych okolicznościach wykluczających wykorzystywanie nieruchomości na prowadzenie Ośrodka Wypoczynkowego.

ANTAR LTD Sp. z o.o.
20-707 Lublin, ul. Romanowskiego 20
Tel. 0 81 743-27-78, 0 81 527-66-60, 0 81 524-01-72
Konto: BOŚ, o/Lublin #56 1540 1144 2001 6429 9299 0001
NIP # 713-27-18-002    REGON # 432495180


GMINA LUDWIN

-2-

§ 3

1. Dzierżawca zobowiązuje się prowadzić przedmiot dzierżawy zgodnie z zasadami racjonalnej gospodarki, a w szczególności utrzymać w należytym stanie budynek i urządzenia.
2. Do obowiązków Dzierżawcy należy, utrzymanie porządku i czystości na terenie stanowiącym przedmiot dzierżawy.
3. Dzierżawca zobowiązuje się nie niszczyć oraz nie wycinać drzew i krzewów z zastrzeżeniem ust. 4.
4. Usunięcie drzew i krzewów chorych, uschniętych lub zagrażających bezpieczeństwu osób oraz kolidujących z planowaną modernizacją i rozbudową ośrodka może nastąpić w trybie ustawy o ochronie przyrody.

§ 4

1. Wydzierżawiająca oddaje Dzierżawcy wymienioną w § 1 nieruchomość do wyłącznego używania i pobierania pożytków.
2. Wydzierżawiająca zobowiązuje się do zabezpieczenia przejścia z terenu nieruchomości do jeziora przez tereny należące do Lasów Państwowych.
3. Wydzierżawiająca zobowiązuje się do zabezpieczenia możliwości zagospodarowania oraz korzystania przez Dzierżawcę z pasa brzegowego oraz plaży równoległej do nieruchomości będącej przedmiotem umowy.

§ 5

1. Dzierżawca nie może bez zgody Wydzierżawiającej wznosić na dzierżawionych gruntach budynków z zastrzeżeniem § 9.
2. Bez zgody Wydzierżawiającej Dzierżawca nie może przekazać w całości uprawnień wynikających z niniejszej umowy na rzecz osób trzecich.
3. Dzierżawca będzie miał prawo cesji praw i obowiązków wynikających z niniejszej umowy w przypadku przekształcenia firmy Dzierżawcy lub też na rzecz podmiotu zależnego lub powiązanego z Dzierżawcą.

§ 6

1. Dzierżawca ponosi odpowiedzialność za urządzenia własne znajdujące się na terenie stanowiącym przedmiot umowy dzierżawy.
2. Obowiązek ubezpieczenia przedmiotu dzierżawy od zdarzeń losowych oraz OC z tytułu prowadzonej działalności ciąży na Dzierżawcy.
3. Dzierżawca winien dokonać ubezpieczenia określonego w ust. 2 w terminie 30 dni od daty podpisania niniejszej umowy.

§ 7

1. Dzierżawca będzie płacić Wydzierżawiającej czynsz dzierżawny w wysokości 50 000,00 zł. + 22% podatku VAT (słownie: pięćdziesiąt tysięcy złotych + 22% podatku VAT) za okres rozliczeniowy.
2. Strony ustalają, iż okresem rozliczeniowym będzie okres 12 miesięcy liczony od dnia obowiązywania umowy tj 1.03.2007.
3. Czynsz ustalony w ust. 1 obowiązuje do końca pierwszego okresu rozliczeniowego.
4. Czynsz na następne okresy rozliczeniowe będzie ustalany do 31 marca każdego roku poprzedzającego rok dzierżawny z uwzględnieniem tylko i wyłącznie stopnia inflacji, przyjętego w ustawie budżetowej na dany rok.
5. Oprócz czynszu dzierżawy, Dzierżawca zobowiązuje się płacić Wydzierżawiającej 10 % zysku netto uzyskanego z prowadzenia Ośrodka Wypoczynkowego w terminie do



-3-

dnia 15 kwietnia każdego roku.
6. Zapłata czynszu następować będzie z dołu do ostatniego dnia okresu rozliczeniowego na rzecz Gminy Ludwin na wskazane konto.
7. Zmiana czynszu w trybie ust. 4 nie wymaga zmiany umowy w formie aneksu.
8. W przypadku zwłoki w płatności czynszu lub zysku Wydzierżawiającej przysługują odsetki ustawowe, z zastrzeżeniem § 10 ust.2.

§ 8

1. Strony mogą rozwiązać niniejszą umowę przed upływem okresu, na który została zawarta na zasadzie porozumienia stron.
2. Wydzierżawiająca może rozwiązać umowę ze skutkiem natychmiastowym bez zachowania okresów wypowiedzenia jeżeli Dzierżawca narusza postanowienia umowne określone w § 3 , § 5 i § 6 ust. 3.
3. Rozwiązanie z przyczyn o których mowa w ust. 2, może nastąpić wyłącznie po uprzednim wezwaniu i wyznaczeniu dodatkowego terminu do usunięcia lub zaniechania naruszeń.

