# EXHIBIT F

# 2016

DISTRICT PROSECUTOR'S OFFICE
IV Organizational and Court Division
Okopowa 2a street
20-950 Lublin

Lublin, August 16, 2016

V 79/15/S

## Decision to discontinue the investigation

Krzysztof Rubik - prosecutor of the District Prosecutor's Office in Lublin, after reading the files of the investigation with reference number V 79/15 / S in the case of acts under Art. 286 § 1 of the k.k. in connection with Art. 294 § 1 of the k.k. in connection with Art. 271 § 3 of the k.k. in connection with § 1 of the k.k. in connection with Art. 231 § 2 of the k.k. in connection with Art. 11 § 2 of the k.k. in connection with Art. 12 of the k.k. and in connection with Art. 231 § 1 of the k.k.

- based **on Article. 17 § 1 point 2 of the k.p.k.**

**decided:**

**discontinue** the investigation in the case:

1. has occurred in short time intervals, with premeditated intention, abuse of power in the period from May 4, 2006 to February 15, 2007 by appointed officers of the Ludwin Commune Office by certifying an untruth in the documentation regarding the legal status of the property, in the performance of a pre-planned intention. marked in the land register of the village of Rozpłucie Pierwsze no 90 and 94/2 with a total area of 9.19 ha. including notices of tenders and negotiations. which was the basis for negotiations on the lease of the "Jagoda" Recreation Center on Lake Piaseczno, as to the circumstances having legal significance in the form of the legal status of the indicated real estate, which led to misleading the authorities of Antar Ltd Sp. z o.o. with regard to legal defects and obligations affecting the plots of land, which resulted in the indicated company to disadvantageously dispose of its own property

1

in the amount of at least PLN 13,889,256.46 in the form of expenditure incurred in connection with the lease of the property in question, with no real possibility of its subsequent acquisition by the lessee. thereby acting to its detriment.

**i.e. for an act under Art. 286 § 1 of the Penal Code (k.k.) in connection with from Art. 294 § 1 of the k.k. with art. 271 § 3 of k.k. in connection with § 1 of k.k. in the collection with art. 231 § 2 of k.k. in connection with art. 11 § 2 of k.k. in connection with art. 12 of k.k.,**

2. has occurred in short time intervals, with premeditated intention, abuse of power and breach of duty by appointed public functionaries in the period from 19 April 2012 to 5 September 2015 in Lublin through unlawful influence, during the proceedings in Lublin District Ref. IC 28/12, for substantive examination of the indicated case without undue delay, "Solo Investment" Sp. z o.o., which was treated to the detriment of private interest of that company and to the detriment of the appearance of justice,

**i.e. for an act under Art. 231 § 1 of k.k. in connection with art. 12 of the k.k.,**

- it was found that indicated actions do not contain the constituent elements of the act prohibited (Art. 17 § 1 point 2 of the Code of Criminal Procedure (k.p.k.)).

### Substantiation

On August 7, 2015, the District Prosecutor's Office in Lublin received a notification prepared by Jarosław Tarnasiewicz Heldut that a crime had been committed by officers of the Ludwin Commune Office. He indicated in it that from 2006 to August 5, 2015 fraud was committed to the detriment of Solo Investment Sp. z o.o. (formerly Antar Ltd Sp. z o.o.) and to the detriment of his and his family by specific officials of the indicated commune, mainly the mayors Zygmunt Ogorek and Andrzej Chabros, legal advisor Alicja Kostrubiec-Bijata and the employees of Krystyna Florek, Krystyna Bilska and Szymona Czech, which

consisted in the deliberate and intended certification of untruths in the tender documents regarding the tender for the lease of real estate located in the village of Rozpłucie Pierwsze and in the lease agreement concluded between the indicated entities of February 15, 2007 concerning information on the legal status of the real estate by providing and informing that the real estate is free from encumbrances, legal defects and claims of third parties, in a situation where, at the indicated moments, proceedings were conducted in relation to the real estate at the request of legal successors owners as well on the deliberate and intended certification of untruths in a written contract for the promise of sale of real estate that could not be sold due to pending administrative proceedings, which led to the fact that the aggrieved company invested PLN 15,000,000.00 in the leased real estate, and then could not purchase ownership of the land, which caused damage to the company and indirectly to the notifying party.

In the justification of his letter, he pointed out that the owners of the aggrieved company are now Bożena Tarnasiewicz and their children Sylwia and Andrzej Tarnasiewicz. The company deals with investment activities in the construction industry. In 2006 the notifying party found out that the Jagoda holiday resort on Lake Piaseczno could be sold. However, the Ludwin Commune Office told him that in reality it could not be sold, because there would be a fear of dividing the property and reselling it to private owners, and the commune wanted to maintain the center in full. The parties decided that the company of the notifying party would lease the property and, after completing the investment, buy it back at the price of the land value. The tender notices signed by the mayor Zygmunt Ogórek, contained information that the property was free from encumbrances. Then, due to the lack of interest in the lease, negotiations took place in December 2006, from which a protocol was drawn up, signed by Krystyna Florek, Krystyna Bilska and Szymon Czech. It also contains information that the property is unencumbered. The legal counsel of the commune was responsible for preparing the documents. In § 2 of the agreement of February 15, 2007 there

was a statement that the landlord declares that the property is free from encumbrances and material rights and obligations of third parties, and is not aware of any circumstances excluding the use of the property for the purposes of running a Holiday Center. In the opinion of the notifying party, this wording misled the lessee, as the return procedure was suppressed. The investment took about 4 years. Its cost exceeded PLN 15,000,000.00, the commune accepted the expenditure in the total amount of PLN 13,889,256.46. On August 12, 2011, the company applied for the purchase of real estate, taking into account the expenses incurred. The reply of the mayor Andrzej Chabros on August 29, 2011 indicated that it is impossible. In the letter of September 15, 2011, the company renewed its call for the performance of the contractual provisions. Andrzej Chabros, on September 22, 2011, announced that the property is not for sale, as proceedings for the return of the plot have been pending since 1991. The notifying party emphasized that it was the first moment when the company learned about such a fact. Therefore, a letter was drawn up to avoid the legal consequences of the declaration of will. The company applied for the reimbursement of the equivalent of the expenditure in the accepted amount, the commune refused, so a civil case was initiated in the District Court in Lublin, I Civil Department, ref. No. IC 28/12. In a letter of March 1, 2012, the mayor announced that the only possibility of resolving the existing situation was to leave the investment by the company without return of expenditure.

In the course of accepting the oral notification of the crime and questioning Jarosław Tarnasiewicz Heldut as a witness on August 25, 2015, he additionally indicated that the commune had already emphasized in the tender notices that the property was free from encumbrances and that the commune knew nothing about the claims of persons who could have such claims. The parties concluded a "gentleman agreement", according to which the property will be sold to a real estate company after the center is built under a long-term lease agreement. He indicated that before signing the contract, it was rewritten and the provision that the lessee may terminate the contract with a one-year notice period, with reimbursement of the expenditure, was eliminated. The notifying party noticed it the next day and told the

4

mayor about it, but it was not a major problem. Jaroslaw Tarnasiewicz Heldut emphasized that he found out about Jerzy Wojtasiewicz only in 2011, the company's employees told him about the proceedings, they lived in the areas close to the center. In this situation, he contacted the attorney of the legal successor of the owner, Mr. Grotowski. Finally, he added that in the pending civil proceedings with reference number I C 28/12, three (3) expert opinions have already been called up. It admits further motions for evidence of the commune, including expert opinions, the dates of hearings are postponed and canceled, and nothing can be done with the center, which due to this, is deteriorating.

On the basis of the above notification, checks were carried out and on September 10, 2015, a decision was issued to refuse to initiate an investigation, due to the failure to identify the features of a prohibited act in relation to an act under Art. 286 § 1 of the k.k. in connection with Art. 294 § 1 of the k.k. in connection with Art. 271 § 1 of the k.k. in connection with Art. 11 § 2 of the k.k. in connection with Art. 12 of the k.k., as well as in the absence of data sufficient to justify the suspicion of committing a prohibited act in relation to an act under Art. 231 § 1 of the k.k. On October 7, 2015, the attorney of the aggrieved company, attorney Andrzej Samulak, filed a complaint, after which the District Court in Lublin was examined by a decision of November 24, 2015, issued in case no. IV Kp 1566/15 repealed the contaminated decision and referred the case for reconsideration. In the justification of his decision, he indicated that the necessary evidence was not carried out in the proceedings, in the form of, inter alia, interrogating witnesses - the authorities and employees of the Ludwin Commune and Andrzej Pawlak, in order to verify the claims that the crime had been committed to the detriment of the reporting company. Finally, he also stated that with regard to the act from point 2 of the decision refusing to initiate an investigation, and concerning the offense under Art. 231 § 1 of the k.k. the arguments of the person conducting the proceedings should be shared, because time-consuming proceedings by an independent panel of judges, in particular related to the collection of extensive evidence and consideration of requests to adjourn the hearing, do not justify the claim that are the prerequisites

5

under Art. 231 § 1 of the k.k. or other unlawful behavior detrimental to the interests of the parties to the proceedings.