§ 9

1. Dzierżawca zobowiązuje się do ponoszenia nakładów na nieruchomość, a Wydzierżawiający wyraża zgodę by udokumentowane przez Dzierżawcę nakłady własne na nieruchomość były potrącane z czynszu dzierżawnego. Jeżeli kwota nakładów przekracza w danym roku kwotę czynszu dzierżawnego, to różnica zostanie uwzględniona w latach następnych.
2. Przez nakłady, o których mowa w ust. 1 należy rozumieć:
    1) nakłady inwestycyjne w toku przystosowania nieruchomości do użytkowania jako nowoczesnego Ośrodka Wypoczynkowego i w toku użytkowania nieruchomości i eksploatacji obiektu:
    2) koszty wymiany, przebudowy i rozbiórki zużytej infrastruktury, wyburzenia i budowa budynków, budowli i innych obiektów budowlanych:
3. Dzierżawca zobowiązuje się, a Wydzierżawiająca wyraża zgodę do przystosowania nieruchomości do użytkowania jako nowoczesny Ośrodek Wypoczynkowy poprzez: wymianę, przebudowę i rozbiórkę zużytej infrastruktury, wyburzenia i budowy nowych budynków, budowli i innych obiektów budowlanych.
4. Dzierżawca oświadcza, iż dołoży starań by przy przystosowaniu nieruchomości do celów prowadzenia Ośrodka Wypoczynkowego zostały wykorzystane środki zewnętrzne m.in. Środki Unii Europejskiej lub inne fundusze celowe.
5. Ustalenie przez strony wysokości nakładów, polegających zaliczeniu na poczet czynszu dzierżawnego w trybie ust. 1 następować będzie każdorazowo przed ich poniesieniem przez Dzierżawcę na podstawie kosztorysu inwestorskiego.
6. Brak zgody Wydzierżawiającej na zakres rzeczowy nakładów (ustalonych na podstawie kosztorysu inwestorskiego) skutkuje brakiem podstawy do zaliczenia ich na poczet czynszu dzierżawnego. Przy czym brak zgody Wydzierżawiającej na zakres rzeczowy nakładów, może nastąpić tylko i wyłącznie jeżeli dany nakład wykracza poza zakres nakładów określonych w ust. 2 i nie został ujęty w kosztorysie inwestorskim.
7. Zaliczenie lub niezaliczenie przez Wydzierżawiającą nakładów poniesionych przez Dzierżawcę określonych w ust.2 musi nastąpić w formie pisemnej w okresie 14 dni od daty złożenia kosztorysu inwestorskiego przez Dzierżawcę.

§ 10

1. Dzierżawca ma prawo rozwiązania niniejszej umowy z zachowaniem 12-miesięcznego okresu wypowiedzenia.
2. Wydzierżawiająca ma prawo do rozwiązania umowy bez zachowania terminu



ZA ZGODNOŚĆ Z ORYGINAŁEM
SOLO INVESTMENT SP. Z O.O.
Jarosław Tarnasiewicz-Heldut
Prezes Zarządu

- 4 -

wypowiedzenia jeżeli Dzierżawca dopuszcza się zwłoki z zapłatą czynszu ponad trzy miesiące. Jednakże przed rozwiązaniem umowy Wydzierżawiająca ma obowiązek uprzedzenia Dzierżawcy udzielając mu dodatkowego trzymiesięcznego terminu do zapłaty zaległego czynszu.

§ 11

1. Po rozwiązaniu umowy dzierżawy w trybie § 8 ust. 2 i § 10 Dzierżawca obowiązany jest:
   1/ pozostawić dokonane adaptacje i modernizacje oraz inne nakłady na przedmiot niniejszej umowy na własność Wydzierżawiającej bez zwrotu ich równowartości
   2/ urządzenia oraz inne części składowe nieruchomości zwrócić w stanie nie gorszym niż określony w protokole zdawczo-odbiorczym sporządzonym przy zawarciu umowy z uwzględnieniem zużycia na skutek prowadzonej działalności.

2. Po rozwiązaniu umowy w trybie § 8 ust. 1 Wydzierżawiająca zobowiązana jest do zwrotu nakładów poniesionych przez Dzierżawcę, a nie zaliczonych na poczet czynszu dzierżawnego w trybie § 9 ust. 5 i 6.

§ 12

1. Dzierżawcy przysługuje prawo nabycia przedmiotu dzierżawy w drodze bezprzetargowej na zasadach określonych w odrębnych przepisach ( w przypadku zabudowy na podstawie zezwolenia na budowę).

§ 13

W sprawach nie unormowanych umową mają zastosowanie przepisy Kodeksu Cywilnego.

§ 14

Mogące wyniknąć ze stosunku objętego umową spory strony poddają pod rozstrzygnięcie właściwego sądu powszechnego.

§ 15

Zmiany umowy wymagają formy pisemnej pod rygorem nieważności z zastrzeżeniem § 7 ust. 7.

§ 16

Umowę sporządzono w dwóch jednobrzmiących egzemplarzach, po 1 dla każdej ze stron.

Dzierżawca:                                    Wydzierżawiająca:

Załączniki:
1. Uchwała Rady Gminy Ludwin nr. VI/146/03 z dnia 11.04.2003.
2. Uchwała Nadzwyczajnego Walnego Zgromadzenia Wspólników Antar Ltd z dnia 8.02.07
3. Koncepcja Programowo-Przestrzenna ośrodka rekreacyjnego nad jez. Piaseczno