Based on the materials collected in the course of the proceedings, in particular the tender announcement of May 4, 2006, the announcement on negotiations of October 12, 2006, the lease agreement of February 15, 2007, the negotiation protocol of December 2006 and January 2007, letters between the aggrieved company and the authorities of the Ludwin Commune of August 12, 2011, August 29, 2011, September 15, 2011, September 22, 2011 and March 1, 2012, an excerpt from the National Court Register of Solo Investment, a judgment of the Provincial Administrative Court in Lublin of April 28, 2015 in the case with reference number II SA/Lu 680/14, partly of Jarosław Tarnasiewicz's notes, entitled "HISTORY" and "PERSONS AND THEIR RELATIONSHIP WITH THE CASE", excerpts from land and mortgage registers: LUII/00135980/6 and LUII/00141599/3, Antar Ltd's offer of December 1 2006 on the lease of land, ordinance No. 138A of the mayor of the Ludwin Commune of September 27, 2004, as well as protocols of interrogations of witnesses Andrzej Chabros, Sławomir Czubacki, Zygmunt Ogórka, Szymona Czech, Krystyna Florek, Andrzej Pawlak, Alicja Kostrubiec-Bijata, Krystyna Bilata and Krystyna Bilska the following facts have been established:

Jarosław Tarnasiewicz Heldut was the owner of Antar Ltd, now known as Solo Investment. Currently, the partners are Bożena Tarnasiewicz-Heldut, Andrzej Tamasiewicz-Heldut and Sylwia Tarnasiewicz-Heldut. Jarosław Tarnasiewicz-Heldut is the representative and general director, the power of attorney was established on the basis of the notarial deed of August 11, 2014. In the village of Rozpłucie Pierwsze there is a property on plots no. 90 and 94/2 with a total area of 9.19 ha. The following land registers are kept for the indicated areas: LU11/00135980/6 and LU11/00141599/3, both in which the Ludwin Commune is entered as the owner. No information is provided in the section on rights, claims and limitations. The commune acquired them under the decision on communalization of October 9, 1991, issued by the competent administrative authority under the authority of the Lublin Voivode. Since 1991,

6

administrative proceedings have been initiated by Jerzy Wojtasiewicz, Krzysztof Wojtasiewicz and Lucyna Ptasińska, legal successors of the previous owner, regarding the return of the expropriated real estate, including the indicated plot. In this case, among others, the judgment of the Provincial Administrative Court in Lublin of April 28, 2015, file ref. II SA / Lu 680/14, repealing the decision of the Lublin Voivode of 30 May 2014 to refuse to return the expropriated property, the proceedings are currently pending before the Supreme Administrative Court. For this reason, in subsequent periods, the real estate is each time leased to individual entities.

Jarosław Tarnasiewicz Heldut got acquainted with the first tender announcement for the lease of the above-mentioned real estate in 2006. Together with Wiesław Tokarz, also representing the notifying company, they reported to the Ludwin Commune office. In one of the discussions held in connection with the announcement, Krystyna Florek informed Wiesław Tokarz that administrative proceedings were pending regarding the return of the expropriated property. The second tender notice of May 4, 2006 was prepared and published, in which it was indicated that the property in question was free from encumbrances. The above statement was also included in the announcement on the negotiations of October 12, 2006. Pursuant to the ordinance No. 138A of the mayor of the Ludwin Zygmunt Ogórka of September 27, 2004, the Commission for the distribution of the commune's real estate was established. Krystyna Florek became its chairman, and Alicja Kostrubiec-Bijata, Szymon Czech and Krystyna Bilska became its members. The negotiation reports conducted by the indicated entities, as well as representatives of Antar Ltd in the persons of Jarosław Tarnasiewcz-Heldut, Andrzej Pawlak and Wiesław Tokarz also stated that the property was free from encumbrances. In the land and mortgage registers of individual plots, just like today, there was no mention of any rights or limitations of ownership. In connection with the above premises, on February 15, 2007 a lease agreement was concluded between the promising entities. On the day of signing, both parties had computers with the content of the contract,

7

which were interfered with by mutual agreement, among others by removing the provision regarding the possibility of termination by the lessee with a 12-month notice period, with reimbursement of the expenditure. Ultimately, after the contract was printed and both parties read it, it was signed, and no modifications were made to its content after printing. In its § 2 it was stated that the landlord declares that the real estate is free from encumbrances and material rights and obligations of third parties and is not aware of any circumstances excluding the use of the real estate for the purposes of running a Holiday Center. Moreover, § 12 stipulated that the lessee was entitled to purchase the subject of the lease without a tender procedure, on the terms specified in separate regulations (in the case of development based on a building permit). In 2007-2011, an investment was carried out by the notifying company, and appropriate building permits were obtained. The amount of over PLN 15,000,000.00 was spent, of which the Commune accepted expenditure in the amount of PLN 13,889,256.46. In the course of one of the permit proceedings, Jerzy Wojtasiewicz reported his participation, who was refused the right to join the proceedings by a decision of May 2, 2008. Its copy was also delivered to Jarosław Tarnasiewcz Heldut.

On August 12, 2011, Solo Investment applied for the purchase of real estate taking into account the expenditure incurred. The reply of the mayor Andrzej Chabros of August 29, 2011 indicated that it was impossible. In the letter of September 15, 2011, the company renewed its call for compliance with the contractual provisions. Andrzej Chabros, on September 22, 2011, announced that the property is not for sale, as proceedings for the return of the plot have been pending since 1991. Therefore, Solo Investment has prepared a letter to avoid the legal consequences of the declaration of will. The company applied for a return of the equivalent of the expenditure in the accepted amount, the commune refused, so it was initiated by a lawsuit of January 13, 2012, a civil case in the District Court in Lublin, I Civil Department, file no. I C 28/12. In a letter of March 1, 2012, the mayor of the commune announced that the only possibility of resolving the existing situation

was to leave the investment by the company without return of expenditure. Until now, civil proceedings are pending in this case regarding the reimbursement of incurred expenses. Further evidence requested by the parties is carried out, some hearing dates are postponed.

The indicated, established facts were referred to the allegations made in the notification of the commission of the crime, and concerning the implementation by the employees of the Ludwin Commune in the persons of Krystyna Florek and Zygmunt Ogorek of the features of a prohibited act under Art. 286 § 1 of the Criminal Code, which penalizes another person to disadvantageously dispose of their own or someone else's property by deceiving them, or by exploiting an error or inability to properly understand the actions taken, Art. 271 §1 of the Criminal Code, which forbids, prohibiting under a threat of penalty the certification of untruths in a document as to circumstances of legal significance by a public official and another person authorized to issue such a document, and also under Art. 231 § 2 of the k.k. determining the criminal liability of a public official who, in order to gain financial or personal benefits, exceeds his powers or fails to fulfill his duties, thereby harming the public or private interest.

Unfavorable disposal of property, as a result of fraud stipulated in Art. 286 § 1 of the Penal Code, generally speaking, means deterioration of the financial situation of the aggrieved party, although it does not have to consist in causing effective damage (judgment of the Supreme Court of 30 August 2000, ref. V KKN 207/00. OSP 2001, No. 3). It is a directional crime in which the purpose of the perpetrator's actions is to obtain a broadly understood material benefit, which may consist in both obtaining a profit (increasing assets) and reducing liabilities. The perpetrator's pursuit may include benefits for himself as well as for someone else. Misleading as a hallmark of an executive act of fraud consists in causing a discrepancy between the objective reality and the victim's perception or perception of it (judgment of the Court of Appeal in Wrocław of November 6, 2012, file ref. II Aka 280/12).

9

Referring to the second of the cited provisions, provided for in Art. 271 § 1 of the Criminal Code, it should be noted that it does not apply to any documents signed by public officials who are certainly employees of the Commune Office, but only to those issued by them. As pointed out by the Supreme Court, "the right to issue a document does not apply to the general competence to participate in legal transactions, and therefore does not constitute issuing a document confirming falsehood within the meaning of Art. 271 § 1 of the k.k., as well as the conclusion of a civil law contract by the parties to the transaction. It is also emphasized that the right of another person, referred to in Art. 271 § 1 of the k.k. to issue documents, it complements the competences of a public official and is not tantamount to a general possibility of participating in legal activities and making various statements there. The document issued by such a person is to contain in its content a certificate which is entitled to the hallmark of public trust, and therefore presumed to be true (Supreme Court judgment of 26 March 2015, file no. IV KK 422/14).

When considering filling the stigmas of Art. 231 § 2 of the k.k. it should be borne in mind that in order to assign the perpetrator a crime under Art. 231 § 1 of the k.k. a public official must include his intention both in breach of his powers or in breach of duties, and in the fact that he acts to the detriment of the public or private interest (decision of the Supreme Court of October 10, 2012, file No. V KK 27/12).

In the context of the case at hand, it is also extremely important to understand the concept of "encumbrance" in relation to real estate. This is a civil term. As it is accepted in the jurisprudence, entry in the land and mortgage register of a personal right or a claim has a double effect or the claim becomes effective in relation to the rights acquired by legal action after its disclosure. Secondly, such a personal right or claim is protected by a guarantee of public faith in land and mortgage registers. Such a claim or right which is purely obligatory before being entered in the land and mortgage register becomes a law or a "reified" claim (decision

10

of the District Court in Gdańsk of August 31, 2011, file No. Ill Ca 498/11). Lack of due diligence of the parties to the contract in determining whether the subject of the contract is not encumbered with the rights of third parties excludes the good faith of the contractor. The High Court indicated that the degree of diligence, me what the counterparty should add depends on the degree of risk in a given type of relationship (judgment of September 19, 1984, ref. no. II CZ 83/84). It should be added that a greater degree of diligence should be required in transactions involving a person with knowledge of the laws of the market due to his profession. Therefore, an entity conducting business activity cannot be exempted from a considerable degree of diligence when verifying the legal status relating to a specific subject of a high-value contract (Supreme Court judgment of 23 January 1998, reference number I CKN 430/87). All rights in rem are limited, as well as rental or tenancy rights, as well as rights and personal claims disclosed in the land and mortgage register (Rudnicki Grzegorz, "Commentary to the Civil Code, Book Two, Property and other rights in rem", X. LexisNexis 2011) The encumbrances are all limited property rights and obligation rights (in particular, the lease or tenancy agreement), as well as other personal rights and claims disclosed in the land and mortgage register (Ciszewski Jerzy (ed.), "Civil Code, Comment". 2nd edition. LexisNexis 2014). It is true that the above statements of the comments were made on the basis of the consideration of perpetual usufruct charges, however, they apply to the same extent to all other encumbrances arising under civil law.

Transferring the above considerations to the field of the present case, it should be stated that the actions of the employees of the Ludwin Commune Office did not meet the features of any of the aforementioned provisions, as regards to the fraud under Art. 286 § 1 of the k.k., as well as exceeding the powers under Art. 231 § 2 of the k.k. and false statements from art. 271 § 1 of the k.k. First of all, it should be emphasized that all actions ordered by the Court examining the complaint against the earlier decision to refuse to initiate proceedings were performed in the proceedings, however, their results do not allow

11

for a different assessment of the fulfillment of the criteria of a crime. At the beginning, it is necessary to discuss the issue related to the certification of untruths in the documents issued by officials, which became the beginning of further alleged fraud and was related to the violation of powers by public officials. In this respect, the notifying party indicated that incorrectly and deceitfully, both in the tender announcements, in the negotiations and in the contract of February 15, 2007, a statement that the subject of the final contract was free of encumbrances was included. Within the scope of the contract itself, the behavior of Krystyna Florek who prepared the documents and Zygmunt Ogórek signing them cannot be considered through the prism of Art. 271 § 1 of the Penal Code, because, as indicated above, the established line of jurisprudence is that in relation to a civil law contract, no document is issued, but only an officer's participation in the legal transactions, and therefore it cannot be said that in such a situation there was false certification in the issued document. Taking into account the aforementioned provision of the Penal Act, only published announcements regarding the tender and negotiations, which were in fact documents issued by an officer in the person of the mayor of the commune, and related to circumstances of legal significance, relating to the potential conclusion of a lease agreement, could be considered. Certainly, their important element was the statement regarding the lack of encumbrances on the property, which was important for a potential contractor. However, there is no doubt that there was no falsehood in this respect, as the real estate was not actually encumbered. There are no entries in the land and mortgage register regarding any limitations of rights or claims. There were also no limited rights in rem, the catalog of which was exhaustively specified in the provisions of the Civil Code. It is absolutely impossible to agree with the position that the mere appearance of a claim for the return of expropriated property in a separate administrative procedure is such a burden. This is inconsistent with the above position of the doctrine, and first of all, it should be emphasized that it is completely impossible to

12

predict the outcome of a case that has been going on for more than 20 years, and it cannot be argued that the mere initiation of it causes that the property in question is encumbered in any way. After all, it is quite realistic that a completely unauthorized person would initiate such proceedings without real grounds, and in no case would it be appropriate to assume that already in such a situation there is a burden on the property, which must be determined each time. It should be noted that none of the advertisements stated that there were no claims against the real estate, only that it was free from encumbrances. At the same time, stating that all the statements contained in the announcements were true, there is no doubt that there was no violation of powers by officials from the Ludwin Commune in connection with the announcements made. Moving on to the contract itself, concluded between the parties, in which § 2 was questioned, it should be noted that it also applied to encumbrances and material rights from which the real property was actually free, as well as obligations of third parties. In fact, no other persons had liabilities to the property. Additionally, it was informed that there were no other circumstances that would affect the possibility of running the holiday center. The claim for the return of expropriated real estate could not be such a circumstance, because it related to the campsite and the forested part of the area, the loss of which, even if the claim was justified, would not in any way hinder the implementation of the completed investment. Therefore, also here it must be noted that the falsehood was not confirmed, although, of course, as already indicated, the provision of Art. 271 § 1 of the k.k. it couldn't be used anyway. Moving on to the consideration of misleading Antar Ltd by concealing information relating to the pending proceedings for the return of real estate, and thus leading to an unfavorable disposal of the property by investing a significant amount of money in the construction of the center, it should also be stated that the signs of a crime. First, it is important to point out that Krystyna Florek informed Wiesław Tokarz, who represented the future contractor, about the proceedings taking place.

It was not necessary to inform all entities involved in the negotiations, bearing in mind that it was consistent with the principles of life experience that they would share the information obtained, especially on such an important aspect. Moreover, the statement of Jarosław Tarnasiewcz Heldut that he found out about this fact only in 2011, when the materials collected in the case clearly show that already in 2008 the company was notified of the proceedings by receiving a copy of the decision refusing to recognize Jerzy Wojtasiewcz, a party to the building permit case. Moreover, one cannot lose sight of the fact that, as indicated by the notifying party, he was from the outset interested in buying and not in leasing the land in question. For this reason, he certainly tried to find out why such a sale is not possible, and the ads concern only the lease. It was his responsibility to thoroughly familiarize himself with the legal status of the leased real estate, including by talking to the other party to the contract or local residents. He should also analyze the subject related to the lease decision in more depth, because the very statement that it results from the intention to leave the area without dividing it must have raised doubts as it did not contain all the related arguments, especially from the point of view of the fact that each time previously, the property was only leased and never offered for sale. It should also be clearly emphasized that in this situation there can be no question of a fraud leading to an unfavorable disposal of property. Pursuant to the provisions of the agreement, which were not questioned, the company was able to acquire ownership of the real estate through a sale without a tender under certain conditions. It concluded a lease agreement for a period longer than 10 years, built the area on the basis of specific building permits. However, perhaps the most important condition that the owner should decide to sell has not been met. It was obvious for both parties to the contract that this was the condition for the possible purchase of the property and its fulfillment did not have to depend on any proceedings for the return of the property. Even if such a procedure did not take place. It is easy to

imagine a situation in which the commune does not want to sell the real estate even for the entire duration of the lease agreement, which would lead to the fact that the company could not buy the plots at all. The contract was signed with such awareness, and this was the awareness of the company's representatives and partners during the implementation of the entire investment. Therefore, any costs arising in this respect may not in any way be treated as a result of misleading the notifying party and his family, but as a deliberate action in the performance of the concluded lease agreement, which in addition clearly states that in the event of termination of the prior agreement by the lessee, he will not be entitled to receive the equivalent of the expenditure. The statements made by the notifying party may only be the subject of civil proceedings regarding the conclusion of the contract itself, possible legal defects of individual statements or reimbursement of expenses, which proceedings were actually initiated in this case, and do not justify the continuation of criminal proceedings and the presentation of charges to any persons.

Considering all the arguments raised above, it should be emphasized that with regard to point I of the sentence, there are no features of a prohibited act.

Finally, one should also refer to the act specified in point 2 of the operative part of this provision. It is true that the District Court in Lublin, in its decision of November 24, 2015, revoked the previous decision to refuse to initiate an investigation in its entirety, however, in the justification of its decision, it stated that regarding the point concerning the fulfillment of the criteria of an act under Art. 231 § 1 of the k.k. in the course of civil proceedings, the arguments of the person conducting the proceedings should be divided, because time-consuming proceedings by an independent judiciary, in particular related to the collection of extensive evidence and consideration of requests to adjourn the hearing, do not justify the claim that the prerequisites under Art. 231 § 1 of the k.k. or other unlawful behavior detrimental to the interests of the parties to the proceedings. These views should be fully divided, because it cannot raise any doubts that the mere postponement of individual dates of hearings or admitting further motions of evidence, even if it actually affects the length of the proceedings, does not automatically mean that there has been an abuse of rights or failure to fulfill obligations. by the judge in charge. In particular, it should not be forgotten

15

that the civil case is multi-voluminous, has a rather complicated factual state, based on the settlement of specific cases, and both parties submit numerous motions for evidence. This is also accompanied by problems with setting subsequent dates, due to both the burden on the courts and the circumstances on both sides of the proceedings and those referred to by witnesses in the case. In this situation, the party is entitled at most to complain about the length of the proceedings, and this may not be the subject of possible criminal liability.

Art. 17 § 1 point 2 of the Code of Criminal Procedure indicates that no proceedings are instituted, and the instituted proceedings are discontinued if there are no indications of a prohibited act.

Therefore, taking into account the established facts and the above-mentioned arguments, it is justified under Art. 17 § 1 point 2 of the Code of Criminal Procedure - discontinuation of the investigation for the reason indicated in the positive part of this decision.

Public prosecutor
District Prosecutor's Office
Krzysztof Rubik

**Caution:**
1. The above decision may be appealed to the court competent to hear the case (Art. 306 § of the Code of Criminal Procedure (k.p.k.), Art. 465 § 2 of k.p.k.):
- the aggrieved party
- the institution mentioned in art. 305 § 4,
- the person mentioned in art. 305 § 4 of the k.p.k., if its rights were violated as a result of a crime.
The court may uphold the appealed decision or revoke it and refer the case to the prosecutor in order to clarify the indicated circumstances, or to carry out the indicated activities (Article 330 § I of the k.p.k.).
If the public prosecutor still does not find grounds to bring the indictment, he will re-issue a decision on refusal to initiate an investigation - investigation *) or about its discontinuation.
In this case, the victim who used the powers provided for in Art. 306 § 1 of the k.p.k. may file an indictment to the court within 1 month from the date of service of the notification of a decision which is equivalent to a notification of a decision within the meaning of Art. 55 § 1 of the Code of Criminal Procedure (k.p.k.)
attaching one copy for each of the accused and the public prosecutor (Article 330 § 2 of the k.p.k., Article 55 § 1 of the k.p.k.).
The indictment should meet the requirements set out in Art. 55 § 1 and 2 of the k.p.k.
Another person aggrieved by the same act may continue the trial at the main hearing join the proceedings (Article 55 § 3 of the k.p.k.).
2. The persons authorized to submit a complaint referred to in Art. 306 § I of the k.p.k. has the right reviewing the case files (Article 306 § 1b of the k.p.k.).

16

3. A complaint against the above decision shall be lodged through the public prosecutor who issued the decision.

The deadline for lodging a complaint is 7 days from the date of delivery of the copy of the order and is strict. Complaint

filed after this deadline is ineffective (Art. 122 § 1 and 2 and Art. 460 of the k.p.k.).

Ordinance:

Pursuant to Art. 100 § 4 of the k.p.k. in connection with with art. 106 of the Labor Code, and art. 306 § I a of the k.p.k. deliver a copy of the order:

1) the aggrieved party - Solo Investment Sp. z o.o.

2) the victim's attorney - adv. Andrzej Samulak,

3) the person notifying in accordance with art. 305 § 4 of the k.p.k. - Jarosław Tarnasiewicz Heldut.

Public prosecutor

District Prosecutor's Office

Krzysztof Rubik

17

**ORDER FOR CHANGING THE ORDER IN THE SUBJECT**
**DELIVERY OF A COPY OF THE PROVISION CONTAINED IN**
**DECISION OF 16 AUGUST 2016. ABOUT REMOVAL OF INVESTIGATIONS**

Justyna Rutkowska - Skowronek - prosecutor of the District Prosecutor's Office in Lublin, after reading the files of the investigation with reference number PO V Ds. 79/15 / S and by decision of August 16, 2016 to discontinue the investigation

pursuant to Article 93§3 of the Code of Criminal Procedure and Article 99§2 of the Code of Criminal Procedure

I order :

to change the order on the delivery of a copy of the order contained in
by decision of August 16, 2016 to close the investigation, as to
delete point 2 "to the attorney of the victim - adv. Andrzej Samulak -, with attention
for termination of the power of attorney by the aggrieved party on November 26, 2015

Prosecutor of the Disctrict Prosecutor's Office in Lublin
Justyna Rutkowska- Skowronek

This order to be delivered to:

- the aggrieved party- Solo Investment LLC
- Informant - J. Tarnasiewicz -Heldut

18

# ORIGINAL

PROKURATURA OKRĘGOWA
Wydział IV Organizacyjno-Sądowy
ul. Okopowa 2a
20-950 Lublin
-1-

Lublin, dnia //sierpnia 2016 roku

V 79/15/S

## Postanowienie

### o umorzeniu śledztwa

Krzysztof Rubik – prokurator Prokuratury Okręgowej w Lublinie,

po zapoznaniu się z aktami śledztwa o sygn. V 79/15/S

w sprawie o **czyny z art. 286 § 1 k.k. w zw. z art. 294 § 1 k.k. w zb. z art. 271 § 3 k.k. w zw. z § 1 k.k. w zb. z art. 231 § 2 k.k. w zw. z art. 11 § 2 k.k. w zw. z art. 12 k.k. oraz z art. 231 § 1 k.k.,**

- na podstawie **art. 17 § 1 pkt 2 k.p.k.**

### postanowił:

**umorzyć śledztwo** w sprawie:

1.    zaistniałego w krótkich odstępach czasu, w wykonaniu z góry powziętego zamiaru, przekroczenia uprawnień w okresie od dnia 04 maja 2006 roku do dnia 15 lutego 2007 roku w Ludwinie przez ustalonych funkcjonariuszy Urzędu Gminy Ludwin poprzez poświadczenie nieprawdy w dokumentacji dotyczącej statusu prawnego nieruchomości, oznaczonych w ewidencji gruntów wsi Rozpłucie Pierwsze nr 90 i 94/2 o łącznej powierzchni 9,19 ha, w tym ogłoszeniach o przetargu oraz o rokowaniach, która stanowiła podstawę negocjacji w zakresie dzierżawy Ośrodka Wypoczynkowego „Jagoda" nad jeziorem Piaseczno, co do okoliczności mających znaczenie prawne w postaci statusu prawnego wskazanych nieruchomości, przez co wprowadzono w błąd władze spółki Antar Ltd Sp. z o.o. odnośnie do wad prawnych i zobowiązań obciążających wskazane działki, czym doprowadzono wskazaną spółkę do niekorzystnego rozporządzenia mieniem

własnym w kwocie co najmniej 13.889.256,46 złotych w postaci nakładów, poniesionych w związku z dzierżawą przedmiotowej nieruchomości, bez realnej możliwości jej następczego nabycia przez dzierżawcę, tym samym działając na jej szkodę,

**tj. o czyn z art. 286 § 1 k.k. w zw. z art. 294 § 1 k.k.w zb. z art. 271 § 3 k.k. w zw. z § 1 k.k. w zb. z art. 231 § 2 k.k. w zw. z art. 11 § 2 k.k. w zw. z art. 12 k.k.,**

2. zaistniałego w krótkich odstępach czasu, w wykonaniu z góry powziętego zamiaru, przekroczenia uprawnień i niedopełnienia obowiązków przez ustalonych funkcjonariuszy publicznych, w okresie od dnia 19 kwietnia 2012 roku do dnia 05 sierpnia 2015 roku w Lublinie, poprzez bezprawne wpływanie, w toku postępowania Sądu Okręgowego w Lublinie o sygn. I C 28/12, na merytoryczne rozpoznanie bez zbędnej zwłoki wskazanej sprawy z powództwa „Solo Investment" Sp. z o.o., czym działano na szkodę prywatnego interesu wymienionej spółki oraz na szkodę wymiaru sprawiedliwości,

**tj. o czyn z art. 231 § 1 k.k. w zw. z art. 12 k.k.,**

– wobec stwierdzenia, że wskazane czyny nie zawierają znamion czynu zabronionego (art. 17 § 1 pkt 2 k.p.k.).


**Uzasadnienie**


W dniu 07 sierpnia 2015 roku do Prokuratury Okręgowej w Lublinie wpłynęło, sporządzone przez Jarosława Tarnasiewicza - Helduta, zawiadomienie o popełnieniu przestępstwa przez funkcjonariuszy Urzędu Gminy Ludwin. Wskazał on w nim, że od 2006 roku do 05 sierpnia 2015 zostało popełnione oszustwo na szkodę spółki Solo Investment Sp. z o.o. (wcześniej Antar Ltd Sp. z o.o.) oraz na szkodę jego i rodziny przez konkretnych urzędników wskazanej gminy, głównie Wójtów - Zygmunta Ogórka i Andrzeja Chabrosa, radcę prawnego Alicję Kostrubiec – Bijatę, oraz pracowników - Krystynę Florek, Krystynę Bilską i Szymona Czecha, które po-

legało na świadomym i zamierzonym poświadczeniu nieprawdy w dokumentach przetargowych, dotyczących przetargu na dzierżawę nieruchomości, położonej w miejscowości Rozpłucie Pierwsze oraz w umowie dzierżawy, zawartej między wskazanymi podmiotami z dnia 15 lutego 2007 roku, dotyczącym informacji o stanie prawnym nieruchomości poprzez podawanie i informowanie, że nieruchomość ta jest wolna od obciążeń, wad prawnych i roszczeń osób trzecich, w sytuacji, gdy we wskazanych momentach w stosunku do nieruchomości prowadzone było postępowanie o jej zwrot z wniosku następców prawnych byłych właścicieli, a także na świadomym i zamierzonym poświadczeniu nieprawdy w umowie pisemnej o przyrzeczeniu sprzedaży nieruchomości, która nie mogła być sprzedana z uwagi na toczące się postępowanie administracyjne, co doprowadziło do tego, że pokrzywdzona spółka zainwestowała w dzierżawioną nieruchomość kwotę 15.000.000,00 złotych, a następnie nie mogła nabyć prawa własności gruntu, co spowodowało szkodę w spółce i pośrednio u zawiadamiającego.

W uzasadnieniu swojego pisma wskazał on, że obecnie właścicielami pokrzywdzonej spółki jest Bożena Tarnasiewicz oraz ich dzieci – Sylwia i Andrzej Tarnasiewicz. Spółka zajmuje się działaniami inwestycyjnymi w branży budowlanej. W 2006 roku zawiadamiający dowiedział się, że nad jeziorem Piaseczno ośrodek wypoczynkowy Jagoda może być przedmiotem sprzedaży. Urząd Gminy Ludwin przekazał mu jednak, że w rzeczywistości nie może on zostać sprzedany, bo zaistniałaby obawa podziału nieruchomości i odsprzedaży jej prywtanym właścicielom, a gminie zależy na utrzymaniu ośrodka w całości. Strony zdecydowały, że spółka zawiadamiającego wydzierżawi nieruchomość, a po zrealizowaniu inwestycji odkupi ją po cenie wartości gruntu. W ogłoszeniach przetargowych, podpisanych przez wójta Zygmunta Ogórka, zawarto informację, że nieruchomość jest wolna od obciążeń. Następnie z uwagi na brak zainteresowania dzierżawą odbyły się rokowania w grudniu 2006 roku, z których sporządzono protokół, podpisany przez Krystynę Florek, Krystynę Bilską i Szymona Czecha. W nim również zawarto informację, że nieruchomość jest wolna od obciążeń. Przygotowaniem dokumentów zajmowała się radca prawna gminy. W § 2 umowy z dnia 15 lutego 2007 roku znalazło się stwier-

dzenie, że „wydzierżawiający oświadcza, że nieruchomość jest wolna od obciążeń i praw rzeczowych oraz zobowiązań osób trzecich oraz nie wie o żadnych okoliczno-ściach wykluczających wykorzystanie nieruchomości na cele prowadzenia Ośrodka Wypoczynkowego". Sformułowanie to zdaniem zawiadamiającego wprowadziło dzierżawcę w błąd, gdyż zatajone zostało postępowanie zwrotowe. Inwestycja trwa-ła około 4 lat. Koszt jej przekroczył 15.000.000,00 złotych, gmina zaakceptowała nakłady w łącznej wysokości 13.889.256,46 złotych. Dnia 12 sierpnia 2011 roku spółka wystąpiła o zakup nieruchomości z uwzględnieniem poniesionych nakładów. Odpowiedź wójta Andrzeja Chabrosa z dnia 29 sierpnia 2011 roku wskazywała, że jest to niemożliwe. Pismem z 15 września 2011 roku spółka ponowiła wezwanie o wywiązanie się z postanowień umownych. Andrzej Chabros dnia 22 września 2011 roku podał, że nieruchomość nie jest na sprzedaż, ponieważ od 1991 roku toczy się postępowanie o zwrot działki. Zawiadamiający podkreślił, że był to pierwszy mo-ment, kiedy spółka dowiedziała się o takim fakcie. W związku z tym sporządzono pismo o uchyleniu się od skutków prawnych oświadczenia woli. Spółka wystąpiła o zwrot równowartości nakładów w wysokości zaakceptowanej, gmina odmówiła, więc wszczęta została sprawa cywilna w Sądzie Okręgowym w Lublinie, I Wydział Cywilny, o sygn. I C 28/12. Pismem z dnia 01 marca 2012 roku wójt podał, że jedy-ną możliwością rozwiązania zaistniałej sytuacji jest pozostawienie przez spółkę in-westycji bez zwrotu nakładów.

W toku przyjęcia ustnego zawiadomienia o przestępstwie i przesłuchania w charakterze świadka Jarosława Tarnasiewicza - Helduta w dniu 25 sierpnia 2015 roku wskazał on dodatkowo, że już w ogłoszeniach przetargowych gmina podkre-ślała, że nieruchomość jest wolna od obciążeń i gmina nic nie wie o roszczeniach osób, jakie mogły do niej z takimi roszczeniami wystąpić. Między stronami doszło do zawarcia 'gentleman agreement', zgodnie z którą po wybudowaniu ośrodka w ramach długoletniej umowy dzierżawy nastąpi sprzedaż spółce nieruchomości. Wskazał, że przed podpisaniem umowy przepisywano ją i wyeliminowano zapis, że dzierżawca może wypowiedzieć umowę z rocznym terminem wypowiedzenia, za zwrotem nakładów. Zauważył to zawiadamiający następnego dnia, powiedział o tym

wójtowi, ale nie robiono z tego większego problemu. Jarosław Tarnasiewicz - Heldut podkreślił, że dowiedział się o osobie Jerzego Wojtasiewicza dopiero w 2011 roku, powiedzieli mu o postępowaniu pracownicy spółki, zamieszkali na pobliskich względem ośrodka terenach. W tej sytuacji skontaktował się on z adwokatem następcy prawnego właściciela, mecenasem Grotowskim. Końcowo dodał, że w toczącym się postępowaniu cywilnym o sygn. I C 28/12 wywołane zostały już 3 opinie biegłego. Są w nim dopuszczane kolejne wnioski dowodowe gminy, w tym opinie biegłych, odraczane są i odwoływane terminy rozpraw. Nic nie można w tym czasie robić z ośrodkiem, który z uwagi na to niszczeje.

Na podstawie powyższego zawiadomienia przeprowadzone zostały czynności sprawdzające i dnia 10 września 2015 roku wydano postanowienie o odmowie wszczęcia śledztwa wobec nie stwierdzenia znamion czynu zabronionego – odnośnie czynu z art. 286 § 1 k.k. w zw. z art. 294 § 1 k.k. w zb. z art. 271 § 1 k.k. w zw. z art. 11 § 2 k.k. w zw. z art. 12 k.k., a także wobec braku danych dostatecznie uzasadniających podejrzenie popełnienia czynu zabronionego – odnośnie czynu z art. 231 § 1 k.k. Na postanowienie pełnomocnik pokrzywdzonej spółki, adw. Andrzej Samulak, wniósł w dniu 07 października 2015 roku zażalenie, po którego rozpatrzeniu Sąd Okręgowy w Lublinie postanowieniem z dnia 24 listopada 2015 roku, wydanym w sprawie o sygn. IV Kp 1566/15, uchylił skarżone postanowienie i sprawę przekazał do ponownego rozpoznania. W uzasadnieniu swojej decyzji wskazał, że w postępowaniu nie przeprowadzono koniecznych dowodów, w postaci między innymi przesłuchania świadków – władz i pracowników Gminy Ludwin oraz Andrzeja Pawlaka celem weryfikacji twierdzeń dotyczących popełnienia na szkodę zawiadamiającej spółki przestępstwa. Końcowo podał on również, że odnośnie czynu z punktu II postanowienia o odmowie wszczęcia śledztwa, a dotyczącego przestępstwa z art. 231 § 1 k.k., należy podzielić argumentację prowadzącego postępowanie, gdyż czasochłonne procedowanie przez niezawisły skład sędziowski, w szczególności związane z gromadzeniem obszernego materiału dowodowego i uwzględnianiem wniosków o odroczenie rozprawy, nie uzasadnia twierdzenia o zaistnieniu przesła-

nek z art. 231 § 1 k.k. bądź innych bezprawnych zachowań, godzących w interesy
stron postępowania.

Na podstawie zgromadzonych w toku postępowania materiałów, w szczegól-
ności ogłoszenia o przetargu z dnia 04 maja 2006 roku, ogłoszenia w sprawie roko-
wań z dnia 12 października 2006 roku, umowy dzierżawy z dnia 15 lutego 2007 ro-
ku, protokołu z rokowań z grudnia 2006 roku i stycznia 2007 roku, pism pomiędzy
pokrzywdzoną spółką a władzami Gminy Ludwin z dnia 12 sierpnia 2011 roku,  29
sierpnia 2011 roku, 15 września 2011 roku, 22 września 2011 roku i 01 marca 2012
roku, odpisu z KRS Solo Investment Sp. z o.o., wyroku Wojewódzkiego Sądu Ad-
ministracyjnego w Lublinie z dnia 28 kwietnia 2015 roku w sprawie o sygn. II
SA/Lu 680/14, częściowo notatek Jarosława Tarnasiewicza, zatytułowanych „HI-
STORIA" oraz „OSOBY I ICH ZWIĄZEK ZE SPRAWĄ", odpisów z ksiąg wie-
czystych: LU1I/00135980/6 oraz LU1I/00141599/3, oferty Anar Ltd Sp. z o.o. z
dnia 01 grudnia 2006 roku w sprawie dzierżawy terenów, zarządzenia nr 138A wój-
ta Gminy Ludwin z dnia 27 września 2004 roku, a także protokołów przesłuchań
świadków - Andrzeja Chabrosa, Sławomira Czubackiego, Zygmunta Ogórka, Szy-
mona Czecha, Krystyny Florek, Andrzeja Pawlaka, Alicji Kostrubiec – Bijaty i Kry-
tyny Bilskiej, ustalono następujący stan faktyczny:

Jarosław Tarnasiewicz - Heldut był właścicielem Antar Ltd Sp. z o.o., obec-
nie występującej pod firmą Solo Investment Sp. z o.o. Aktualnie wspólnikami są
Bożena Tarnasiewicz - Heldut, Andrzej Tarnasiewicz – Heldut i Sylwia Tarnasie-
wicz – Heldut. Pełnomocnikiem i dyrektorem generalnym jest Jarosław Tarnasie-
wicz – Heldut, pełnomocnictwo zostało ustanowione na podstawie aktu notarialnego
z dnia 11 sierpnia 2014 roku. We wsi Rozpłucie Pierwsze znajduje się nierucho-
mość na działkach nr 90 i 94/2, o łącznej powierzchni 9,19 ha. Dla wskazanych te-
renów prowadzone są księgi wieczyste: LU1I/00135980/6 oraz LU1I/00141599/3,
w obu jako właściciel wpisana jest Gmina Ludwin. Nie zawarto żadnych informacji
w dziale dotyczącym praw, roszczeń i ograniczeń. Gmina nabyła je na mocy decyzji
komunalizacyjnej z dnia 09 października 1991 roku, wydanej przez właściwy organ
administracji z upoważnienia Wojewody Lubelskiego. Od 1991 roku toczy się po-

stępowanie administracyjne z powództwa Jerzego Wojtasiewcza, Krzysztofa Wojta-
siewicza i Lucyny Ptasińskiej, następców prawnych uprzedniego właściciela, odno-
śnie zwrotu wywłaszczonej nieruchomości, obejmującej wskazaną działkę. W spra-
wie tej między innymi wydany został wyrok Wojewódzkiego Sądu Administracyj-
nego w Lublinie z dnia 28 kwietnia 2015 roku, sygn  II SA/Lu 680/14, uchylający
decyzję Wojewody Lubelskiego z dnia 30 maja 2014 roku o odmowie zwrotu wy-
właszczonej nieruchomości, postępowanie toczy się obecnie przed Naczelnym Są-
dem Administracyjnym. Z tego też powodu w kolejnych okresach każdorazowo nie-
ruchomość jest dzierżawiona poszczególnym podmiotom.

Jarosław Tarnasiewicz – Heldut zapoznał się z I ogłoszeniem przetargowym
na dzierżawę wymienionych nieruchomości w 2006 roku. Wraz z Wiesławem Toka-
rzem, również reprezentującym zawiadamiającą spółkę, zgłosili się do Urzędu Gmi-
ny Ludwin. W jednej z rozmów prowadzonych w związku z ogłoszeniem Krystyna
Florek powiadomiła Wiesława Tokarza o tym, że toczy się postępowanie admini-
stracyjne odnośnie zwrotu wywłaszczonej nieruchomości. W dalszym czasie spo-
rządzone i opublikowane zostało II ogłoszenie o przetargu z dnia 04 maja 2006 ro-
ku, w którego treści wskazano, że przedmiotowa nieruchomość jest wolna od obcią-
żeń. Również w ogłoszeniu z dnia 12 października 2006 roku w sprawie rokowań
ujęte zostało powyższe twierdzenie. Na podstawie zarządzenie nr 138A wójta Gmi-
ny Ludwin Zygmunta Ogórka z dnia 27 września 2004 roku powołana została Ko-
misja do spraw rozdysponowania nieruchomości gminy. Jej przewodniczącą została
Krystyna Florek, zaś członkami – Alicja Kostrubiec - Bijata, Szymon Czech i Kry-
styna Bilska. W protokołach z rokowań, prowadzonych przez wskazane jednostki, a
także przedstawicieli Antar Ltd Sp. z o.o. w osobach Jarosława Tarnasiewicza –
Helduta, Andrzeja Pawlaka oraz Wiesława Tokarza także ujmowano, że nierucho-
mość jest wolna od obciążeń. W księgach wieczystych poszczególnych działek, po-
dobnie jak obecnie, nie było żadnej wzmianki na temat jakichkolwiek praw bądź
ograniczeń prawa własności.  W związku z powyższymi przesłankami w dniu 15
lutego 2007 roku zawarto umowę dzierżawy między rokującymi podmiotami. W
dniu jej podpisywania obie strony dysponowały komputerami z treścią umów, w

które ingerowano za obopólnym porozumieniem, między innymi usuwając zapis, dotyczący możliwości wypowiedzenia umowy przez dzierżawcę z zachowanie 12-miesięcznego okresu wypowiedzenia, za zwrotem mu nakładów. Ostatecznie po wydrukowaniu umowy i zapoznaniu się z nią obu stron, została ona podpisana, w jej treści nie dokonano żadnych przeróbek po wydrukowaniu. W jej § 2 zawarto stwierdzenie, że „wydzierżawiający oświadcza, że nieruchomość jest wolna od obciążeń i praw rzeczowych oraz zobowiązań osób trzecich oraz nie wie o żadnych okolicznościach wykluczających wykorzystanie nieruchomości na cele prowadzenia Ośrodka Wypoczynkowego". Ponadto § 12 przewidywał, iż „dzierżawcy przysługuje prawo nabycia przedmiotu dzierżawy w drodze bez przetargowej na zasadach określonych w odrębnych przepisach (w przypadku zabudowy na podstawie zezwolenia na budowę". W latach 2007 – 2011 realizowana była inwestycja przez zawiadamiającą spółkę, uzyskano stosowne pozwolenia na budowę. Wydano kwotę ponad 15.000.000,00 złotych, z których Gmina zaakceptowała nakłady w wysokości 13.889.256,46 złotych. W toku jednego z postępowań w sprawie zezwolenia swój udział zgłosił Jerzy Wojtasiewicz, któremu odmówiono prawa wstąpienia do postępowania decyzją z dnia 02 maja 2008 roku. Jej odpis został również doręczony Jarosławowi Tarnasiewczowi - Heldutowi.

Dnia 12 sierpnia 2011 roku spółka Solo Investment wystąpiła o zakup nieruchomości z uwzględnieniem poniesionych nakładów. Odpowiedź wójta Andrzeja Chabrosa z dnia 29 sierpnia 2011 roku wskazywała, że jest to niemożliwe. Pismem z dnia 15 września 2011 roku spółka ponowiła wezwanie o wywiązanie się z postanowień umownych. Andrzej Chabros dnia 22 września 2011 roku podał, że nieruchomość nie jest na sprzedaż, ponieważ od 1991 roku toczy się postępowanie o zwrot działki. W związku z tym spółka Solo Investment sporządziła pismo o uchyleniu się od skutków prawnych oświadczenia woli. Spółka wystąpiła o zwrot równowartości nakładów w wysokości zaakceptowanej, gmina odmówiła, więc wszczęta została pozwem z dnia 13 stycznia 2012 roku sprawa cywilna w Sądzie Okręgowym w Lublinie, I Wydział Cywilny, o sygn. I C 28/12. Pismem z dnia 01 marca 2012 roku wójt podał, że jedyną możliwością rozwiązania zaistniałej sytuacji jest

pozostawienie przez spółkę inwestycji bez zwrotu nakładów. Do chwili obecnej to-
czy się postępowanie cywilne w przedmiotowej sprawie, dotyczące zwrotu ponie-
sionych nakładów. Przeprowadzane są kolejne dowody wnioskowane przez strony,
niektóre terminy rozpraw są odraczane.

Wskazany, ustalony stan faktyczny odniesiono do zarzutów postawionych w
zawiadomieniu o popełnieniu przestępstwa, a dotyczących zrealizowania przez pra-
cowników Gminy Ludwin w osobach Krystyny Florek oraz Zygmunta Ogórka zna-
mion czynu zabronionego z art. 286 § 1 k.k., który penalizuje doprowadzenie, w ce-
lu osiągnięcia korzyści majątkowej, innej osoby do niekorzystnego rozporządzenia
własnym lub cudzym mieniem za pomocą wprowadzenia jej w błąd albo wyzyska-
nia błędu lub niezdolności do należytego pojmowania przedsiębranego działania,
art. 271 § 1 k.k., zakazującego pod groźbą kary poświadczenia w dokumencie nie-
prawdy co do okoliczności mającej znaczenie prawne przez funkcjonariusza pu-
blicznego oraz inną osobę, uprawnioną do wystawienia takiego dokumentu, a także
z art. 231 § 2 k.k., określającego odpowiedzialność karną funkcjonariusza publicz-
nego, który, w celu osiągnięcia korzyści majątkowej lub osobistej, przekracza swoje
uprawnienia lub nie dopełnia obowiązków, czym działa na szkodę interesu publicz-
nego lub prywatnego.

Niekorzystne rozporządzenie mieniem, jako skutek oszustwa stypizowanego
w art. 286 § 1 k.k., ogólnie rzecz ujmując, oznacza pogorszenie sytuacji majątkowej
pokrzywdzonego, chociaż nie musi polegać na spowodowaniu efektywnej szkody
(wyrok Sądu Najwyższego z dnia 30 sierpnia 2000 r.oku, sygn. V KKN 207/00,
OSP 2001, nr 3). Jest ono przestępstwem kierunkowym, w którym celem działania
sprawcy jest uzyskanie szeroko pojętej korzyści majątkowej, która może polegać
zarówno na uzyskaniu zysku (zwiększeniu aktywów), jak i na zmniejszeniu pasy-
wów. Dążenie sprawcy może obejmować zarówno korzyść dla siebie, jak i dla kogo
innego. Wprowadzenie w błąd jako znamię czynności wykonawczej oszustwa pole-
ga na doprowadzeniu do rozbieżności między obiektywną rzeczywistością a wy-
obrażeniem o niej lub jej odbiorem w świadomości pokrzywdzonego (wyrok Sądu
Apelacyjnego we Wrocławiu z dnia 06 listopada 2012 roku, sygn. II Aka 280/12).

Odnosząc się do drugiego z przytoczonych przepisów, stypizowanego w art. 271 § 1 k.k., należy podnieść, iż nie dotyczy on jakichkolwiek dokumentów podpisywanych przez funkcjonariuszy publicznych, którymi z całą pewnością są pracownicy Urzędu Gminy, ale jedynie tych, które oni wystawiają. Jak wskazał Sąd Najwyższy, „uprawnienie do wystawienia dokumentu" nie dotyczy ogólnej kompetencji do udziału w obrocie prawnym, a więc nie stanowi wystawienia dokumentu z poświadczeniem w nim nieprawdy w rozumieniu art. 271 § 1 k.k. samo zawarcie cywilnoprawnej umowy przez strony transakcji. Podkreśla się przy tym, że uprawnienie innej osoby, o jakiej mowa w art. 271 § 1 k.k., do wystawiania dokumentów, jest uzupełnieniem kompetencji funkcjonariusza publicznego i nie jest równoznaczne z ogólną możliwością uczestniczenia w czynnościach prawnych i sporządzania tam różnych oświadczeń. Dokument wystawiony przez taką osobę ma zawierać w swojej treści poświadczenie, któremu przysługuje cecha zaufania publicznego, a w związku z tym domniemanie prawdziwości (wyrok Sądu Najwyższego z dnia 26 marca 2015 roku, sygn. IV KK 422/14).

Przy rozważaniu wypełnienia znamion z art. 231 § 2 k.k. należy mieć na uwadze, że aby przypisać sprawcy popełnienie przestępstwa z art. 231 § 1 k.k., funkcjonariusz publiczny musi obejmować swoim zamiarem zarówno przekroczenie swoich uprawnień lub niedopełnienie obowiązków, jak i to, że działa na szkodę interesu publicznego lub prywatnego (postanowienie Sądu Najwyższego z dnia 10 października 2012 roku, sygn. V KK 27/12).

Na gruncie przedmiotowej sprawy niezwykle ważne jest także rozumienie pojęcia „obciążenie" odnośnie do nieruchomości. Jest to termin cywilistyczny. Jak przyjmuje się w orzecznictwie, wpis do księgi wieczystej prawa osobistego lub roszczenia wywołuje dwojaki skutek. Po pierwsze, przez ujawnienie w księdze prawo osobiste lub roszczenie uzyskuje skuteczność względem praw nabytych przez czynność prawną po jego ujawnieniu. Po drugie, takie prawo osobiste czy roszczenie chronione jest rękojmią wiary publicznej ksiąg wieczystych. Takie - ujawnione w księdze wieczystej - roszczenie lub prawo, mające przed wpisem do księgi charakter czysto obligacyjny, staje się prawem lub roszczeniem "urzeczowionym" (po-

stanowienie Sądu Okręgowego w Gdańsku z dnia 31 sierpnia 2011 roku, sygn. III Ca 498/11). Brak należytej staranności strony umowy w ustaleniu, czy przedmiot umowy nie jest obciążony prawami osób trzecich wyłącza dobrą wiarę kontrahenta. Sąd Najwyższy wskazał, że stopień staranności, jakiej winien dołożyć kontrahent, zależy od stopnia ryzyka występującego w stosunkach danego rodzaju (wyrok z dnia 19 września 1984 roku, sygn. II CZ 83/84). Należy dodać, że większego stopnia staranności powinno się wymagać przy transakcjach, w których uczestniczy osoba, ze względu na wykonywaną profesję posiadająca znajomość praw rynku. Dlatego podmiotu, prowadzącego działalność gospodarczą, nie można zwolnić od znacznego stopnia staranności przy sprawdzeniu stanu prawnego odnoszącego się do konkretnego przedmiotu umowy o dużej wartości (wyrok Sądu Najwyższego z dnia 23 stycznia 1998 roku, sygn. I CKN 430/87).

Obciążeniami są wszystkie prawa rzeczowe ograniczone, a także prawa najmu lub dzierżawy oraz prawa i roszczenia osobiste ujawnione w księdze wieczystej (Rudnicki Grzegorz, „Komentarz do kodeksu cywilnego. Księga druga. Własność i inne prawa rzeczowe", wyd. X, LexisNexis 2011). Obciążeniami są wszystkie prawa rzeczowe ograniczone oraz prawa obligacyjne (w szczególności umowa najmu lub dzierżawy), a także inne ujawnione w księdze wieczystej prawa osobiste i roszczenia (Ciszewski Jerzy (red.), „Kodeks cywilny. Komentarz", wyd. II, LexisNexis 2014). Co prawda powyższe stwierdzenia komentarzy zostały sporządzone na gruncie rozważania obciążeń użytkowania wieczystego, jednakże w takim samym zakresie dotyczą one wszelkich innych obciążeń, powstałych na gruncie prawa cywilnego.

Przenosząc powyższe rozważania na pole niniejszej sprawy należy stwierdzić, że działanie pracowników Urzędu Gminy Ludwin nie wyczerpało znamion żadnego z wymienionch przepisów, tak odnośnie oszustwa z art. 286 § 1 k.k., jak i przekroczenia uprawnień z art. 231 § 2 k.k. oraz poświadczenia nieprawdy z art. 271 § 1 k.k. W pierwszej kolejności należy podkreślić, że wykonane zostały w postępowaniu wszelkie czynności, zlecone przez rozpoznający zażalenie na wcześniejszą decyzję o odmowie wszczęcia postępowania, Sąd, jednakże ich wyniki nie pozwala-

ją na odmienną ocenę w zakresie realizacji znamion przestępstwa. Na początku koniecznym jest omówienie kwestii, związanej z poświadczeniem nieprawdy w wystawionych przez urzędników dokumentach, co stało się zaczątkiem dalszego rzekomego oszustwa oraz wiązało się z przekroczeniem uprawnień przez funkcjonariuszy publicznych. W tym aspekcie zawiadamiający wskazywał, że nieprawidłowo i kłamliwie zostało zawarte zarówno w ogłoszeniach o przetargu, o rokowaniach, jak i w umowie z dnia 15 lutego 2007 roku, stwierdzenie dotyczącego tego, że przedmiot ostatecznej umowy jest wolny od obciążeń. W zakresie samej umowy nie można rozpatrywać zachowania Krystyny Florek, sporządzającej dokumenty, a także Zygmunta Ogórka, podpisującego je, przez pryzmat art. 271 § 1 k.k., ponieważ, jak wskazano wyżej, utrwalona linia orzecznictwa stoi na stanowisku, że w odniesieniu do umowy cywilnoprawnej nie dochodzi do wystawienia dokumentu, a jedynie do uczestnicwa w obrocie prawnym funkcjonariusza i wobec tego nie można mówić, aby w takiej sytuacji doszło do poświadczenia nieprawdy w wystawionym dokumencie. Z uwzględnieniem wskazanego przepisu ustawy karnej mogłyby być rozważane jedynie opublikowane ogłoszenia odnośnie przetargu oraz w sprawie rokowań, które faktycznie były dokumentami wystawionymi przez funkcjonariusza w osobie wójta gminy, a także dotyczyły okoliczności mających znaczenie prawne, a odnoszacych się do potencjalnego zawarcia umowy dzierżawy. Z pewnością istotnym ich elementem było stwierdzenie dotyczące braku obciążeń na nieruchomości, które miało znaczenie dla ewentualnego kotrahenta. Jednakże nie budzi wątpliwości, iż nie doszło w tym aspekcie do poświadczenia nieprawdy, ponieważ faktycznie nieruchomość nie była obciążona. W księdze wieczystej nie znalazły się żadne zapisy, dotyczące jakichkolwiek ograniczeń, praw bądź roszczeń. Nie miały tu zastosowania również żadne ograniczone prawa rzeczowe, których katalog został enumeratywnie określony w przepisach Kodeksu cywilnego. Absolutnie nie można zgodzić się ze stanowiskiem, jakoby samo wystąpienie w odrębnym postępowaniu administracyjnym z roszczeniem o zwrot wywłaszczonej nieruchomości takim obciążeniem było. Jest to niezgodne z zaprezentowanym wyżej stanowiskiem doktryny, a przede wszystkim należy z całą stanowczością podkreslić, że zupełnie niemożliwym do

przewidzenia jest wynik sprawy, która toczy się już ponad 20 lat, i nie można dywagować, że już samo jej wszczęcie powoduje, że przedmiotowa nieruchomość jest w jakikolwiek sposób obciążona. Przecież zupełnie realnym jest sytuacja, w której osoba całkowicie nieuprawniona wszczęłaby takie postępowanie, nie mając ku temu realnych podstaw, i w żadnym wypadku nie byłoby właściwym przyjęcie, że już w takiej sytuacji powstaje obciążenie na nieruchomości, które każdorazowo musi być określane. Wskazać przy tym należy, że w żadnym z ogłoszeń nie podano, iż nie ma roszczeń wobec nieruchomości, a jedynie, że jest ona wolna od obciążeń. Jednocześnie stwierdzając, że wszelkie oświadczenia zawarte w ogłoszeniach były zgodne z prawdą, nie budzi wątpliwości, że nie nastąpiło w sprawie przekroczenie uprawnień przez urzędników z Gminy Ludwin w związku ze sporządzanymi ogłoszeniami. Przechodząc na grunt samej umowy, zawartej między stronami, w której kwestionowany był § 2, należy wskazać, że dotyczył on także obciążeń i praw rzeczowych, od których faktycznie była wolna nieruchomość, a także zobowiązań osób trzecich. W rzeczywistości wobec nieruchomości żadne inne osoby nie posiadały zobowiązań. Dodatkowo poinformowano, że nie zachodzą żadne inne okoliczności, które wpływałyby na możliwość prowadzenia ośrodka wypoczynkowego. Samo roszczenie o zwrot wywłaszczonej niruchomości taką okolicznością być nie mogło, bo odnosiło się ono do pola namiotowego i zalesionej części obszaru, którego utrata nawet w sytuacji uznania zasadności wniesionego roszczenia, nie utrudniłaby w żaden sposób prowadzenia zrealizowanej inwestycji. Dlatego też również tutaj trzeba podnieść, że nie nastąpiło poświadczenie nieprawdy, choć oczywiście, jak już wskazano, przepis art. 271 § 1 k.k. i tak nie mógłby znaleźć zastosowania. Przechodząc na pole rozważań, dotyczących wprowadzenia w błąd Antar Ltd. Sp. z o.o. poprzez zatajenie informacji odnoszących się do toczącego się postępowania o zwrot nieruchomości, a tym samym doprowadzenia do niekorzystnego rozporządzenia mieniem poprzez zainwestowanie znacznej wielkości kwot w budowę ośrodka, także należy stwierdzić, że nie doszło do wyczerpania znamion przestępstwa. W pierwszej kolejności waży się podnieść, że Krystyna Florek poinformowała o mającym miejsce postępowaniu Wiesława Tokarza, który reprezentował przyszłego kontrahenta. Nie by-

ło konieczności informowania wszystkich zaangażowanych w negocjacje podmio-
tów, mając na uwadze, że zgodnym z zasadami doświadczenia życiowego było
przypuszczenie, że podzielą się oni pozyskanymi informacjami, zwłaszcza dotyczą-
cymi tak istotnego aspektu. Co więcej, nie jest prawdziwe twierdzenie Jarosława
Tarnasiewcza - Helduta, iż dowiedział się on o tym fakcie dopiero w 2011 roku, gdy
z materiałów zgromadzonych w sprawie wyraźnie wynika, iż już w 2008 roku spół-
ka została powiadomiona o postępowaniu w drodze otrzymania odpisu decyzji co do
odmowy uznania Jerzego Wojtasiewcza stroną sprawy o zezwolenie na budowę.
Ponadto nie można tracić z pola widzenia faktu, że, jak wskazywał zawiadamiający,
od początku był on zainteresowany kupnem, a nie dzierżawą przedmiotowego tere-
nu. Z tego powodu z całą pewnością próbował się on dowiedzieć, z jakiej przyczyny
sprzedaż taka nie jest możliwa, a ogłoszenia dotyczą jedynie dzierżawy. To w jego
gestii leżało dokładne zapoznanie się ze stanem prawnym dzierżawionej nierucho-
mości, w tym także poprzez rozmowę na ten temat z drugą stroną umowy czy też
okolicznymi mieszkańcami. Winien on również bardziej dogłębnie przeanalizować
temat związany z decyzją o dzierżawie, gdyż samo stwierdzenie, że wynika to z
chęci pozostawienia terenu bez dokonywania jego podziału musiało budzić wątpli-
wości jako nie zawierające w sobie całości z tym związanej argumentacji, zwłaszcza
patrząc przez pryzmat tego, że każdorazowo wcześniej nieruchomość była tylko
dzierżawiona, nigdy nie oferowano jej sprzedaży. Trzeba także wyraźnie podkreślić,
że w zaistniałej sytuacji nie może być mowy o oszustwie, prowadzącym do nieko-
rzystnego rozporządzenia mieniem. Zgodnie z zapisami umowy, których nie kwe-
stionowano, spółka mogła nabyć własność nieruchomości w drodze sprzedaży bez-
przetargowej po spełnieniu określonych warunków. Zawarła ona umowę dzierżawy
na okres dłuższy niż 10 lat, zabudowała teren na podstawie konkretnych zezwoleń
na budowę. Jednakże nie została spełniona chyba najważniejsza przesłanka w posta-
ci tego, aby właściciel zdecydował się na sprzedaż. Oczywistym było dla obu stron
umowy, że taki jest warunek ewentualnego nabycia nieruchomości, i jego spełnienie
nie musiało wcale być zależne od ewentualnych postępowań w zakresie zwrotu nie-
ruchomości. Nawet w sytuacji, gdyby postępowanie takie nie miało miejsca, łatwo

wyobrazić sobie sytuację, w której gmina nawet przez cały okres trwania umowy dzierżawy nie chce sprzedać nieruchomości, co prowadziłoby do tego, że spółka w ogóle nie mogłaby nabyć działek. Z taką świadomością była podpisywana umowa, taka też świadomość towarzyszyła przedstawicielom i wspólnikom spółki w toku realizacji całej inwestycji. Dlatego też wszelkie powstałe z tego tytułu koszty nie mogą w żaden sposób być traktowane jako wynik wprowadzenia w błąd zawiadamiającego i jego rodziny, ale jako świadome działanie w ramach realizacji zawartej umowy dzierżawy, w której w dodatku wyraźnie zawarto sformułowanie, iż w razie wypowiedzenia wcześniejszego umowy przez dzierżawcę, nie będzie on uprawniony do otrzymania równowartości poniesionych nakładów. Podnoszone przez zawiadamiajacego twierdzenia mogą stanowić wyłącznie przedmiot postępowania cywilnego odnośnie samego zawarcia umowy, ewentualnych wad prawnych poszczególnych oświaczeń czy też zwrotu nakładów, które to postępowanie faktycznie w niniejszej sprawie zostało wszczęte, nie uzasadniają zaś kontynuowania postępowania karnego oraz przedstawienia zarzutów jakimkolwiek osobom.

Mając na uwadze wszelkie podniesione powyżej argumenty, należy podkreślić, że odnośnie punktu I sentencji brak jest znamion czynu zabronionego.

Końcowo należy również odnieść się do czynu określonego w punkcie 2 sentencji niniejszego postanowienia. Co prawda Sąd Okręgowy w Lublinie postanowieniem z dnia 24 listopada 2015 roku uchylił uprzednie postanowienie o odmowie wszczęcia śledztwa w całości, jednakże w uzasadnieniu swojej decyji podał, że odnośnie punktu dotyczącego zrealizowania znamion czynu z art. 231 § 1 k.k. w toku postępowania cywilnego należy podzielić argumentację prowadzącego postępowanie, gdyż czasochłonne procedowanie przez niezawisły skład sędziowski, w szczególności związane z gromadzeniem obszernego materiału dowodowego i uwzględnianiem wniosków o odroczenie rozprawy, nie uzasadnia twierdzenia o zaistnieniu przesłanek z art. 231 § 1 k.k. bądź innych bezprawnych zachowań, godzących w interesy stron postępowania. Zapatrywania te w pełni należy podzielić, ponieważ nie może budzić wątpliwości, że samo odraczanie poszczególnych terminów rozpraw czy też dopuszczanie kolejnych wniosków dowodowych, nawet jeśli w rzeczywisto-

1

ści wpływa na długość postępowania, to nie stanowi samoistnie o tym, iż doszło do przekroczenia uprawnień bądź niedopełnienia obowiązków przez sędziego je prowadzącego. W szczególności nie można zapominać, iż sprawa cywilna jest wielotomowa, ma dość skomplikowany stan faktyczny, opierający się o rostrzyganie konkretnych wydatków, nadto obie strony składają liczne wnioski dowodowe. Do tego dołączają również kłopoty z wyznaczaniem kolejnych terminów, z uwagi zarówno na obciążenie sądów, jak i okoliczności leżące po obu stronach postępowania oraz te, na które powołują się świadkowie w sprawie. W tej sytuacji stronie służy co najwyżej skarga na przewlekłość postępowania, a nie może to być przedmiotem ewentualnej odpowiedzialności karnej.

Art. 17 § 1 pkt 2 k.p.k. wskazuje, iż nie wszczyna się postępowania, a wszczęte umarza, gdy brak jest brak jest znamion czynu zabronionego.

Dlatego też, mając na uwadze ustalony stan faktyczny oraz wyżej wskazane argumenty, zasadnym było – na zasadzie art. 17 § 1 pkt. 2 k.p.k. – umorzenie śledztwa z przyczyny wskazanej w części dyspozytywnej niniejszego postanowienia.

Prokurator
Prokuratury Okręgowej

Krzysztof RĄBK

**Pouczenie:**

1. Na powyższe postanowienie przysługuje zażalenie do sądu właściwego do rozpoznania sprawy (art. 306 § 1 k.p.k., art. 465 § 2 k.p.k.):
- pokrzywdzonemu
- instytucji wymienionej w art. 305 § 4,
- osobie wymienionej w art. 305 § 4 k.p.k., jeżeli wsutek przestępstwa doszło do naruszenia jej praw.
Sąd może utrzymać w mocy zaskarżone postanowienie lub uchylić je i przekazać sprawę prokuratorowi celem wyjaśnienia wskazanych okoliczności, bądź przeprowadzenie wskazanych czynności (art. 330 § 1 k.p.k.). Jeżeli prokurator nadal nie znajdzie podstaw do wniesienia aktu oskarżenia wyda ponownie postanowienie o odmowie wszczęcia śledztwa – dochodzenia*) lub o jego umorzeniu.
W takim wypadku pokrzywdzony, który wykorzystał uprawnienia przewidziane w art. 306 § 1 kpk może wnieść akt oskarżenia do sądu w terminie 1 – ego miesiąca od daty doręczenia zawiadomienia o postanowieniu, które jest równoznaczne z zawiadomieniem o postanowieniu w rozumieniu art. 55 § 1 k.p.k. dołączając po jednym odpisie dla każdego oskarżonego oraz prokuratora (art. 330 § 2 k.p.k., art. 55 § 1 k.p.k.). Akt oskarżenia powinien spełniać wymogi określone w art. 55 § 1 i 2 k.p.k.
Inny pokrzywdzony tym samym czynem może aż do rozpoczęcia przewodu sądowego na rozprawie głównej przyłączyć się do postępowania (art. 55 § 3 k.p.k.).
2. Uprawnionym do złożenia zażalenia, o którym mowa w art. 306 § 1 k.p.k. przysługuje prawo przejrzenia akt sprawy (art. 306 § 1b k.p.k.).

1

3. Zażalenie na powyższe postanowienie wnosi się za pośrednictwem prokuratora, który wydał postanowienie. Termin do wniesienia zażalenia wynosi 7 dni od daty doręczenia odpisu postanowienia i jest zawity. Zażalenie wniesione po upływie tego terminu jest bezskuteczne (art. 122 § 1 i 2 i art. 460 k.p.k.).

Zarządzenie:
Stosownie do art. 100 § 4 k.p.k. w zw. z art. 106 k.p.k. i art. 306 § 1a k.p.k. doręczyć odpis postanowienia:
1) pokrzywdzonemu (ej) – Solo Investment Sp. z o.o.
2) pełnomocnikowi pokrzywdzonego – adw. Andrzej Samulak,
3) osobie zawiadamiającej zgodnie z art. 305 § 4 k.p.k. - Jarosław Tarnasiewicz – Heldut.

Prokurator
Prokuratury Okręgowej

Krzysztof RUB K

1

PROKURATURA OKRĘGOWA
Wydział IV Organizacyjno-Sądowy
ul. Okopowa 2a
20-950 Lublin
-1-

Lublin, 18 sierpnia 2016r.

PO V Ds. 79/15/S

## ZARZĄDZENIE O ZMIANIE ZARZĄDZENIA W PRZEDMIOCIE DORĘCZENIA ODPISU POSTANOWIENIA ZAWARTEGO W POSTANOWIENIU Z DNIA 16 SIERPNIA 2016R. O UMORZENIU ŚLEDZTWA

Justyna Rutkowska – Skowronek – prokurator Prokuratury Okręgowej w Lublinie, po zapoznaniu się z aktami śledztwa o sygn. PO V Ds. 79/15/S oraz postanowieniem z dnia 16 sierpnia 2016r. o umorzeniu śledztwa

na podstawie art.93§3kpk oraz art.99§2kpk

zarządzam:

zmienić zarządzenie w przedmiocie doręczenia odpisu postanowienia zawartego w postanowieniu z dnia 16 sierpnia 2016r. o umorzeniu śledztwa, w ten sposób, że skreślić pkt.2 „pełnomocnikowi pokrzywdzonego – adw. Andrzej Samulak", z uwagi na wypowiedzenie pełnomocnictwa przez pokrzywdzonego w dniu 26 listopada 2015r.

Prokurator Prokuratury Okręgowej
w Lublinie

Justyna Rutkowska-Skowronek

Odpis zarządzenia doręczyć:

- pokrzywdzonemu – Solo InvestmentSp. Z o.o.

- zawiadamiającemu – J. Tarnasiewicz - Heldut