# EXHIBIT G

**File reference I ACa 537/16**



## JUDGMENT
## IN THE NAME OF THE REPUBLIC OF POLAND

On January 24, 2017

Court of Appeal in Lublin, 1st Civil Department

composed of:

| | |
|---|---|
| Chairman - Judge: | Judge Danuta Mietlicka (rapporteur) |
| Judge: | Judge Elzbieta Patrykiejew |
| Judge: | Judge Jerzy Nawrocki |
| Recorder: | Court Secretary Maciej Mazuryk |

after recognition on January 24, 2017 in Lublin at the hearing

the case brought by Solo Investment limited liability company
located in Rozplucie Pierwsze
against Ludwin Commune.
for payment

as a result of the defendant's appeal against the verdict of the District Court in Lublin
of December 29, 2015 with reference number Act I C 28/12

    I.    changes part of the judgment under appeal in points I and III in this way, that
the claim is dismissed (point I) and orders from the plaintiff Solo Investment
limited liability company located in Rozplucie Pierwsze in favor of the
defendant Ludwin Commune a payment in the amount of PLN 7,217 (seven
thousand two hundred seventeen) as costs of proceedings (item III);

    II.    orders from the plaintiff Solo Investment limited liability company located in
Rozplucie Pierwsze a payment in the amount of PLN 20,800 (twenty thousand
eight hundred) as costs of the appeal for the defendant Ludwin Commune.

**File reference I ACa 537/16**

## JUSTIFICATION

Judgment issued on December 29, 2015 by the District Court in Lublin ordered the following:

1. ordered from the defendant, the Ludwin Commune in favor of the plaintiff, the Solo Investment limited liability located in Rozplucie Pierwsze a payment in the amount of PLN 11,239,951.09 with statutory interest from December 3, 2011 until the date of payment;

2. dismissed the remainder of the claim;

3. ordered from the defendant, Ludwin Commune in favor of the plaintiff, the Solo Investment limited liability located in Rozplucie Pierwsze a payment in the amount of PLN 21,652.12 for a partial refund of the trial costs;

4. ordered to return the amount of PLN 1,537.86 as an unpaid advance to the defendant, the Ludwin Commune from the District Court in Lublin;

5. in the remaining part, the unpaid court costs were taken over by the State Treasury.

The court based its decision on the following findings and conclusions:

In its court suit on January 13, 2012  the plaintiff, Solo Investment Limited Liability Company located in Rozplucie Pierwsze asked the Court to order the defendant, the Ludwin Commune a payment in the amount of PLN 13,889,256.46 plus the statutory interest from November 17, 2011 until the date of payment, as a reimbursement of expenditures incurred by the plaintiff and his legal predecessor on the property owned by the defendant, the Ludwin Commune, which costs were incurred in connection with the execution of an invalid „Lease Agreement" of 15 February 2007, concluded under the influence of a material error, deceitfully caused by a representative of the Ludwin Commune and concerning the content of legal action, and the plaintiff also asked to order from the defendant a payment for his trial costs, including costs of legal

1

representation. The defendant did not admit the claim, requesting its dismissal in full, and indicated that the plaintiff did not keep the one year deadline to submit a declaration of will to evade the effects of a statement made under the influence of an error. The court established that on February 15, 2007, between "Antar LTD", a limited liability company with headquarters in Lublin, represented by Andrzej Pawlak - president of the company, and the Ludwin Commune represented by the Commune Mayor - Zygmunt Ogorek was concluded and signed a lease agreement of a property located at the Lake Piaseczno, thanks to which the company Antar Ltd leased real estate consisting of plots marked in the land register of the village of Rozplucie Pierwsze No. 90 and 94/2 with a total area of 9.19 hectares built-up with a guesthouse for 50 beds, a fast-food bar, an outbuilding and a camping site excluding a strip of land with a width of 2m, counting from the fence from the north side, intended for pedestrian traffic. The contract was concluded for the period from March 1, 2007 to December 31, 2032. The lessee undertook to use the subject of the lease for running a business. According to his statement, the purpose of the contract was to adapt real estate for the needs of a modern, high standard holiday resort, where vacationers will be able to have comprehensive physical and mental recreation services available, in accordance with the program and spatial concept of the summer recreation center over Lake Piaseczno, constituting annex no. 3 to the contract (§ 1 of the contract). In § 2 of the lease agreement, the Commune stated that the property is free from encumbrances and property rights and liabilities of third parties and that it does not know about any circumstances that preclude the use of real property for running a holiday center. The agreement allowed for the assignment of tenant rights and obligations resulting from the contract for the benefit of the entity related to the lessee (§5 point 3 of the contract). The lessee undertook to pay a gross rent

of PLN 50,000 for the 12-month billing period, which was to be modified annually until March 31 of each year, based on the inflation rate adopted in the budget act for a given year (§7). In § 9 of the contract, the lessee undertook to incur expenditures on the property, and the lessor agreed that the cost of tenants' own outlays on the property would be deducted from the rent. If the amount of outlays exceeded the amount of rent in a given year, the difference was to be taken into account in the following years. The parties defined expenditures as investment expenditures in the course of adapting real estate for use as a modern holiday resort, in the course of real estate use and operation of the facility and costs of replacement, reconstruction of demolition of used infrastructure, demolition and construction of new buildings, constructions and other construction objects. The amount of expenditures to be credited to the rent was to occur each time before they were incurred on the basis of the investor's cost estimate. In § 12 of the Agreement, the parties agreed that the lessee has the right to purchase the subject of the lease by way of no-tender based on the rules specified in separate regulations (in the case of development based on a building permit). On February 28, 2007, based on the handover protocol, the lessor handed over the property specified in the contract to the lessee. Pursuant to an agreement concluded on 23 September 2009, Antar LTD, a limited liability company located in Lublin transferred to the Solo Investment, a limited liability company with headquarters in Warsaw the rights and obligations of the Antar LTD, resulting from the lease agreement of February 15, 2007 between the Ludwin Commune and the Antar LTD. The Mayor of the Ludwin Commune agreed to the above-mentioned assignment under the condition provided that the headquarters of the Solo Investment was moved to the Ludwin Commune. The Solo Investment company is currently based in Rozplucie

3

Pierwsze, in the Ludwin Commune. After the transfer of the real estate, the company commenced investments. After the completion of individual stages of work at the holiday resort, the lessee presented the as-built cost estimates to the defendant, which were verified by a person having appropriate qualifications. The defendant approved expenditures incurred in the period from March 1, 2007 to March 1, 2011 for the total amount of PLN 13,899,266.46. These amounts were used to deduct rent for the years 2007-2011 for a total amount of PLN 287,354.63. The total value of works performed for the property on which the holiday resort on Lake Piaseczno is run was PLN 11,481,329.10 gross (PLN 9.138.171,62 net). By a letter of 12 August 2011, the plaintiff requested the defendant Commune to conclude a contract in the mode of non-tender sale of real estate including plots No. 90 and 94/2, for which the District Court Lublin - East with its registered office in Swidnik keeps land and mortgage registers for (LU1I/00135980/6 and LU1l/00141599/3), referring to § 12 of the contract for the price of PLN 14,950,000.00 less the value of expenditures borne by the tenants since 2007, i.e. PLN 13,889,266.46. As the deadline for signing the contract, the plaintiff indicated the date of September 5, 2011. The plaintiff also requested to provide him with full documented information on the current legal status of the real estate. In reply, the Mayor of the Ludwin Commune stated that in accordance with the provisions of the Real Estate Management Act of August 21, 1997, real estate owned by the Commune may be sold by way of no-tender only in the cases specified in the Act, when the owner decides to sell, which the Ludwin Commune does not plan. The plaintiff reiterated the request to provide information on the legal status of the property and requested the Ludwin Commune to update the legal status of plot no. 94/2 due to the entry in the land and mortgage register as the owner of WPT "Lublinianka" in Lublin, not the Ludwin Commune. The Mayor of the Ludwin Commune, in a letter dated

4

September 22, 2011, stated that the commune is the owner of the whole real estate, while the declarations included in the contract and regarding the legal status of the property were consistent with the actual and legal status. Moreover, he stated that since 1991, administrative proceedings have been pending for the return of the real estate constituting part of plot No. 90, initiated from the application of the former owner. In a letter dated October 12, 2011, Solo Investment called on the Ludwin Commune to terminate the lease agreement on the basis of the parties' agreement within 14 days from the delivery of the request and to return the value of the landlord's expenditure on the property, not previously credited against the rent, minus the total amount of defendant's rent, and ultimately the amount of PLN 13,592,363.00. The plaintiff justified the above statement by actions taken by the defendant, in particular the refusal to sell the leased property, which led to issues based on legal grounds, economic desirability and the validity of continuation of the lease agreement. The Ludwin Commune did not agree to terminate the contract by agreement of the parties. In the letter presented to the defendant Municipality on November 18, 2011, the plaintiff, the Solo Investment Company as the legal successor of the Antar LTD Company in Lublin and the lessee of the property located in Rozplucie Pierwsze, covering plots no. 90 and 94/2, filed a statement of refusal of legal effects declaration of will on the conclusion of the "Lease Agreement" of February 15, 2007, submitted a declaration of evasion of the legal effects of the declaration of will to conclude a lease contract deceitfully caused by the Ludwin Commune and concerning the content of legal action.The misrepresentation consisted in: incorrect provision in the wording of the lease agreement: "the lessor declares that the property indicated in § 1 is free from encumbrances and property rights and liabilities of third parties and does not know of any circumstances excluding the use of real estate for running a holiday resort"  and false assurance in the content of § 12 of the above-mentioned contract,

"The lessee has the right to purchase the subject of the lease through a non-tender procedure on the terms set out in separate regulations (in cases of development based on a building permit)", while the Commune does not plan to sell the property, and as for its part, the recovery proceedings are pending, which excludes the possibility of actual and legal purchase of the property. Then the plaintiff called for the return of the value of expenditures in the amount of PLN 13,899,266.46 within 14 days of receiving the request. Subsequently, on February 27, 2012, the defendant was summoned to appear in order to take possession of the property which the plaintiff wanted to transfer back to the Ludwin Commune. The Ludwin Commune in a reply, dated March 1, 2012 stated that it upholds the position expressed in the letter of December 1, 2011 and it did not show up to take property possession back. In the face of the failure of the representatives of the Commune on the day indicated, the plaintiff prepared a report of the appearance of one and failure to attend by the other party for the purpose of transferring the property, signed by three witnesses. Without the presence of the defendant, in the presence of the witnesses indicated, the plaintiff made the property transfer protocol and sent it to the Ludwin Commune by mail. The § 2 point "g" of the real property transfer protocol shows that the company considers the transfer act to be made. However, the Commune defended the actions, indicating unilaterally that the lease contract of February 15, 2007 still applies. Since 1991, in relation to the part of plot No. 90, formerly designated in the land and buildings register as plot No. 285, administrative and court-administrative proceedings concerning the return of property to previous owners expropriated in the 1970s were pending, currently in the person of their heir - Jerzy Wojtasiewicz. In the letters of April 2, 2008, the County of Leczna informed about initiating, upon the request of the Antar LTD, administrative proceedings regarding development of plots no. 90 and 94/2 in Rozplucie Pierwsze, on the premises of a holiday resort under the name of "Resort Piaseczno". These

letters were also sent to the attention of Jerzy Wojtasiewicz by the County of Leczna, what has been shown in their content. In the course of the above-mentioned proceedings, Jerzy Wojtasiewicz applied for their suspension until the decision of the Minister of Infrastructure issued in case BO1d/782-R-124/07 concerning the return of the expropriated property - former plot no. 285, now part of plot No. 90. These applications were not delivered to the lessee. In the decisions of April 30, 2008 (cases: BAO.IV.7351/120/08-4, BAO.IV.7351/119/08-4, BAO.IV.7351/118/08-4, BAO.IV.7351/117/08-4, BAO.IV.7351/104/08-4, BAO.IV.7351/105/08-4, BAO.IV.7351/98/08-6, BAO.IV.7351/98/08-5), the County of Leczna refused to suspend the proceedings, indicating at the same time that Jerzy Wojtasiewicz is not their party. The provisions were also delivered to the Antar Ltd Company on May 2 and 5, 2008. and picked up by Mr. Wieslaw Tokarz. Jerzy Wojtasiewicz, by a letter filed on 1 April 2008, applied to the District Prosecutor's Office in Lublin for commencing criminal proceedings in connection with the investment carried out by the Antar LTD Company in Lublin without the required building permit on plot No. 90 located in the village of Rozpłucie - Garbów. In the course of the proceedings, it was stated that sanitary buildings erected without the required permit, they were dismantled. By virtue of a decision of 28 April 2008, the Police Headquarters in Leczna refused to initiate an investigation against the negligible social harmfulness of the act. Jerzy Wojtasiewicz also visited the premises of the holiday resort in 2007-2008, when construction works were in progress, informing employees that the right to part of the property is contentious. However, he did not talk to the president or owner of Antar LTD. The employees informed Wiesław Tokarz about the fact that someone claims the rights to the real property and that the proceedings are in progress. Wiesław Tokarz did not provide this type of information to the company's authorities, considering that it is not within his competence. On June 13, 2008 during the proceedings for annulment of the decision of the President of the Office of Housing

and Urban Development of 22 March 2000 (P0.5.1-0-85-99), which upheld the decision Lublin Voivode from December 14, 1998 (GKN.GW.7221-2/76/98) refusing to return the property located in the city of Rozplucie - Garbow, marked as plot No. 285 with an area 3.21 ha, which is part of the current plot No. 90, real estate inspections were carried out, in which was participated, marked in the protocol as the lessee, Wiesław Tokarz, with third-party agent authorization along with Marek Pawłowski also a third-party agent with authorization. Jerzy Wojtasiewicz also participated in the activities. Antar LTD was requested to provide the plot for inspection by the Ministry of Infrastructure. Wiesław Tokarz had third-party agent authorization granted on April 10, 2008 and June 12, 2008 by the President of Antar LTD to represent it before public administration bodies in all matters related to the proceedings regarding the investment in the holiday resort on the Piaseczno Lake. Marek Pawłowski had third-party agent authorization from June 12, 2008 to represent Antar LTD before public administration authorities, common and administrative courts and other entities in matters related to proceedings regarding investments in the holiday resort on the Piaseczno Lake. The authorization was granted by the President of the Company. Wieslaw Tokarz was not an employee of the plaintiff, he provided services for him (and his legal predecessor) during the investment process, in particular in the field of obtaining building permits. The above authorizations did not authorize to represent Antar LTD in the course of proceedings for the return of real estate. The company was not a party to this proceeding. During the inspection, Wiesław Tokarz submitted his authorization to the employees of the Ministry of Infrastructure and it was not questioned. After completing the inspection, Wiesław Tokarz reported to the deputy mayor of Ludwin commune to obtain information about the results of the inspections,

who informed him that they were beneficial for the commune. Wieslaw Tokarz conveyed this information to Andrzej Pawlak, the President of Antar LTD. The president of the company decided that there is no problem related with this procedure. The real estate on which the "JAGODA" Holiday Resort was located on Lake Piaseczno was for many years the subject of lease contracts, but immediately before the conclusion of the lease contract by the plaintiff, the center was run by the Ludwin Commune, due to the lack of willing external entities. In the tender announcements placed by the Ludwin Commune, information about the lack of real estate encumbrances was included. During several months of negotiations regarding the conclusion of the contract, representatives of the Ludwin Commune did not inform the representatives of Antar LTD Company about the ongoing expropriation proceedings. Both the Mayor of the Commune and his deputy, in connection with the position of Antar LTD, predicted the possibility of selling real estate in the future, after making an investment in the infrastructure of the holiday resort. Representatives of the Commune were afraid that if the entire property was to be sold immediately, the company would divide it and sell it to other entities, while the Municipality wanted to preserve the current character of the property. Each party was represented by entities providing legal assistance. The court indicated that the documents presented by the parties were not questioned, except for the inspection report of the property of June 13, 2008 to the extent that Wieslaw Tokarz was described as the lessee and Marek Pawlowski as the representative of the lessee. Nevertheless, despite the objections of the plaintiff's proxies regarding the lack of influence of marked persons on the manner of their specification in the report, it should be pointed out that Wieslaw Tokarz explicitly stated that to report himself as a lessee was a mistake, which clearly shows that he knew how in the protocol he was specified, and all claims about posting his person *post factum* are not confirmed

9

in the facts. The court gave these documents faith. The court also discussed and assessed the testimonies of witnesses, bearing in mind, to which side of the trial the given witness was involved at the stage of preparing and implementing the contract, as well as now, because the content of testimonies was largely related to this circumstance. The court pointed out that the witness Andrzej Pawlak, acting as the president of Antar LTD (similarly to Jaroslaw Tarnasiewicz - Heldut) had detailed information about the negotiation process and conclusion of the lease agreement, whereas in the scope of the investment itself, in particular administrative proceedings, his knowledge largely was based on information obtained from Wieslaw Tokarz, which as part of his business activity dealt directly with the issues of building permits and administrative processes connected with them, activities on the property itself, as well as contacts with the Ludwin Commune (of a less formal nature). On behalf of the Commune, due to the scope of duties and direct participation, and therefore knowledge in this subject, detailed testimony was given by Krystyna Florek, while the negotiation process between the Municipality and Antar LTD was also known to Slawomir Czubacki, deputy mayor during negotiations, which now no longer fulfills this obligation. The court gave faith in the testimonies of Andrzej Pawlak, Wieslaw Tokarz, Jaroslaw Tarnasiewicz - Heldut, Slawomir Czubacki, to the extent they reported that in the course of the negotiations that the municipality assured to the representatives of the company about a possibility to sell the property in the future, and the concerns of the commune authorities regarding the sale of plots, regardless of the arrangements of the local spatial development plan, are in logical relation with the content of the contract and investments which then was taken by the plaintiff and his predecessor. In the opinion of the Court, in the case of entities conducting real estate development activity on a large scale, based on the principles of life experience, it is difficult to accept that these entities undertook significant

investments, without guarantees provided by the contractor. For these reasons, it could not be considered credible testimony of Krystyna Florek and Zygmunt Ogorek indicating the invariable declarations of the Commune that the contract concerns the lease, without foreseeing the possibility of sale. On the other hand, the issue of the lack of official information about the pending recovery proceedings in relation to a part of the real estate was in fact undisputed between the parties. Zygmunt Ogorek testified that he did not inform the counterpart at any stage of the negotiations about the pending return of the property, he also had no knowledge if any of the employees gave such information, in any case it should be considered that he did not issue such orders. However, it appears from Sławomir Czubacki's testimonies that the commune was belittling the proceedings described, pointing to the obvious groundlessness of J. Wojtasiewicz's claims, which is in essence expressed in the testimonies of Zygmunt Ogorek. Witness testimony of Wieslaw Tokarz, in the range in which he presented knowledge about the real estate return proceeding, was evaluated by the court as inconsistent. On the other hand, Krystyna Florek's testimony, to the extent she stated, that she clearly informed Wieslaw Tokarz about the pending real estate return proceeding and about that this proceeding excludes the possibility of selling real estate, taking into account the entire body of evidence, cannot find any confirmation. Only in a part, in the opinion of the Court, the testimony given by the Mayor of the Ludwin Commune, Andrzej Chabros, deserves for the faith. First of all, these fragments of his testimony are not convincing, which are based on information obtained from third parties or those that boil down to the legal interpretation of contractual provisions. However, the witness admitted that he had asked the inspector to check the cost estimates submitted by the plaintiff in terms of material and financial aspects, which in turn led to the approval of these cost estimates.

Only some items of these cost estimates were questioned. The Court noted that the opinion of an expert in the field of construction was based on works that were not questioned by the defendant, which makes the expert's opinion credible. Due to the need to have a special knowledge in respect of the value of expenses incurred by the plaintiff on the property of the defendant, the court admitted evidence from an expert in the field of construction. In view of the motivated objections of the defendant, the Court subsequently allowed the supplementary opinion to be done. The expert showed the value of particular works and coefficients, which formed the basis for determining this size of the valuation. In complementary opinions, he was also comprehensively referring to the doubts raised by the defendant, also taking into account partially raised allegations. However, the court had in mind that the expert erroneously classified the rent as the value of the investment, the amount of which was unchallenged between the parties. The rent is not an expense and cannot affect its amount. In the face of a transparent presentation by the expert of the methods for which he calculated the value of outlays, without including rent, the Court, based on the possessed data, clarified the gross outlay for the amount of PLN 11,239,951.09. (PLN 13,388,894.15 x 84% - because of 16% of usage). The allegations made by the defendant in the opinion were of a polemic nature or referring to the legal assessment of the facts, which ultimately made it pointless to admit evidence from another expert's opinion. It cannot be assumed that the court is obliged to admit evidence from subsequent experts whenever the opinion is unfavorable for the party. The need to appoint another expert should therefore be due to circumstances of the case, not the dissatisfaction of the page from the previous submitted opinion. The court ruled that the plaintiff company was seeking reimbursement of the expenses it had made and its legal predecessor based on the contract concluded as a result of submitting a declaration of will under the influence of an error,

from whose results it evaded by submitting an appropriate statement. The error was related to the circumstances specified in § 2 and 12 of the lease agreement, which providing assurance of the defendant about no burdens, no property rights of third parties and that the defendant does not know about any circumstances excluding the use of real estate on running the holiday resort, and to grant the lessee the right to purchase the leased property on a non-tender route, under the rules set out in separate regulations in the case of development based on a building permit. The plaintiff claimed that they were inconsistent with reality, because in respect of the part of property, there was an administrative proceeding regarding the return of the property to the expropriated owners, about which the applicant's predecessor did not know. Article 84 k.c. states that in the event of an error regarding the content of a legal proceeding, it is possible to avoid the legal consequences of his declaration of will. However, if the declaration of will was made to another person, it may only be evaded from its legal effects if the error was caused by that person, even without her fault, or if she knew about the error or could easily note the error; this limitation does not apply to a legal transaction free of charge (§ 1). One can only rely on an error justifying the supposition that if the declarant would not act under the influence of error and would judge the matter wisely, he would not submit a statement of that content, and thus a material error (§ 2). An error to which the evading entity of a wrongly submitted declaration of will refers, must refer to the legal act, and must be relevant, unless it was triggered by a ruse (Article 86 § 1 k.c.). The deceitful mislead is the conscious act of the counterparty aimed at evoking a misleading idea of reality. In the opinion of the Court, this circumstance did not take place. From Slawomir Czubacki's testimony, it appears that the proceedings with Jerzy Wojtasiewicz's participation were belittled in the Commune, because his demands were not considered valid

and meaningful. A similar conclusion can also be drawn from Zygmunt Ogorek's testimonies, which indicated that he does not know whether any of the employees provided information about the return procedure concerning part of plot No. 90, while he himself did not inform the participants of the negotiations. However, the witness Krystyna Florek said that she would not consider this type of claim to be a burden on real estate, so she did not see the need to post relevant information and tenders, and the assurance provided in § 2 of the contract is considered correct. Commune activities in this respect should therefore be assessed as deprived of due care or diligence, however, the Court found no grounds to consider that they were aimed at deliberately introducing the representatives of Antar LTD into error. An error as to the content of a legal transaction means, in essence, an error as to the circumstances included in the content of that act. The determination of the content of a legal transaction and its components must be made taking into account the provisions of art. 56 k.c. Therefore, one cannot lose sight of the fact that a specific legal act constituting the subject of assessment evokes "not only the effects expressed in it, but also those that result from the act, principles of social coexistence and established customs". The misconception that falls under the notion of error includes both the content of the statement (mistake) and other circumstances, such as the facts to which the statement relates, legal norms applicable to the legal act carried out, or the legal consequences of the legal transaction. The plaintiff's predecessor's error related to the factual circumstances directly related to the legal status of the real estate being the subject of the lease contract, in which the tenant's right to purchase the property was granted at the same time, after its previous construction. There is no doubt, therefore, that in the light of the above considerations, the mistake concerned the content of the legal transaction. The second premise is the essential nature of the error, that is, the condition that the legal action is made. Assessment or error should be carried out based on

the analysis of the content of the entire contract and other circumstances of its conclusion. The court, after analyzing the testimonies of witnesses - Wiesław Tokarz, Sławomir Czubacki and Andrzej Pawlak, determined that the investor intended to acquire real estate, however, due to concerns of the Ludwin Commune's authorities regarding the possibility of dividing and selling the divided property, hence the liquidation of the holiday resort, a lease contract was concluded, the provisions of which clearly indicate that the lessee should adapt the property to the needs of a modern, high standard holiday resort (§ 1 point 4 of the contract), while limiting its right to return the equivalent of expenditures (§ 9 and 11 of the contract). In this way, the Commune's leased real estate, through the appropriate security, consistent with the assumptions regarding the operation of the holiday center and the construction of leased plots, obtained a guarantee of maintaining the existing character of the property. It is therefore obvious that an important condition for the conclusion of the contract was the future sale of real estate, which, however, under the conditions of pending proceedings for reimbursement, pursuant to art. 34 par. 3 of the Act of August 21, 1997 Real Estate Management (Journal of Laws of 2015 item 782, as amended) was not possible. Therefore, it should be considered that the company, having information about pending proceedings, which excludes the sale of real estate, would not conclude a lease agreement with similar content. In the opinion of the Court, the error was significant and concerned the content of the legal transaction. The Court also analyzed the premises of art. 84 § 1 second sentence, namely, whether the other side of the error evoked by even her inalienable behavior or error, knew, or finally easily could have seen the mistake. The defendant not only did not reveal in the course of the negotiations that the property was in progress with recovery, but also ensured that there were no real estate encumbrances, therefore it is undoubted that the error was caused by it. Article 88 § 1 of the Civil Code (k.c.) makes it possible to

evade the legal consequences of a declaration of will which has been made to another person under the influence of an error or threat, by a declaration made to that person in writing. Such a statement was made in a letter presented to the Ludwin commune on November 18, 2011. The court also assessed the issue related to the lack of identity of the entity that made the declaration of will affected by the defect and the entity that made the declaration about the evasion of the effects of the error. The plaintiff derives his entitlement from the contract concluded with the previous tenant. By virtue of a written agreement for the transfer of rights and obligations under the lease agreement dated 23 September 2009 (k. 24 and n.), not questioned by the defendant. Antar LTD a limited liability company based in Lublin, transferred the rights and obligations to the plaintiff under the lease contract of the JAGODA Holiday Resort on Lake Piaseczno. Defendant Ludwin Commune granted consent to the abovementioned agreement, provided that the headquarters of the Solo Investment company was transferred to the Ludwin Commune, which, as is apparent from the excerpt from the Register of Entrepreneurs of the National Court Register attached to the suit, occurred. In accordance with art. 509 § 2 k.c. the creditor may, without the consent of the debtor, transfer the claim to a third party (transfer), unless this would be opposed to the act, the contractual reservation or the characteristics of the obligation. Together with the claim, all rights related to it are transferred to the buyer, in particular a claim for compound interest (§ 2). Art. 519 k.c. provides that a third party may enter the place of the debtor who is released from the debt (§ 1). The debt can be taken over by a contract between the debtor and a third party with the consent of the creditor. A creditor's declaration may be made to any of the parties. It is ineffective if the creditor did not know that the person taking over the debt is insolvent (§ 2 point 2). The contract on taking over the debt should be null and void concluded in writing. The same applies to the consent of the creditor to take over the debt (art. 522. k.c.). In view of maintaining the required form and obtaining the consent of the Ludwin Commune, the change of the parties to the

16

contract was legally effective. The Court also analyzed the nature of the right to submit a declaration of refusal of the declaration of will made under the influence of an error and stated that it has the character of legal and shaping powers, because it creates the competence of the authorized entity to unilaterally change or terminate the existing legal relationship. In view of the above, the plaintiff, in principle, was entitled to the right to evade the effects of the declaration on the conclusion of the lease contract. Nevertheless, the defendant argued that due to the passage of time from the moment when the plaintiff (her predecessor) detected an error, the right expired, because pursuant to art. 88 § 2 k.c. the right to repeal expires in the event of an error - within a year of its detection. In the opinion of the Court, it does not raise doubts that the Commune did not provide, in its official form, information about the proceedings aimed at returning the property to the previous owners. Nevertheless, the plaintiff, already in 2008, received information that part of the leased property is subject to such proceedings. The company, as can be seen from the attached photocopies of documents in the files of the proceedings kept by the Minister of Infrastructure (BO1d / 782-R-124/07), was notified of the need to provide plot no. 90 for the inspection on June 13, 2008; the content of the notification indicated that the proceedings concerning the annulment of the decision of the President of the Office of Housing and Urban Development of 22 March 2000, mark P0.5.1-0-85/99, which upheld the decision of the Lublin Province Governor dated December 14, 1998 (reference number GKN.GW.7221-2/76/98), refusing to return the property located in the town of Rozpłucie - Garbów, marked as plot No. 285, area 3.21 ha. It was further indicated that it is now part of plot No. 90, area of 9.14 ha, and the body conducting the proceedings was obliged to determine the issue of the implementation of the purpose of expropriation of the former plot No. 285. The request for this content has been received at the office of Antar LTD by its worker on May 27, 2008. The plaintiff's attorney did not refer to the content of these documents, he did not question them, and the analysis of all material

collected in the case indicates that the letter was received by the same person who received correspondence sent from the Leczna County at other times, therefore there is no indication that it was unauthorized or accidental. He also indicated to the Court that the correspondence came from the body directly conducting proceedings in the case, so it is difficult to assume that it did not contain reliable information. What's more, even if they were not enough for the company, they should give rise to actions to clarify this issue. It is unacceptable for the position according to which the professional ignores the relevant circumstances of his business, to refer to his ignorance in this respect after some time. Thus, correspondence was delivered to the address of Antar LTD, which contained information allowing for the detection of an error. Also, decisions issued in the course of proceedings conducted by the Leczna County contained in their content information about the proceedings regarding the return of the expropriated property designated as the former plot of land No. 285 and now part of plot No. 90. A separate issue, strongly emphasized by the defendant, was the participation in the visual inspection of the property in June 2008 of Wiesław Tokarz and Marek Pawłowski, who presented their power of attorney authorizations to the leading authorities from the board of Antar LTD. Both Wiesław Tokarz and Andrzej Pawlak testified that the authorization submitted during the inspection had a character of a one-time authorization, issued according to specific needs. Since Antar LTD was informed about the inspection, Wiesław Tokarz had the authorization issued on the day preceding the act, which he presented to the representatives of the Ministry of Infrastructure

18

therefore in the light of the principles of logic, this means that it has been given to him in connection with this particular act for which he submitted it. Thus, it should be considered that he acted on behalf of the lessee during this operation. The proof of the truth of this assumption may also be the fact that he sought information from the employees of the Commune Office regarding the results of the inspection and such information, although quite general in nature, was obtained and handed over to the president of Antar. A number of presented circumstances lead to the conclusion that the predecessor of the plaintiff could have detected the error in 2008, which would lead to the conclusion that the action has been again legally called, due to the ineffective passage of time to avoid the consequences of a declaration of will made under the influence of an error. Nevertheless, the court pointed out that the legal predecessor of the plaintiff acted on the basis of the assurances of his contractor, local government units, which denied any doubts as to the legal status and consequently to the possibility of selling the property located on Lake Piaseczno. Therefore, the lessee's conduct cannot be assessed in isolation from these circumstances. Since it is undisputed that in the text of the real estate lease notices the proceedings regarding the return of real estate were not provided, such information was also not provided in the course of the negotiations, but also after the contract was concluded, the plaintiff had grounds to be convinced that such circumstances did not occur, and as a consequence, do not treat messages contained in correspondence addressed to the company from the Ministry of Infrastructure, or Leczna County as regarding facts affecting the implementation of contractual provisions. Both in doctrine and jurisprudence, it is assumed that the error may concern both factual and legal circumstances, while in the latter, the claimant company was still in the wrong opinion, and the error in this respect was detected only

19

when the mayor of the Ludwin Commune presents formal information, that the proceedings regarding the return of the part of the leased real estate are in progress, which allowed this circumstance to be considered relevant. The letter containing the relevant information is dated September 22, 2011, and the statement on the evasion of the declaration of intent submitted under the influence of the error took place on November 18, 2011, when the plaintiff filed a relevant letter to the Ludwin Commune, so that the required deadline has been met. As a consequence of the effective evasion of the legal consequences of a declaration of will to conclude a lease agreement that provided for making outlays on property, the plaintiff demands to return their equivalent. Effective evasion of the legal consequences of the declaration of will made under the influence of error makes the contract invalid *ex tunc*. The benefit fulfilled in the performance of such a contract is an undue payment (art. 410 § 2). The basis for demanding its return are provisions on unjust enrichment in connection with art. 410 § 1 k.c. The fact that the plaintiff and its predecessor made outlays was not contentious. Basically in the course of the trial, the defendant did not question the scope of the works, but only their value, due to the fact that it was not determined based on as-built cost estimates prepared on the basis of acceptance reports of works performed. In the course of the trial, however, the plaintiff presented documents confirming the Ludwin Commune's acceptance of the cost and scope of the works performed, and the as-built cost estimates constituting the basis for preparing these documents (during the proceedings being the basis for the expert's opinion) were submitted to the Ludwin Commune for verification for this purpose by a called-upon by defendant specialist, which was demonstrated in the course of testimonies by Krystyna Florek and Miroslaw Wozniak. Since, therefore, a way of verifying the works carried out was accepted between the parties to these proceedings, and the Commune considered it to be correct and did not question the number of works carried out at the co-operative stage,

and at the stage of the court proceedings did not indicate any circumstances suggesting an irregularity of the previously determined range of expenditures, the assessment of the defensiveness of the charges presented by the defendant and the assessment of the documents submitted by the plaintiff as evidence of expenditures should lead to the conclusion that the defendant's allegations are reported not due to the factual reservations, but only due to the process strategy chosen by the defendant Commune. In view of the set scope of works, it was necessary to determine their value. If the return of unjust enrichment is to take place in money, then if an action of adjudication is upheld, the current enrichment shall be refunded, which shall be understood in accordance with art. 405 k.c. in conjunction from art. 316 k.p.c. and applied by analogy to art. 363 § 2 k.c., return enrichment existing at the time of the verdict. It was necessary to determine the value of outlays, taking into account the degree of their consumption, so that the current value of enrichment of the defendant could be indicated, which required special information. The expert in the field of construction in his opinion, taking into account only the expenditure approved by the defendant, gave the net and gross value of the expenditures made. The defendant Commune questioned the possibility of awarding to the plaintiff an amount including VAT, arguing that some of the work was carried out by plaintiff's workers, that is, the economic method. Referring to this allegation, the Court pointed out that the expenditure on real estate to be repaid under the provisions of art. 8 sec. 1 of the Act of 11 March 2004 on tax on goods and services (i.e. Journal of Laws of 2011 No. 177, item 1054 as amended) are treated by the tax authorities as paid services, and these in accordance with art. 5 para. 1 of the above-mentioned Act are subject to the tax on goods and services, also in the case when the obligation to return their value results from provisions on unjust enrichment, if it concerns an active VAT taxpayer. Such understanding of the concept related

is with the content of the provision of art. 47 § **1** k.c. 48 k.c., which results in connection with the ownership of the land of its constituent parts, therefore things permanently connected with it, to which the buildings and structures erected by the plaintiff belong undoubtedly. It is irrelevant that the plaintiff mistakenly used the concept of withdrawal from the contract. For these reasons, it is irrelevant whether the plaintiff performed work through his workers or the method of commissioning works to other entities, because the whole provision of outlays is a service. The result of the above is the statement that the benefit awarded in the case in question will be connected with the obligation to pay VAT by the plaintiff company. In accordance with the provisions of art. 3 par. 1 point 1 in relation to paragraph 2 of the Act on information about prices of goods and services of 9 May 2014 (Journal of Laws of 2014, item 915), the buyer is obliged to pay to the entrepreneur for the service a price that includes tax on goods and services. The above requires, therefore, VAT to be taken into account in the amount awarded by the plaintiff, and thus the gross price set by the expert. On the resolution on the interest, the Court based its content on art. 481 in conjunction with 455 k.c. The plaintiff evaded the effects of declarations of will to conclude a lease agreement in a letter lodged with the defendant Commune on November 18, 2011, at the same time appointing its 14-day period for return, thus marking the date of performance. Thus, according to the call, interest should be due from December 3, 2011. Decision on the costs of the trial, the Court based the content of art. 102 k.p.c. and art. 113 paragraph 3 of the Act on court costs in civil matters.

An appeal against this judgment was made by the defendant, who appealed against the judgment in points 1 and 3 and accused:

- violation of the provisions of substantive law art. 84 §2 k.c. and art.88§1 and 2 k.c. by a flawed acceptance that the plaintiff effectively, within the statutory deadline, evaded the effects of her declaration of will in the situation

when Antar Ltd Sp. z o.o. in Lublin learned of the fact of pending refund proceedings in 2008 at the latest, and this moment should be reliable for determining the moment of detecting an error within the meaning of art.88 §2 k.c., § 12 of the lease agreement dated 15 02 2007 in conjunction from art.84 § 1 and 2 k.c. by a defective acknowledgment that the fact of lack of knowledge about the possibility of purchasing leased real estate may be considered material for the mistake due to pending proceedings regarding the return of a part of the expropriated property, if §12 of the contract confirmed only the rights under the Real Estate Management Act and the plaintiff knew that the Commune did not want to sell the property due to the fear of its division, art. 509 k.c. in conjunction from art. 65 k.c. by failing to interpret the assignment transfer agreement dated September 23, 2009 concluded between the plaintiff and its predecessor and the acceptance that the transfer also covered a legal-forming declaration and the opportunity to claim for reimbursement, while the contract covered only assignment of rights and obligations under the lease contract, art.226 k.c. in conjunction with art.230 k.c. and art. 481 § 1 k.c. by the decision on return of expenses to the plaintiff in a situation where the real estate covered by the lease contract for which expenditures were made, was not issued to the defendant, which resulted in the settlement of the claim as non-required,

- infringement of procedural law, and this is art.233 §1 k.p.c. in conjunction with art.316 k.p.c. by making a free assessment of the evidence, in particular the administrative provisions of April 30, 2008. and letters from the Ministry of Infrastructure dated May 13, 2008 delivered to the registered office of the Company, minutes of the inspection of June 13, 2008 and statements made in the course of this activity, as well as testimonies of witnesses Zbigniew Dabek and Krystyna Florek, from which it was apparent that the company Antar Ltd. Sp. z o.o. obtained clear information about the pending refund procedure covering parts of the leased real estate already in 2008, art.227 §1 k.p.c., art.284 k.p.c., art.235 §1 k.p.c.

and art. 233 § 1 k.p.c. and art. 253 k.p.c. by basing the verdict on an expert opinion based on cost estimates and unspecified photo documentation, in a situation where their formal submission and admission of evidence from these documents and photographs was not obtained, which results in recognition that the expert opined on the basis of improperly carried out evidence, art.285 §1, k.p.c. in conjunction with art.233 k.p.c. by omitting verification of cost estimates and determination of the actual value of inputs, art.233 k.p.c. by refraining from making an expert opinion on the assessment of evidence covering VAT invoices, from which it follows that the value of expenditure adopted by an expert is significantly overstated, art.227 §1 k.p.c. in conjunction with art.217 §3 k.p.c. and art.227 k.p.c. and art.328 §2 k.p.c. by unjustifiably dismissing the evidential application for admitting evidence from an expert opinion in the field of costing works in construction to determine the actual value of expenditure, omitting the determination and indicating in the justification what expenditures were incurred for the property and their value, art.244 § 1 k.p.c. and art.286 k.p.c. by premature closing of the trial despite not having taken evidence from another expert's opinion,

- contradiction between the essential findings of the Court and the content of the evidence collected by arbitrarily determining that the plaintiff detected an error when the letter of the Mayor of the Commune was delivered in 2011, while all the evidence indicated that it was the latest on May 27, 2008, asking for a change and dismiss the action in its entirety and award the costs of the proceedings to the applicant.

**The Court of Appeal weighted as follows:**

The appeal is justified. The most important and foreground issue in the case was to determine whether the Antar company's declaration of intent when concluding the lease contract could be considered to be submitted under the influence of an error. The applicant's allegation of a violation of the provisions of substantive law is accurate,

formulated as a violation of § 12 of the lease agreement dated February 15, 2007, in connection with art.84 § 1 and 2 k.c. "by a flawed acknowledgment that a lack of knowledge about the possibility of purchasing leased real estate may be considered a mistake due to pending proceedings regarding the return of a part of the expropriated property, if § 12 of the contract only confirmed rights under the Real Property Management Act". The District Court determined that the error according to the plaintiff concerned the circumstances specified in § 2 and 12 of the lease contract, therefore providing the defendant with no encumbrances, property rights of third parties and that she does not know about the circumstances excluding the use of real estate a holiday resort and granting the tenant the right to purchase the subject of the lease through a no-tender procedure, on terms specified in separate regulations in the case of development based on a building permit. The plaintiff claimed that they were inconsistent with reality, in relation to the part of the property where there was an administrative proceeding regarding the return of the property to the expropriated owners, about which the applicant's predecessor did not know. The Court indicated that art. 84 k.c. states that in the event of an error regarding the content of a legal transaction, it is possible to evade the legal consequences of his declaration of will. If, however, the declaration of will was made to another person, it may only be evaded from its legal effects if the error was caused by that person, even without her fault, or if she knew about the error or could have easily noticed the mistake; this limitation does not apply to the unpaid legal transaction (§ 1). One can also refer only to an error justifying the supposition that if the declarant would not act under the influence of an error, he would judge the matter wisely, he would not submit a statement of this content, and thus an essential error (§ 2). An error to which an entity evading the consequences of a wrongly submitted declaration of will

must concern a legal act and be relevant, unless it was triggered by a trick (Article 86 § 1 of k.c.). From the correctly understood content of the error institution, the District Court, when assessing the collected evidence, drew some flawed conclusions. In the opinion of the Court, what should be agreed with, the defendant cannot be attributed to a cunning action aimed at creating a false impression of reality. In the opinion of the Court, however, the plaintiff's predecessor error occurred because it concerned facts directly connected with the legal status of the real estate being the subject of the lease contract. In the opinion of the Court, an important condition for the conclusion of the contract was the future sale of real estate, and this was not possible due to the ongoing proceedings for the return of the property. In the opinion of the Court, if the company knew about the procedure excluding the sale, it would not conclude such an agreement. The Court also stated that this was an important mistake, boiling down to the fact that if the party knew the true state of affairs, it would not submit a declaration of will of this content (meaning it would not have entered into a lease agreement). With this position of the Court, it cannot be accepted. The Court established that, when negotiating the terms of the contract, the representatives of Antar knew that the municipality had no intention of selling the real estate because it feared the division of the property and the Commune wanted to maintain its current character (page 17 of justification). The parties to the contract, represented by professionals, however, have entered into a contract in such a form that, contrary to the position of the Court, in no way guaranteed the acquisition of the property by the Company. Indicated to § 12 of the contract, which in the plaintiff's opinion indicates a mistake, only provides that the Company will be able to acquire the property in a non-tender mode. It only means that in a situation when the Commune makes a decision about the sale, the Company may acquire the property in such a privileged manner. However, it is impossible to draw any conclusion regarding the Commune's obligation to sell from the content of this contractual provision.

26

It should be agreed with the plaintiff that such a contract is a repetition of the act on real estate management that regulates the possibility of purchasing real estate on a pre-emptive basis. The contract does not specify either the date or other circumstances after which the sale could be sold, and in fact this record referred only to the future and possible behavior of the Commune regarding the sale. Therefore, in the opinion of the Court of Appeal, one cannot derive from this provision theorems about an error of the company, because it cannot be considered an error, an image of uncertainty, because the future is not guaranteed by any means. The fact that the municipality refused to sell is in line with the content of the contract, which did not oblige it to sell at any point, and is only a failure to meet the expectations of the other party, moreover also having no basis in the contract. Concluding, Antar company with full knowledge concluded a lease contract, and it does not in any way indicate that it had erroneous content, justified by circumstances, an imagination. Therefore, her expectations as to the acquisition of property can in no way be considered a mistake. It is also necessary to agree with the position presented in the course of the trial by the defendant that concluding a contract of such and not a different content, perhaps not entirely beneficial to the plaintiff (regarding the reasons for termination or reimbursement) cannot justify the current reference to the error. The contents of § 1 and 2 of the contract were also truthful, since the defendant was and is the owner of the real estate, the property had no encumbrances and was not encumbered with any property rights of other persons such as rent, easements, use rights, mortgage, perpetual usufruct. The administrative proceedings regarding the return of part of the property covered by plot no. 90 is under no circumstances subject to the terms "encumbrances and rights in rem and obligations of third parties" referred to in § 2. This paragraph does not mean that it covers

claims or any third-party rights. It is also worth mentioning that the defendant Commune, by concluding the incriminated agreement with Antar LTD, operated the center itself due to the lack of willing external entities, and in the advertisements - directed to all potential applicants - did not indicate that in relation to real estate recovery proceedings and, on the contrary, informed about the lack of real estate burdens. Thus, it cannot be considered that the inclusion of such information in the contract was an error caused to the Antar company by the Commune. Moreover, as the Court correctly established, the County notified Antar company that Jerzy Wojtasiewicz had filed a claim for the return of part of plot No. 90 since 1991. In June 2008 in connection with the proceedings for annulment of the decision of the President of the Office of Housing and Urban Development of March 22, 2000, maintaining in force the decisions of the Lublin Province Governor dated 14 December 1998, refusing to return the real estate in question, the real estate was inspected with the participation of a representative - a professional proxy - of the Company, on the date the company was previously informed about. These inspections, which are obvious, were conducted in connection with the above-mentioned administrative proceedings regarding the return of real estate, the representative of the Company took part in these activities, that is, the facts regarding the return proceedings were perfectly known to the Company on that date. The District Court points to these issues (pages 15, 16, 30, 31, 32 of justification) and argues that these circumstances undoubtedly allowed the Company to detect the error, the more that the provisions issued by the County of Łęczna delivered to the Company contained information on the refund proceedings plot. These findings, however, have been assessed incorrectly by the Court, because the position cannot be accepted that not informing the Company about the pending property refund proceedings justified the Company's conviction

that such circumstances do not exist. This is far-reaching absurdity, because it is not good and the Court found that the Company knew perfectly well that such proceedings were taking place. Therefore, the position of the Court cannot be accepted that the Company only learned from the letter of the Mayor of the Ludwin Commune that such proceedings were taking place. In addition, what completely escapes the attention of the Court, even the fact of pending proceedings for the return of a part of the real property under lease is in no way affects the possibility to use this property in accordance with the contract. Regarding the issue regarding the possibility of buying real estate, according to the Court of Appeals - as mentioned above - it cannot be assumed that the Company remained in error. However, the fact of conducting a refund procedure - although the opinion of the Court of Appeal cannot be regarded as misleading to the Company, as well as the above, was known to the Company at least in June 2008 (date of inspection). Therefore, even with the theoretical acceptance that the Company may not have considered this information as an error as to the content of the legal act, the deadline to avoid the effects expired in June 2009. In the case there is also one more important fact, namely the fact that the declaration on the evasion of the effects of a contractual declaration, as legally-shaping should be made by the party concluding the contract. The position of the Court cannot be accepted that the transfer agreement effectively transferred that right to the plaintiff. In the opinion of the Court of Appeal, such a statement may be invoked by a party that has made such a defective statement under the influence of an error. The plaintiff could possibly invoke a material error regarding the assignment agreement, but not the contract concluded by its legal predecessor. The transfer agreement also implies that the assignor transfers all rights and obligations under the lease contract to the assignee for PLN 262,298.96 net (which is the value of the resort's lease), which may entitle him to conclude that the contract transferred only the rights and obligations associated with the lease. Irrespective of the above, it should be pointed out

that on the date of the assignment agreement is on September 23, 2009. Antar was not able to cede such a right because it did not have it anymore. The deadline for the Company to evade this declaration of will was in June 2009 at the latest. In connection with the above, it is justified to consider allegations of violation of substantive law art. 84 § 1 k.c., art.88 §1 and 2 k.c., § 12 of the lease contract, art. 509 k.c. In this connection, allegations of violation of procedural law that point to an incorrect assessment of properly collected evidence, in particular the content of the lease contract, assignment agreement, documents indicating the Company's knowledge of pending refund proceedings, are also accurate, which also resulted in unjustified adoption of the deadline for repeal from the effects of the submitted statement. There is no need to refer to the fact that these allegations are well founded to the objections regarding the assessment of the expert's opinion and the value of inputs. Having regard to the above and based on art. 386 § 1 k.p.c. and art.98 §1 and 3 k.p.c. in conjunction with § 2 point 7 of the Regulation of the Minister of Justice of September 28, 2002 on fees for attorney activities (Journal of Laws of 2013, item 461, as amended) and § 2 point 7 in conjunction with 10 (1) point 2 of the Regulation of the Minister of Justice of 22 October, 2015 on fees for lawyer activities (Journal of Laws, item 1800), **the Appellate Court ruled as in the operative part of the judgment.**

# ORIGINAL

**Sygn. akt I ACa 537/16**



## WYROK

## W IMIENIU RZECZYPOSPOLITEJ POLSKIEJ

Dnia 24 stycznia 2017 r.

Sąd Apelacyjny w Lublinie, I Wydział Cywilny

w składzie:

| | |
|---|---|
| Przewodniczący - Sędzia | SA Danuta Mietlicka (spr.) |
| Sędzia: | SA Elżbieta Patrykiejew |
| Sędzia: | SA Jerzy Nawrocki |
| Protokolant | sekr. sądowy Maciej Mazuryk |

po rozpoznaniu w dniu 24 stycznia 2017 r. w Lublinie na rozprawie

sprawy z powództwa  Solo Investment Spółki z ograniczoną odpowiedzialnością

z siedzibą w Rozpłuciu Pierwszym

przeciwko Gminie Ludwin

o zapłatę

na skutek apelacji pozwanego  od wyroku Sądu Okręgowego w Lublinie

z dnia 29 grudnia 2015 r. sygn. akt I C  28/12

  I. zmienia częściowo zaskarżony wyrok w punkcie I i III w ten sposób,
    że powództwo oddala (pkt I) i zasądza od powoda Solo Investment Spółki
    z ograniczoną odpowiedzialnością z siedzibą w Rozpłuciu Pierwszym na rzecz
    pozwanej Gminy Ludwin kwotę 7217 (siedem tysięcy dwieście siedemnaście)
    złotych tytułem kosztów postępowania (pkt III);

  II. zasądza od powoda Solo Investment Spółki z ograniczoną odpowiedzialnością
    z siedzibą w Rozpłuciu Pierwszym na rzecz pozwanej Gminy Ludwin kwotę
    20800 (dwadzieścia tysięcy osiemset) złotych tytułem kosztów postępowania
    apelacyjnego.

Za zgodność z oryginałem

sekretarz sądowy

mgr inż. Magdalena Szymaniak

**Sygn. akt I ACa 537/16**

## UZASADNIENIE

**Wyrokiem wydanym w dniu 29 grudnia 2015r. Sąd Okręgowy w Lublinie:**

1.zasądził od pozwanej Gminy Ludwin na rzecz Solo Investment Spółki z ograniczoną odpowiedzialnością z siedzibą w Rozpłuciu Pierwszym kwotę 11.239.951,09 zł złotych z ustawowymi odsetkami od dnia 3 grudnia 2011 roku do dnia zapłaty;

2.w pozostałej części powództwo oddalił;

3.zasądził od pozwanej Gminy Ludwin na rzecz Solo Investment Spółki z ograniczoną odpowiedzialnością z siedzibą w Rozpłuciu Pierwszym kwotę 21.652,12 zł złotych tytułem częściowego zwrotu kosztów procesu;

4.nakazał zwrócić pozwanej Gminie Ludwin z kasy Sądu Okręgowego w Lublinie kwotę 1.537,86 złotych tytułem nierozchodowanej zaliczki;

5.w pozostałej części nieuiszczone koszty sądowe przejął na rachunek Skarbu Państwa.

Sąd oparł swoje rozstrzygnięcie na następujących ustaleniach i wnioskach:

Pozwem z dnia 13 stycznia 2012 r. powód Solo Investment Spółka z ograniczoną odpowiedzialnością z siedzibą w Rozpłuciu Pierwszym wniósł o zasądzenie od pozwanej Gminy Ludwin kwoty 13.889.256,46 zł wraz z ustawowymi odsetkami od dnia 17 listopada 2011 r. do dnia zapłaty tytułem zwrotu wartości nakładów poniesionych przez powoda i jego poprzednika prawnego na nieruchomość stanowiącą własność pozwanej Gminy, w wykonaniu nieważnej „Umowy Dzierżawy Ośrodka Wypoczynkowego JAGODA nad Jeziorem Piaseczno" z dnia 15 lutego 2007 r. zawartej pod wpływem błędu istotnego, podstępnie wywołanego przez przedstawiciela Gminy Ludwin i dotyczącego treści czynności prawnej, oraz o zasądzenie od pozwanej na swoją rzecz kosztów procesu, w tym kosztów zastępstwa

1

procesowego. Pozwana powództwa nie uznała wnosząc o jego oddalenie w całości, i wskazała, że powódka nie zachowała rocznego terminu na złożenie oświadczenia woli o uchyleniu się od skutków oświadczenia złożonego pod wpływem błędu. Sąd ustalił , że w dniu 15 lutego 2007 r. pomiędzy „Antar LTD" spółką z ograniczoną odpowiedzialnością z siedzibą w Lublinie, reprezentowaną przez Andrzeja Pawlaka- prezesa zarządu spółki, a Gminą Ludwin reprezentowaną przez Wójta- Zygmunta Ogórka, zawarta została umowa dzierżawy, mocą której Gmina Ludwin wydzierżawiła spółce Antar Ltd nieruchomość złożoną z działek oznaczonych w ewidencji gruntów wsi Rozpłucie Pierwsze nr 90 i 94/2 o łącznej powierzchni 9,19 ha zabudowaną pensjonatem na 50 miejsc noclegowych, barem szybkiej obsługi i budynkiem gospodarczym oraz obejmującą pole namiotowe z wyłączeniem pasa gruntu o szerokości 2mb, licząc od siatki ogrodzeniowej od strony północnej, z przeznaczeniem na ciąg pieszy. Umowa została zawarta na okres od 1 marca 2007 r. do 31 grudnia 2032 r. Dzierżawca zobowiązał się wykorzystywać przedmiot dzierżawy na prowadzenie działalności gospodarczej. Zgodnie z jego oświadczeniem, celem zawarcia umowy było przystosowanie nieruchomości na potrzeby nowoczesnego Ośrodka Wypoczynkowego o wysokim standardzie, gdzie osoby wypoczywające będą mogły mieć udostępnione kompleksowe usługi w zakresie rekreacji fizycznej i psychicznej, zgodnie z koncepcją programowo-przestrzenną ośrodka rekreacji letniej nad Jeziorem Piaseczno, stanowiącej załącznik nr 3 do umowy (§1 umowy). W § 2 umowy wydzierżawiająca Gmina oświadczyła, że nieruchomość jest wolna od obciążeń i praw rzeczowych oraz zobowiązań osób trzecich oraz, że nie wie o żadnych okolicznościach wykluczających wykorzystanie nieruchomości na prowadzenie Ośrodka Wypoczynkowego. W umowie dopuszczono możliwość cesji praw i obowiązków dzierżawcy wynikających z umowy na rzecz podmiotu powiązanego z dzierżawcą (§5 pkt 3 umowy). Dzierżawca zobowiązał się do płacenia czynszu dzierżawnego

2

w wysokości 50.000 zł brutto za 12-miesięczny okres rozliczeniowy, który miał być modyfikowany corocznie do dnia 31 marca każdego roku, na podstawie stopnia inflacji przyjętego w ustawie budżetowej na dany rok (§7). W § 9 umowy dzierżawca zobowiązał się do ponoszenia nakładów na nieruchomość, a wydzierżawiający wyraził zgodę, by udokumentowane przez dzierżawcę nakłady własne na nieruchomość były potrącane z czynszu dzierżawnego. W przypadku przekroczenia przez kwotę nakładów kwoty czynszu w danym roku, różnica miała zostać uwzględniona w latach następnych. Strony zdefiniowały nakłady jako nakłady inwestycje w toku przystosowywania nieruchomości do użytkowania jako nowoczesnego Ośrodka Wypoczynkowego, w toku użytkowania nieruchomości i eksploatacji obiektu oraz koszty wymiany, przebudowy i rozbiórki zużytej infrastruktury, wyburzania i budowy nowych budynków, budowli i innych obiektów budowlanych. Wysokość nakładów podlegających zaliczeniu na rzecz czynszu dzierżawnego miała następować każdorazowo przed ich poniesieniem na podstawie kosztorysu inwestorskiego. W § 12 umowy strony ustaliły, że dzierżawcy przysługuje prawo nabycia przedmiotu dzierżawy w drodze bezprzetargowej na zasadach określonych w odrębnych przepisach (w przypadku zabudowy na podstawie zezwolenia na budowę). W dniu 28 lutego 2007 r. na podstawie protokołu zdawczo-odbiorczego wydzierżawiający przekazał dzierżawcy nieruchomość określoną w umowie. Na podstawie umowy zawartej 23 września 2009 r. Antar LTD spółka z ograniczoną odpowiedzialnością z siedzibą w Lublinie przeniosła na rzecz Solo Investment spółki z ograniczoną odpowiedzialnością z siedzibą w Warszawie prawa i obowiązki przysługujące spółce Antar LTD, wynikające z umowy dzierżawy Ośrodka Wypoczynkowego Jagoda nad Jeziorem Piaseczno z dnia 15 lutego 2007 r. zwartej pomiędzy Gminą Ludwin a Antar LTD sp. z o.o. Wójt Gminy Ludwin udzielił zgody na w/w cesję pod warunkiem przeniesienia siedziby spółki Solo Investment na teren Gminy Ludwin. Spółka obecnie ma siedzibę w Rozpłuciu

3

Pierwszym, na terenie Gminy Ludwin. Po przekazaniu nieruchomości spółka rozpoczęła inwestycje. Po zakończeniu poszczególnych etapów prac na terenie ośrodka dzierżawca przedstawiał pozwanej Gminie kosztorysy powykonawcze, które były weryfikowane przez osobę posiadającą stosowne uprawnienia. Pozwany zatwierdził nakłady poniesione w okresie od 1 marca 2007 r. do 1 marca 2011 r. na łączną kwotę 13.889.256,46 zł. Z kwot tych dokonano potrąceń czynszu za lata 2007- 2011 r. na łączną kwotę 287.354,63 zł. Łączna wartość robót wykonanych na nieruchomość, na której prowadzony jest ośrodek wypoczynkowy nad Jeziorem Piaseczno wyniosła 11.481.329,10 zł brutto (9.138.171,62 zł netto). Pismem z dnia 12 sierpnia 2011 r. powódka wezwała pozwaną Gminę do zawarcia umowy w trybie sprzedaży bezprzetargowej nieruchomości obejmującej działki nr 90 i 94/2, dla których Sąd Rejonowy Lublin-Wschód z siedzibą w Świdniku prowadzi księgi wieczyste o nr (odpowiednio) LU1I/00135980/6 oraz LU1I/00141599/3, powołując się na § 12 umowy za cenę 14.950.000,00 zł pomniejszoną o wartość nakładów poniesionych od 2007 r. przez dzierżawców, a więc kwotę 13.889.256,46 zł. Jako termin zawarcia umowy powódka wskazała dzień 5 września 2011 r. Wniosła również o przekazanie jej pełnej i udokumentowanej informacji na temat aktualnego stanu prawnego przedmiotowej nieruchomości. W odpowiedzi Wójt pozwanej Gminy podał, że stosownie do przepisów ustawy o gospodarce nieruchomościami z dnia 21 sierpnia 1997 r. nieruchomości stanowiące własność gminy mogą być sprzedawane w drodze bezprzetargowej jedynie w przypadkach określonych w ustawie, gdy właściciel podejmie decyzję o sprzedaży, czego Gmina Ludwin nie planuje. Powódka ponowiła wezwanie do przedstawienia informacji w przedmiocie stanu prawnego nieruchomości oraz wezwała Gminę Ludwin do aktualizacji stanu prawnego działki nr 94/2, z uwagi na wpisanie w księdze wieczystej jako właściciela WPT „Lublinianki" w Lublinie, nie zaś Gminy Ludwin. Wójt Gminy Lublin, w piśmie z dnia

4

22 września 2011 r. podał, że Gmina jest właścicielem całej nieruchomości, zaś oświadczenia zawarte w umowie, a dotyczące stanu prawnego nieruchomości zgodne były ze stanem faktycznym i prawnym. Nadto podał, że od 1991 r. toczy się postępowanie administracyjne o zwrot nieruchomości stanowiącej część działki nr 90, wszczęte z wniosku byłego właściciela. W piśmie z dnia 12 października 2011 r. Solo Investment sp. z o.o. wezwała Gminę Ludwin do rozwiązania umowy dzierżawy na zasadzie porozumienia stron w ciągu 14 dni od doręczenia wezwania i do zwrotu wartości nakładów poczynionych przez dzierżawcę na nieruchomość, nie zaliczonych uprzednio na poczet czynszu, pomniejszoną o łączną wysokość należnego pozwanej czynszu, a więc ostatecznie kwoty 13.592.363,00 zł. Uzasadniła powyższe działaniami pozwanej, w szczególności odmową sprzedaży dzierżawionej nieruchomości, które doprowadziły do przekreślenia podstaw prawnych, gospodarczej celowości i zasadności kontynuacji umowy dzierżawy. Gmina Ludwin nie wyraziła zgody na rozwiązanie umowy za porozumieniem stron. W piśmie przedstawionym pozwanej Gminie dnia 18 listopada 2011 r. powódka, jako następca prawny Antar LTD spółki z ograniczoną odpowiedzialnością w Lublinie i dzierżawca nieruchomości położonej w miejscowości Rozpłucie Pierwsze, obejmującej działki o nr 90 i 94/2 złożyła oświadczenie o uchyleniu się od skutków prawnych oświadczenia woli o zawarciu umowy dzierżawy Ośrodka Wypoczynkowego „JAGODA" nad Jeziorem Piaseczno z dnia 15 lutego 2007 r., złożonego pod wpływem istotnego błędu, podstępnie wywołanego przez Gminę Ludwin i dotyczącego treści czynności prawnej, a polegającego na: nieprawdziwym zapewnieniu w treści § 2 w/w umowy: „wydzierżawiający oświadcza, iż wskazana w § 1 nieruchomość jest wolna od obciążeń i praw rzeczowych oraz zobowiązań osób trzecich oraz nie wie o żądnych okolicznościach wykluczających wykorzystywanie nieruchomości na prowadzenie ośrodka wypoczynkowego", nieprawdziwym zapewnieniu w treści § 12 w/w umowy „Dzierżawcy

5

przysługuje prawo nabycia przedmiotu dzierżawy w drodze bezprzetargowej na zasadach określonych w odrębnych przepisach (w przypadkach zabudowy na podstawie zezwolenia na budowę)", podczas gdy Gmina nie przewiduje sprzedaży nieruchomości, zaś co do jej części toczy się postępowanie rewindykacyjne, co wyklucza możliwość faktyczną i prawną nabycia tej nieruchomości i wezwała do zwrotu na swoją rzecz wartości nakładów w kwocie 13.889.256,46 zł w terminie 14 dni od otrzymania wezwania. Następnie, w dniu 27 lutego 2012 r., wezwano pozwaną Gminę do stawienia się celem przekazania nieruchomości. Gmina Ludwin w odpowiedzi, datowanej na 1 marca 2012 r. podała, że podtrzymuje stanowisko wyrażone w piśmie z dnia 1 grudnia 2011 r. Wobec niestawiennictwa przedstawicieli Gminy we wskazanym dniu, powódka sporządziła protokół stawiennictwa jednej i niestawiennictwa drugiej strony w celu przekazania nieruchomości, podpisany przez trzech świadków. Bez obecności pozwanej, w obecności wskazanych świadków, dokonała protokolarnego przekazania nieruchomości. Protokoły przedłożyła Gminie Ludwin. Z § 2 lit. g protokołu przekazania nieruchomości wynika, że spółka uznaje czynność przekazania za dokonaną. Pozwana Gmina jednak czynności nie uznała wskazując, że umowa dzierżawy z dnia 15 lutego 2007 r. nadal obowiązuje. Od 1991 r., w odniesieniu do części działki nr 90, dawniej oznaczanej w ewidencji gruntów i budynków jako działka nr 285, toczyło się postępowanie administracyjne i sądowo-administracyjne dotyczące zwrotu nieruchomości na rzecz poprzednich właścicieli wywłaszczonych w latach siedemdziesiątych, obecnie w osobie ich spadkobiercy- Jerzego Wojtasiewicza. W pismach z dnia 2 kwietnia 2008 r. Starostwo Powiatowe zawiadamiało o wszczęciu na wniosek Antar LTD sp. z o.o., postępowań administracyjnych dotyczących zagospodarowania, uzbrojenia terenu i zabudowy działek nr 90 i 94/2 w Rozpłuciu Pierwszym, na terenie Ośrodka Wypoczynkowego „JAGODA". Pisma te przekazywane były również do wiadomości Jerzego Wojtasiewicza,

co zostało uwidocznione w ich treści . W toku w/w postępowań Jerzy Wojtasiewicz wnosił o ich zawieszenie do czasu uprawomocnienia się decyzji Ministra Infrastruktury wydanej w sprawie BO1d/782-R-124/07 dotyczącej zwrotu wywłaszczonej nieruchomości – dawnej działki nr 285, obecnie części działki nr 90. Wnioski te nie były doręczane dzierżawcy. Postanowieniami z dnia 30 kwietnia 2008 r. (sprawy: BAO.IV.7351/120/08-4, BAO.IV.7351/119/08-4, BAO.IV.7351/118/08-4, BAO.IV.7351/117/08-4, BAO.IV.7351/104/08-4, BAO.IV.7351/105/08-4, BAO.IV.7351/98/08-6, BAO.IV.7351/98/08-5), Starosta Powiatowy w Łęcznej odmówił zawieszenia postępowań, wskazując jednocześnie, że Jerzy Wojtasiewicz nie jest ich stroną. Postanowienia zostały doręczone również spółce Antar Ltd w dniach 2 i 5 maja 2008r. i odebrane przez Wiesława Tokarza. Jerzy Wojtasiewicz, pismem złożonym dnia 1 kwietnia 2008 r. zgłosił do Prokuratury Rejonowej w Lublinie wniosek o wszczęcie postępowania karnego w związku z inwestycją prowadzoną przez Antar LTD sp. z o.o. w Lublinie bez wymaganego pozwolenia na budowę na działce nr 90 położonej w miejscowości Rozpłucie-Garbów. W toku postępowania stwierdzono, że sanitariaty postawione bez wymaganego zezwolenia zostały rozebrane. Postanowieniem z dnia 28 kwietnia 2008 r. Komenda Powiatowa Policji w Łęcznej odmówiła wszczęcia dochodzenia wobec znikomej społecznej szkodliwości czynu. Jerzy Wojtasiewicz odwiedził również teren Ośrodka w latach 2007-2008 r., gdy trwały prace budowlane, informując pracowników, że prawo do części nieruchomości jest sporne. Nie rozmawiał jednak z prezesem ani właścicielem spółki Antar LTD. Pracownicy Ośrodka informowali Wiesława Tokarza o tym, że ktoś rości sobie prawa do nieruchomości i że w związku z tym toczy się postępowanie. Wiesław Tokarz nie przekazywał tego typu informacji organom spółki uznając, że nie leży to w zakresie jego kompetencji. W dniu 13 czerwca 2008 r., w toku postępowania w sprawie o stwierdzenie nieważności decyzji Prezesa Urzędu Mieszkalnictwa i Rozwoju Miast z dnia

22 marca 2000 r. (PO.5.1-O-85-99), utrzymującej w mocy decyzję Wojewody Lubelskiego z dnia 14 grudnia 1998 r. (GKN.GW.7221-2/76/98) odmawiającą zwrotu nieruchomości położonej w m. Rozpłucie-Garbów, oznaczonej jako działka nr 285 o pow. 3,21 ha, stanowiącej część obecnej działki nr 90, przeprowadzono oględziny nieruchomości, w których brał udział, oznaczony w protokole, jako dzierżawca- Wiesław Tokarz, zaś oznaczony jako pełnomocnik dzierżawcy radca prawny Marek Pawłowski. W czynnościach uczestniczył również Jerzy Wojtasiewicz. Spółka Antar LTD była wzywana do udostępnienia działki na termin oględzin przez Ministerstwo Infrastruktury. Wiesław Tokarz dysponował pełnomocnictwami udzielonymi dnia 10 kwietnia 2008 r. i 12 czerwca 2008 r. przez prezesa spółki Antar LTD do jej reprezentowania przed organami administracji publicznej, we wszelkich sprawach związanych z postępowaniem dotyczącym inwestycji na terenie Antar Resort Piaseczno nad Jeziorem Piaseczno. Marek Pawłowski dysponował pełnomocnictwem z dnia 12 czerwca 2008 r. do reprezentowania Antar LTD spółki z ograniczoną odpowiedzialnością z siedzibą w Lublinie przed organami administracji publicznej, sądami powszechnymi i administracyjnymi oraz innymi podmiotami w sprawach związanych z postępowaniem dotyczącym inwestycji na terenie Antar Resort Piaseczno nad Jeziorem Piaseczno. Pełnomocnictwa udzielił przez zarządu Spółki. Wiesław Tokarz nie jest pracownikiem powoda, świadczył usługi na jego rzecz (i jego poprzednika prawnego) w toku procesu inwestycyjnego, w szczególności w zakresie uzyskiwania pozwoleń na budowę. Powyższe pełnomocnictwa nie upoważniały do reprezentowania Antar LTD sp. z o.o. w toku postępowań o zwrot nieruchomości. Spółka nie była stroną tego postępowania. W czasie oględzin Wiesław Tokarz złożył swoje pełnomocnictwo przeprowadzającym je pracownikom Ministerstwa Infrastruktury i nie było ono kwestionowane. Po zakończeniu oględzin, Wiesław Tokarz zgłosił się do zastępcy wójta Gminy Ludwin celem uzyskania informacji o wynikach oględzin, ten zaś

8

poinformował go, że były one korzystne dla Gminy. Wiesław Tokarz przekazał tę informację Andrzejowi Pawlakowi, prezesowi zarządu spółki Antar LTD. Prezes zarządu spółki uznał, że nie istnieje problem związany z tym postępowaniem. Nieruchomość, na której posadowiono Ośrodek Wypoczynkowy „JAGODA" nad Jeziorem Piaseczno, był przez wiele lat przedmiotem umów dzierżawy, jednak bezpośrednio przed zawarciem umowy dzierżawy z powodem, ośrodek prowadzony był przez Gminę Ludwin, z uwagi na brak chętnych podmiotów zewnętrznych. W ogłoszeniach przetargowych zamieszczanych przez Gminę Ludwin zawarta była informacja o braku obciążeń nieruchomości. W czasie kilkumiesięcznych rokowań dotyczących zawarcia umowy, przedstawiciele Gminy Ludwin nie informowali reprezentantów Antar LTD sp. z o.o. o toczącym się postępowaniu wywłaszczeniowym. Zarówno Wójt Gminy, jak i jego zastępca, w związku ze stanowiskiem spółki Antar LTD, przewidywali możliwość zbycia w przyszłości nieruchomości, po uprzednim poczynieniu inwestycji na infrastrukturę ośrodka wypoczynkowego. Przedstawiciele Gminy obawiali się bowiem, że w razie niezwłocznej sprzedaży całej nieruchomości, spółka dokona jej podziału i zbycia na rzecz kolejnych podmiotów, podczas gdy Gmina chciała zachować dotychczasowy charakter nieruchomości. Każda ze stron reprezentowana była przez podmioty świadczące pomoc prawną. Sąd wskazał, że dokumenty przedstawiane przez strony nie były kwestionowane, wyjąwszy protokół oględzin nieruchomości z dnia 13 czerwca 2008 r. w zakresie w jakim określono Wiesława Tokarza jako dzierżawcę, zaś Marka Pawłowskiego jako przedstawiciela dzierżawcy. Niemniej jednak, pomimo zastrzeżeń pełnomocników powoda, co do braku wpływu oznaczonych osób na sposób ich określenia w protokole, wskazać należy, że Wiesław Tokarz jednoznacznie zeznał, że uważa podpisanie się jako dzierżawca za swój błąd, co jednoznacznie świadczy o tym, że wiedział jak został w protokole określony, zaś wszelkie twierdzenia o dopisaniu jego osoby *post factum* nie znajdują potwierdzenia

9

w stanie faktycznym. Sąd dał dokumentom tym dał wiarę. Sąd omówił też i ocenił zeznania świadków mając przy tym na uwadze to, z którą ze stron procesu dany świadek związany był na etapie przygotowywania, realizowania umowy, a także obecnie, albowiem w dużej mierze treść zeznań powiązana była z tą okolicznością. Sąd wskazał, że świadek Andrzej Pawlak, działając jako prezes spółki Antar LTD (podobnie jak Jarosław Tarnasiewicz-Heldut) posiadał dokładne informację dotyczące procesu negocjacyjnego i zawierania umowy dzierżawy, natomiast w zakresie samej realizacji inwestycji, w szczególności postępowań administracyjnych, jego wiedza w dużej mierze opierała się o informacje uzyskane od Wiesława Tokarza, który w ramach prowadzonej przez siebie działalności gospodarczej zajmował się bezpośrednio kwestiami pozwoleń na budowę i wiążącymi się z nimi procesami administracyjnym, czynnościami na terenie samej nieruchomość, a także kontaktami z Gminą Ludwin (o charakterze mniej sformalizowanym). Z ramienia Gminy, z uwagi na zakres obowiązków i bezpośrednie uczestnictwo, a więc i wiedzę w tym przedmiocie, szczegółowe zeznania złożyła Krystyna Florek, natomiast proces rokowań pomiędzy Gminą a spółką Antar LTD znany był również Sławomirowi Czubackiemu, zastępcy wójta w czasie negocjacji, obecnie już tej funkcji niepełniącego. Sąd dał wiarę zeznaniom Andrzeja Pawlaka, Wiesława Tokarza, Jarosława Tarnasiewcza-Helduta, Sławomira Czubackiego, w zakresie w jakim podawali oni, że w toku rokowań Gmina przedstawiała reprezentującym spółkę osobom możliwość sprzedaży nieruchomości w przyszłości, zaś podnoszone w zeznaniach obawy władz Gminy dotyczące parcelacji i sprzedaży działek, niezależnie od ustaleń miejscowego planu zagospodarowania przestrzennego, pozostają w logicznym związku z treścią umowy i inwestycjami następnie podjętymi przez powoda i jego poprzednika. Zdaniem Sądu , w przypadku podmiotów prowadzących działalność deweloperską na znaczną skalę, w oparciu o zasady doświadczenia życiowego, trudno przyjąć by podmioty te podjęły istotne

10

inwestycje, bez gwarancji udzielanych przez kontrahenta. Z tych też względów nie można było uznać za wiarygodne zeznań Krystyny Florek i Zygmunta Ogórka wskazujących na niezmienne deklaracje Gminy o tym, że umowa dotyczy dzierżawy, nie przewidując możliwości sprzedaży. Natomiast kwestie braku oficjalnych informacji o toczącym się postępowaniu rewindykacyjnym w odniesieniu do części nieruchomości w istocie były pomiędzy stronami bezsporne. Zygmunt Ogórek zeznał, że nie informował kontrahenta na żadnym etapie negocjacji o toczącym się postępowaniu w przedmiocie zwrotu nieruchomości, nie miał również wiedzy, czy którykolwiek z pracowników takich informacji udzielał, w każdym bądź razie należało uznać, że poleceń takich nie wydawał. Natomiast z zeznań Sławomira Czubackiego wynika, że Gmina bagatelizowała opisywane postępowanie, wskazując na oczywistą bezzasadność roszczeń J. Wojtasiewicza, co zasadniczo znajduje wyraz w treści zeznań Zygmunta Ogórka. Zeznania świadka Wiesława Tokarza, w zakresie w jakim przedstawiał on swoją wiedzę o postępowaniu zwrotowym Sąd ocenił jako niekonkretne. Natomiast zeznania Krystyny Florek, w zakresie w jakim stwierdzała, że jednoznacznie informowała Wiesława Tokarza o toczącym się postępowaniu zwrotowym i o tym, że wyłącza ono możliwość zbycia nieruchomości, przy uwzględnieniu całości materiału dowodowego nie mogą znaleźć potwierdzenia. Częściowo tylko na obdarzenie wiarą zasługują natomiast w ocenie Sądu zeznania złożone w charakterze strony przez Wójta Gminy Ludwin – Andrzeja Chabrosa. Przede wszystkim nie są przekonujące te fragmenty jego zeznań, które opierają się na informacji uzyskanej od osób trzecich, bądź te, które sprowadzają się do prawnej interpretacji zapisów umownych. Świadek przyznał jednakże, że zlecał inspektorowi nadzoru dokonanie sprawdzenia przedstawianych przez powódkę kosztorysów pod względem rzeczowym i finansowym, co w konsekwencji doprowadziło do zatwierdzenia tych kosztorysów.

11

Kwestionowane były jedynie niektóre pozycje tych kosztorysów. Zaznaczył Sąd, że opinia biegłego z zakresu budownictwa opierała się na pracach, które nie były przez pozwaną kwestionowane, co uwiarygadnia opinię złożoną przez biegłego. Z uwagi na konieczność posiadania wiadomości specjalnych w zakresie poszanowania wartości nakładów poczynionych przez stronę powodową na nieruchomość pozwanej, Sąd dopuścił dowód z opinii biegłego z zakresu budownictwa. Z uwagi na umotywowane zastrzeżenia strony pozwanej Sąd dopuścił następczo również dowód z opinii uzupełniającej. Biegły wykazał wartość poszczególnych prac i współczynniki, które stanowiły podstawę do ustalenia tej wielkości. W opiniach uzupełniających wyczerpująco odnosił się również do wątpliwości zgłaszane przez stronę pozwaną, uwzględniając także częściowo podnoszone zarzuty. Sąd miał jednakże na uwadze, że biegły błędnie zaliczył jako wartość nakładów czynsz dzierżawny, którego wysokość między stronami była bezsporna. Czynsz dzierżawny nie jest nakładem i nie może mieć wpływu na jego wysokość . Wobec przejrzystego przedstawienia przez biegłego metod, o które wyliczył wartości nakładów, bez wliczania w nie czynszu,  Sąd w oparciu o posiadane dane, doprecyzował wartość nakładów brutto na kwotę 11.239.951,09 zł. (13.380.894,15 zł x 84 % -bo 16 % zużycia). Końcowo zgłoszone przez pozwanego zarzuty  do opinii miały charakter polemiczny, czy też odnoszący się do oceny prawnej faktów, wobec czego ostatecznie bezprzedmiotowe stało się dopuszczanie dowodu z opinii innego biegłego. Nie można przyjąć, iż sąd zobowiązany jest dopuścić dowód z kolejnych biegłych w każdym przypadku, gdy złożona opinia jest niekorzystna dla strony. Potrzeba powołania innego biegłego powinna zatem wynikać z okoliczności sprawy, a nie z samego niezadowolenia strony z dotychczasowej złożonej opinii. Sąd stwierdził , że powodowa spółka domaga się zwrotu nakładów poczynionych przez nią i jej poprzednika prawnego na podstawie umowy zawartej wskutek złożenia oświadczenia woli pod wpływem błędu, od

12

którego skutków uchyliła się poprzez złożenie stosownego oświadczenia. Błąd dotyczyć miał okoliczności określonych w § 2 i 12 umowy dzierżawy, a więc zapewnienia pozwanej o braku obciążeń, praw rzeczowych i zobowiązań osób trzecich oraz o tym, że nie wie o okolicznościach wyłączających wykorzystanie nieruchomości na teren ośrodka wypoczynkowego oraz przyznania dzierżawcy prawa nabycia przedmiotu dzierżawy w drodze bezprzetargowej, na zasadach określonych w odrębnych przepisach w przypadku zabudowy na podstawie pozwolenia na budowę. Powódka podawała, że były one niezgodne z rzeczywistością, bowiem w odniesieniu do części nieruchomości toczyło się postępowanie administracyjne w przedmiocie zwrotu nieruchomości na rzecz wywłaszczonych właścicieli, o czym poprzedniczka powódki nie wiedziała. Artykuł 84 k.c. stanowi, że w razie błędu co do treści czynności prawnej można uchylić się od skutków prawnych swego oświadczenia woli. Jeżeli jednak oświadczenie woli było złożone innej osobie, uchylenie się od jego skutków prawnych dopuszczalne jest tylko wtedy, gdy błąd został wywołany przez tę osobę, chociażby bez jej winy, albo gdy wiedziała ona o błędzie lub mogła z łatwością błąd zauważyć; ograniczenie to nie dotyczy czynności prawnej nieodpłatnej (§ 1). Można powoływać się tylko na błąd uzasadniający przypuszczenie, że gdyby składający oświadczenie woli nie działał pod wpływem błędu i oceniał sprawę rozsądnie, nie złożyłby oświadczenia tej treści, a więc błąd istotny (§ 2). Błąd na który powołuje się podmiot uchylający się od skutków wadliwie złożonego oświadczenia woli musi dotyczyć czynności prawnej i być istotny, chyba, że wywołany był podstępem (art. 86 § 1 k.c.). Za podstępne wywołanie błędu uważa się świadome działanie kontrahenta mające na celu wywołanie mylnego wyobrażenia o rzeczywistości. W ocenie Sądu okoliczność ta nie miała miejsca. Z zeznań Sławomira Czubackiego wynika, że w Gminie bagatelizowano postępowanie z udziałem Jerzego Wojtasiewicza, bowiem jego żądania nie były uznawane za zasadne i mające jakiekolwiek

znaczenie. Podobny wniosek można wysnuć również z zeznań Zygmunta Ogórka, który wskazywał, że nie wie czy któryś z pracowników udzielał informacji o postępowaniu zwrotowym dotyczącym części działki nr 90, zaś on sam uczestników rokowań nie informował. Świadek Krystyna Florek podawała natomiast, że nie uważa by tego typu roszczenie stanowiło obciążenie nieruchomości, wobec czego nie widziała potrzeby zamieszczania stosownych informacji w ogłoszeniach o przetargach, zaś zapewnienie udzielone w § 2 umowy uważa za prawidłowe. Działania Gminy w tym zakresie należy więc oceniać jako pozbawione należytej dbałości czy staranności, jednak Sąd nie znalazł podstaw do uznania, że nakierowane były one na celowe wprowadzenie przedstawicieli spółki Antar LTD w błąd. Błąd co do treści czynności prawnej oznacza w istocie błąd co do okoliczności wchodzących w skład treści tejże czynności. Ustalenie treści czynności prawnej i jej składników, musi być dokonane przy uwzględnieniu postanowienia art. 56 k.c. Dlatego nie można tracić z pola widzenia okoliczności, iż konkretna, stanowiąca przedmiot oceny czynność prawna wywołuje "nie tylko skutki w niej wyrażone, lecz również te, które wynikają z ustawy, zasad współżycia społecznego i ustalonych zwyczajów". Mylne wyobrażenie, które mieści się pod pojęciem błędu obejmuje zarówno treść oświadczenia (pomyłkę) oraz inne okoliczności, jak np. fakty, do których odnosi się oświadczenie, normy prawne, mające zastosowanie do dokonywanej czynności prawnej, albo skutki prawne dokonywanej czynności prawnej. Błąd poprzednika powoda dotyczył okoliczności faktycznych związanych bezpośrednio ze statusem prawnym nieruchomości będącej przedmiotem umowy dzierżawy, w której jednocześnie przyznano dzierżawcy uprawnienie do nabycia nieruchomości, po jej uprzednim zabudowaniu. Nie ulega więc wątpliwości, że w świetle powyższych rozważań błąd dotyczył treści czynności prawnej. Drugą przesłanką jest istotny charakter błędu, a więc warunkujący dokonanie czynności prawnej. Ocena czy błąd jest istotny winna przebiegać w oparciu

14

o analizę treści całej umowy oraz pozostałych okoliczności jej zawarcia. Sąd po przeanalizowaniu zeznań świadków- Wiesława Tokarza, Sławomira Czubackiego i Andrzeja Pawlaka, ustalił, że docelowo inwestor zmierzał do nabycia nieruchomości, jednak z uwagi na obawy władz Gminy Ludwin dotyczące możliwości podziału i zbycia podzielonej nieruchomości, a więc likwidacji ośrodka wypoczynkowego, została zwarta umowa dzierżawy, z której postanowień jasno wynika, że dzierżawca winien przystosować nieruchomość na potrzeby nowoczesnego ośrodka wypoczynkowego o wysokim standardzie (§ 1 pkt 4 umowy), jednocześnie ograniczając swoje uprawnienie do zwrotu równowartości poczynionych nakładów (§ 9 i 11 umowy). W ten sposób wydzierżawiająca nieruchomość Gmina, poprzez zabezpieczenie odpowiedniego i zgodnego z założeniami dotyczącymi prowadzenia ośrodka wypoczynkowego i, zabudowania dzierżawionych działek, uzyskała gwarancję zachowania dotychczasowego charakteru nieruchomości. Oczywistym jest więc, że istotnym warunkiem zawarcia umowy była przyszła sprzedaż nieruchomości, która jednak w warunkach toczącego się postępowania o jej zwrot, stosownie do treści art. 34 ust. 3 ustawy z dnia 21 sierpnia 1997 r. o gospodarce nieruchomościami (Dz. U.z 2015 r. poz. 782, ze zm.) nie była możliwa. Należy więc uznać, że spółka posiadając informację o toczącym się postępowaniu, które wyklucza sprzedaż nieruchomości, nie zawarłaby umowy dzierżawy o podobnej treści. Tym samym w ocenie Sądu błąd był istotny i dotyczył treści czynności prawnej. Sąd analizował też przesłanki z art. 84 § 1 zdanie drugie, a mianowicie, czy druga strona błąd wywołała swoim choćby niezawinionym zachowaniem albo o błędzie wiedziała, lub wreszcie z łatwością błąd mogła zauważyć. Strona pozwana nie tylko nie ujawniała w toku rokowań, że w stosunku do nieruchomości toczy się postępowanie rewindykacyjne, ale również zapewniała o braku jakichkolwiek obciążeń nieruchomości, wobec czego niewątpliwym jest, że błąd został przez nią wywołany. Artykuł 88 § 1 k.c. umożliwia uchylenie się

15

od skutków prawnych oświadczenia woli, które zostało złożone innej osobie pod wpływem błędu lub groźby, poprzez oświadczenie złożone tej osobie na piśmie. Takie oświadczenie zostało złożone w piśmie przedstawionym Gminie Ludwin dnia 18 listopada 2011 r. Sąd ocenił też zagadnienie związane z brakiem tożsamości podmiotu, który składał oświadczenie woli dotknięte wadą oraz podmiotem, który złożył oświadczenie o uchyleniu się od skutków błędu. Powódka swoje uprawnienie wywodzi z umowy zawartej z uprzednim dzierżawcą. Mocą zawartej na piśmie umowy przeniesienia praw i obowiązków z umowy dzierżawy z dnia 23 września 2009 r. (k. 24 i n.), nie kwestionowanej przez stronę pozwaną, Antar LTD spółka z ograniczoną odpowiedzialnością z siedzibą w Lublinie przeniosła na powódkę prawa i obowiązki z umowy dzierżawy Ośrodka Wypoczynkowego JAGODA nad Jeziorem Piaseczno. Pozwana Gmina udzieliła na w/w umowę zgody, pod warunkiem przeniesienia siedziby spółki Solo Investment na teren Gminy Ludwin, co jak wynika z odpisu z rejestru przedsiębiorców KRS załączonego do pozwu , nastąpiło. Zgodnie zaś z art. 509 § 2 k.c. wierzyciel może bez zgody dłużnika przenieść wierzytelność na osobę trzecią (przelew), chyba że sprzeciwiałoby się to ustawie, zastrzeżeniu umownemu albo właściwości zobowiązania. Wraz z wierzytelnością przechodzą na nabywcę wszelkie związane z nią prawa, w szczególności roszczenie o zaległe odsetki (§ 2). Art. 519 k.c. stanowi natomiast, że osoba trzecia może wstąpić na miejsce dłużnika, który zostaje z długu zwolniony (§ 1). Przejęcie długu może nastąpić przez umowę między dłużnikiem a osobą trzecią za zgodą wierzyciela. Oświadczenie wierzyciela może być złożone którejkolwiek ze stron. Jest ono bezskuteczne, jeżeli wierzyciel nie wiedział, że osoba przejmująca dług jest niewypłacalna (§ 2 pkt 2). Umowa o przejęcie długu powinna być pod nieważnością zawarta na piśmie. To samo dotyczy zgody wierzyciela na przejęcie długu (art. 522. k.c.). Wobec zachowania wymaganej formy i uzyskania zgody Gminy Ludwin, zmiana stron umowy była prawnie skuteczna.

16

Analizował też Sąd charakter uprawnienia do złożenia oświadczenia o uchyleniu się od skutków oświadczenia woli złożonego pod wpływem błędu i stwierdził, że ma ono charakter uprawnienia prawnokształtującego, bowiem tworzy po stronie podmiotu uprawnionego kompetencję do jednostronnej zmiany lub zakończenia istniejącego stosunku prawnego. Wobec powyższego powódce, co do zasady, przysługiwało uprawnienie do uchylenia się o skutków oświadczenia o zawarciu umowy dzierżawy. Niemniej jednak pozwana podniosła, że z uwagi na upływ czasu od momentu, w którym powódka (jej poprzedniczka prawna) błąd wykryła uprawnienie to wygasło, bowiem stosownie do art. 88 § 2 k.c. uprawnienie do uchylenia się wygasa w razie błędu – z upływem roku od jego wykrycia. Nie budzi zdaniem Sądu wątpliwości, że Gmina nie udzieliła, w oficjalnej formie informacji o postępowaniu mającym na celu zwrot nieruchomości poprzednim właścicielom. Niemniej jednak do powódki, już w 2008 r., docierały informacje, że część wydzierżawionej nieruchomości objęta jest takim postępowaniem. Spółka bowiem, jak wynika z załączonych fotokopii dokumentów znajdujących się w aktach postępowania prowadzonego przez Ministra Infrastruktury (BO1d/782-R-124/07), była powiadamiana o konieczności udostępnienia działki nr 90 w celu przeprowadzenia oględzin dnia 13 czerwca 2008 r., zaś w treści zawiadomienia wskazano, że toczy się postępowanie w sprawie twierdzenia nieważności decyzji Prezesa Urzędu Mieszkalnictwa i Rozwoju Miast z dnia 22 marca 2000 r., znak PO.5.1-O-85/99, utrzymującej w mocy decyzję Wojewody Lubelskiego z dnia 14 grudnia 1998 r. (znak GKN.GW.7221-2/76/98), odmawiającą zwrotu nieruchomości położonej w miejscowości Rozpłucie-Garbów, oznaczonej jako działka nr 285, o pow. 3,21 ha. Dalej wskazano, że jest to obecnie część działki nr 90, o pow. 9,14 ha, zaś organ prowadzący postępowanie został zobowiązany do ustalenia kwestii realizacji celu wywłaszczenia dawnej działki nr 285. Wezwanie o tej treści zostało odebrane w siedzibie spółki Antar LTD przez jej pracownika w dniu

27 maja 2008 r. Do treści tych dokumentów pełnomocnik powoda nie odniósł się, nie kwestionował ich, zaś analiza całego materiału zebranego w sprawie wskazuje, że pismo odebrane zostało przez tą samą osobę, która odbierała korespondencję przesyłaną ze Starostwa Łęczyńskiego w innych terminach, wobec czego nie ma przesłanek by uznać, że była to osoba nieuprawniona, czy przypadkowa. Wskazał też Sąd, że korespondencja pochodziła od organu bezpośrednio prowadzącego postępowanie w sprawie, wobec czego trudno przyjąć by nie zawierała ona pewnych czy wiarygodnych informacji. Co więcej, nawet gdyby nie byłyby one wystarczające dla spółki, to winny dać asumpt do działań zmierzających do wyjaśnienia tego zagadnienia. Nieakceptowalne jest bowiem stanowisko, zgodnie z którym profesjonalista ignoruje istotne z punktu jego działalności gospodarczej okoliczności, by po jakimś czasie powoływać się na swoją niewiedzę w tym zakresie. A więc na adres spółki Antar LTD doręczano korespondencję, która zawierała informacje pozwalające na wykrycie błędu. Także postanowienia wydawane w toku postępowań prowadzonych przez Starostę Łęczyńskiego, w swojej treści zawierały informację o postępowaniu w sprawie zwrotu wywłaszczonej nieruchomości oznaczonej jako dawna działka o nr 285, obecnie zaś część działki nr 90. Osobną kwestią, silnie akcentowaną przez pozwaną był udział w oględzinach nieruchomości w czerwcu 2008 r. Wiesława Tokarza oraz Marka Pawłowskiego, którzy przedstawili prowadzącym je organom pełnomocnictwa pochodzące od zarządu spółki Antar LTD. Zarówno Wiesław Tokarz, jak i Andrzej Pawlak zeznawali, że pełnomocnictwo, które zostało złożone w toku oględzin miało charakter pełnomocnictwa jednorazowego, wydawanego stosownie do konkretnych potrzeb. Skoro więc spółka Antar LTD poinformowana została o oględzinach, zaś Wiesław Tokarz dysponował pełnomocnictwem wydanym dnia poprzedzającego czynność, które przedstawił przedstawicielom Ministerstwa Infrastruktury

18

prowadzącym oględziny, to oznacza w świetle zasad logiki, że zostało ono mu udzielone w związku z tą konkretną czynnością, na okoliczność której ją przedłożył. Tym samym należy uznać, że występował on w imieniu dzierżawcy w czasie tej czynności. Dowodem prawdziwości tego założenia może być również fakt, że zasięgał informacji u pracowników Urzędu Gminy w zakresie wyników oględzin i informacje takie, wprawdzie o dość ogólnym charakterze, uzyskał i przekazał je prezesowi spółki Antar. Szereg przestawionych okoliczności prowadzi do wniosku, że poprzedniczka prawna powódki błąd mogła wykryć już w 2008 r., co prowadziłoby do wniosku, że czynność została konwalidowana, z uwagi na bezskuteczny upływ czasu do uchylenia się od skutków oświadczenia woli złożonego pod wpływem błędu. Niemniej jednak Sąd wskazał, że poprzedniczka prawna powódki działała w oparciu o zapewnienia swojego kontrahenta, jednostki samorządu terytorialnego, które negowały istnienie jakichkolwiek wątpliwości co do stanu prawnego, a w konsekwencji możliwości sprzedaży nieruchomości położonej nad Jeziorem Piaseczno. Dlatego też postępowanie dzierżawcy nie może być oceniane w oderwaniu od tych okoliczności. Skoro bezspornym jest, że w treści ogłoszeń o przetargu na wydzierżawienie nieruchomości nie informowano o postępowaniu w sprawie zwrotu nieruchomości, nie przedstawiano takiej informacji również w toku rokowań, a także już po zawarciu umowy, to powódka miała podstawy by pozostawać w przekonaniu, że takie okoliczności nie występują, a w konsekwencji nie traktować wiadomości zawartych w korespondencji kierowanej do spółki z Ministerstwa Infrastruktury, czy Starostwa Łęczyńskiego, jako dotyczących faktów wpływających na realizację postanowień umownych. Zarówno w doktrynie jak i orzecznictwie przyjmuje się bowiem, że błąd może dotyczyć zarówno okoliczności faktycznych jak i prawnych , zaś w zakresie tych drugich, powodowa spółka wciąż pozostawała w mylnym przekonaniu, zaś błąd w tym zakresie został wykryty dopiero

z chwilą przedstawienia przez wójta Gminy Ludwin formalnej informacji, że w istocie toczy się postępowanie w sprawie zwrotu części dzierżawionej nieruchomości , co pozwalało uznać tę okoliczność za prawie relewantną. Pismo zawierające stosowną informację datowane jest dniem 22 września 2011 r., zaś złożenie oświadczenia o uchyleniu się od skutków oświadczenia woli złożonego pod wpływem błędu nastąpiło w dniu 18 listopada 2011 r., gdy powódka przedstawiła Gminie Ludwin stosowne pismo , wobec czego wymagany termin został zachowany. W konsekwencji skutecznego uchylenia się od skutków prawnych oświadczenia woli o zawarciu umowy dzierżawy, która przewidywała czynienie nakładów na nieruchomość, powódka domaga się zwrotu ich równowartości. Skuteczne uchylenie się od skutków prawnych oświadczenia woli złożonego pod wpływem błędu czyni umowę nieważną *ex tunc.* Świadczenie spełnione w wykonaniu takiej umowy jest świadczeniem nienależnym (art. 410 § 2). Podstawą żądania jego zwrotu są przepisy o bezpodstawnym wzbogaceniu w związku z art. 410 § 1 k.c. Fakt czynienia przez powódkę i jej poprzedniczkę nakładów nie był sporny. Zasadniczo w toku procesu pozwana nie kwestionowała zakresu robót, a jedynie ich wartość, z uwagi na fakt, że nie została ona ustalona w oparciu o kosztorysy powykonawcze sporządzone na podstawie protokołów odbioru robót wykonanych. W toku procesu powódka przedstawiła jednakże dokumenty potwierdzające zatwierdzenie przez Gminę Ludwin kosztu i zakresu wykonanych robót, zaś kosztorysy powykonawcze, będące podstawą opracowania tych dokumentów (a w toku postępowania będące podstawą dla biegłego do wydania opinii) były przedkładane Gminie Ludwin, celem ich weryfikacji przez powołanego w tym celu przez pozwaną specjalistę, co zostało wykazane w toku zeznań m.in. przez Krystynę Florek i Mirosława Woźniaka. Skoro więc pomiędzy stronami niniejszego postępowania przyjmowano taki sposób weryfikacji wykonanych robót, a Gmina uważała go za prawidłowy i nie kwestionowała na etapie zgodnej współpracy ilości robót wykonanych,

20

zaś na etapie postępowania sądowego nie wskazywała na wystąpienie jakichkolwiek okoliczności sugerujących nieprawidłowość uprzednio ustalonego i przyjętego przez nią zakresu nakładów, to ocena zasadności przedstawianych przez pozwaną zarzutów i jednocześnie ocena dokumentów przedłożonych przez powódkę, jako dowodów poczynionych nakładów, prowadzić winna do wniosku, że zarzuty pozwanej zgłaszane są nie z uwagi na zastrzeżenia o charakterze faktycznym, lecz jedynie z uwagi na obraną przez pozwaną Gminę strategię procesową. Wobec ustalonego zakresu robót należało więc określić ich wartość. Jeżeli zwrot bezpodstawnego wzbogacenia ma nastąpić w pieniądzu, to w razie uwzględnienia powództwa zasądzeniu podlega zwrot aktualnego wzbogacenia, przez co należy rozumieć, zgodnie z art. 405 k.c. w zw. z art. 316 k.p.c. i stosowanym w drodze analogii art. 363 § 2 k.c., zwrot wzbogacenia istniejącego w chwili wyrokowania. Niezbędnym było ustalenie wartości nakładów, z uwzględnieniem stopnia ich zużycia, tak by możliwą do wskazania była aktualna wartość wzbogacenia pozwanej, co wymagało wiadomości specjalnych. Biegły z zakresu budownictwa w swojej opinii, uwzględniając jedynie nakłady zatwierdzone przez pozwaną, podał wartości netto i brutto poczynionych nakładów. Pozwana Gmina kwestionowała możliwość zasądzenia na rzecz powódki kwoty uwzględniającej podatek VAT, podnosząc, że część prac wykonywana była przez pracowników powoda, czyli metodą gospodarczą. Odnosząc się do tego zarzutu Sąd wskazał, że nakłady na nieruchomość, które mają być przedmiotem zwrotu, na gruncie przepisów art. 8 ust. 1 ustawy z dnia 11 marca 2004 r. o podatku od towarów i usług (t.j. Dz. U. z 2011 r. Nr 177, poz. 1054 ze zm.) traktowane są przez organy podatkowe jako odpłatne usługi, a te zgodnie z art. 5 ust. 1 w/w ustawy podlegają opodatkowaniu podatkiem od towarów i usług, także w przypadku, gdy zobowiązanie do zwrotu ich wartości wynika z przepisów o bezpodstawnym wzbogaceniu, jeżeli dotyczy czynnego podatnika podatku VAT. Takie rozumienie pojęcia związane

jest z treścią przepisu art. 47 § 1 k.c. i 48 k.c., których skutkiem jest związanie z własnością gruntu jego części składowych, a więc rzeczy z nim trwale związanych, do których niewątpliwe należą budynki i budowle posadowione przez powódkę. Bez znaczenia pozostaje fakt, że powód błędnie operował pojęciem odstąpienia od umowy. Z tych też względów bez znaczenia pozostaje, czy powód wykonywał pracę poprzez swoich pracowników, czy też metodą zlecania robót innym podmiotom, bowiem całe świadczenie nakładów stanowi usługę. Wynikiem powyższego jest stwierdzenie, że zasądzone w rozpoznawanej sprawie świadczenie wiązać się będzie z obowiązkiem odprowadzenia podatku VAT przez powodową spółkę. Zgodnie zaś z przepisami art. 3 ust. 1 pkt 1 w zw. z ust. 2 ustawy o informowaniu o cenach towarów i usług z dnia 9 maja 2014 r. (Dz. U. z 2014 r., poz. 915), kupujący zobowiązany jest do zapłaty na rzecz przedsiębiorcy za usługę cenę, która obejmuje podatek od towarów i usług. Powyższe wymaga więc uwzględniania podatku VAT w zasądzonej na rzecz powoda kwocie, a więc ustalonej przez biegłego ceny brutto. Rozstrzygnięcie w przedmiocie odsetek Sąd oparł o treść art. 481 w zw. z 455 k.c. Powód uchylił się od skutków oświadczenia woli o zawarciu umowy dzierżawy pismem złożonym pozwanej Gminie dnia 18 listopada 2011 r., jednocześnie wyznaczając jej 14 dniowy termin na zwrot, oznaczając tym samym termin spełnienia świadczenia. Tym samym, zgodnie z wezwaniem, odsetki należą się od dnia 3 grudnia 2011 r. Rozstrzygnięcie o kosztach procesu Sąd oparł o treść art. 102 k.p.c. i art. 113 ust. 3 ustawy o kosztach sądowych w sprawach cywilnych.

Apelację od tego wyroku wniosła strona pozwana, która zaskarżyła wyrok w punkcie 1 i 3 i zarzucając:

-naruszenie przepisów prawa materialnego art. 84 §2 k.c. i art.88§ 1 i 2 k.c. przez wadliwe przyjęcie ,że strona powodowa skutecznie, w terminie ustawowym , uchyliła się od skutków swojego oświadczenia woli w sytuacji

22

gdy spółka Antar Ltd Sp. z o.o. w Lublinie o fakcie toczącego się postępowania zwrotowego dowiedziała się najpóźniej w 2008r., i to ten moment winien być miarodajny dla ustalenia chwili wykrycia błędu w rozumieniu art.88 §2 k.c., §12 umowy dzierżawy z dnia 15 02 2007r. w zw. z art.84 §1 i 2 k.c. przez wadliwe uznanie, że za błąd istotny może być potraktowany fakt braku wiedzy o możliwości nabycia dzierżawionych nieruchomości z uwagi na toczące się postępowanie w przedmiocie zwrotu części wywłaszczonej nieruchomości, w sytuacji gdy §12 umowy potwierdzał tylko uprawnienia wynikające z ustawy o gospodarce nieruchomościami, a powódka wiedziała, że Gmina nie chce zbyć nieruchomości z uwagi na obawę jej podziału, art.509 k.c. w zw. z art.65 k.c. poprzez zaniechanie dokonania wykładni umowy przelewu z dnia 23 09 2009r. zawartej między powodem i jego poprzednikiem i przyjęcie, że przelewem objęte było też oświadczenie prawnokształtujące i możliwość dochodzenia roszczenia o zwrot nakładów , podczas gdy umowa obejmowała tylko cesję praw i obowiązków z umowy dzierżawy, art.226 k.c. w zw. z art.230 k.c. i art.481 §1 k.c. przez orzeczenie o zwrocie nakładów na rzecz powoda w sytuacji gdy nieruchomość objęta umową dzierżawy na która poczynione zostały nakłady nie została wydana pozwanej, co skutkowało ustaleniem roszczenia jako niewymagalnego,

-naruszenie prawa procesowego, a to art.233 §1 k.p.c. w zw. z art.316 k.p.c. przez dokonanie swobodnej oceny dowodów a w szczególności postanowień administracyjnych z dnia 30 04 2008r. i pisma Ministerstwa Infrastruktury z dnia 13 05 2008r. doręczonych do siedziby Spółki, protokołu oględzin z dnia 13 06 2008r. i oświadczeń złożonych w trakcie tej czynności a także zeznań świadków Zbigniewa Dąbka i Krystyny Florek z których wynikało, że Spółka Antar Ltd. Sp.z o.o. uzyskała jasną informację o toczącym się postępowaniu zwrotowym obejmującym części dzierżawionej nieruchomości już w 2008r., art.227 §1 k.p.c. , art.284 k.p.c., art.235 § 1 k.p.c.

i art.233 §1 k.p.c. oraz art.253 k.p.c. przez oparcie orzeczenia na opinii biegłego sporządzonej w oparciu o kosztorysy i bliżej nieokreśloną dokumentację zdjęciową, w sytuacji gdy wcześniej nie doszło do ich formalnego zgłoszenia i dopuszczenia dowodu z tych dokumentów i zdjęć, co skutkuje uznaniem, że biegły opiniował na podstawie nieprawidłowo przeprowadzonych dowodów, art.285 §1 k.p.c. w zw. z art.233 k.p.c. przez pominięcie weryfikacji kosztorysów i ustalenia rzeczywistej wartości nakładów, art.233 k.p.c. przez zaniechanie dokonania przy analizie opinii biegłego oceny dowodów obejmujących faktury VAT, z których wynika, że wartość nakładów przyjęta przez biegłego jest znacznie zawyżona, art.227 §1 k.p.c. w zw. z art.217 §3 k.p.c. i art.227 k.p.c. i art.328 §2 k.p.c. przez bezpodstawne oddalenie wniosku dowodowego o dopuszczenie dowodu z opinii biegłego z zakresu kosztorysowania prac w budownictwie dla ustalenia rzeczywistej wartości nakładów, pominięcie ustalenia i wskazania w uzasadnieniu jakie nakłady zostały poniesione na nieruchomość i jak jest ich wartość, art.224 §1 k.p.c. i art.286 k.p.c. przez przedwczesne zamknięcie rozprawy pomimo nie przeprowadzenia dowodu z opinii innego biegłego,

-sprzeczność istotnych ustaleń Sądu z treścią zebranego materiału dowodowego przez dowolne ustalenie, że powódka wykryła błąd w momencie doręczenia jej pisma Wójta Gminy w roku 2011, podczas gdy cały materiał dowodowy wskazywał, że było to najpóźniej w dniu 27 05 2008r., wnosiła o zmianę wyroku i oddalenie powództwa w całości oraz o zasądzenie na rzecz strony skarżącej kosztów postępowania.

### Sąd Apelacyjny zważył co następuje:

Apelacja jest zasadna. Najistotniejszą i pierwszoplanową kwestią w sprawie było ustalenie , czy oświadczenie woli Spółki Antar przy zawieraniu umowy dzierżawy może być uznane za złożone pod wpływem błędu. Trafny jest zarzut skarżącej Gminy naruszenia przepisów prawa

24

materialnego sformułowany jako naruszenie §12 umowy dzierżawy z dnia 15 02 2007r. w zw. z art.84 §1 i 2 k.c. „ przez wadliwe uznanie, że za błąd istotny może być potraktowany fakt braku wiedzy o możliwości nabycia dzierżawionych nieruchomości z uwagi na toczące się postępowanie w przedmiocie zwrotu części wywłaszczonej nieruchomości, w sytuacji gdy §12 umowy potwierdzał tylko uprawnienia wynikające z ustawy o gospodarce nieruchomościami". Sąd Okręgowy ustalił, że błąd zdaniem powoda dotyczyć miał okoliczności określonych w § 2 i 12 umowy dzierżawy, a więc zapewnienia pozwanej o braku obciążeń, praw rzeczowych i zobowiązań osób trzecich oraz o tym, że nie wie o okolicznościach wyłączających wykorzystanie nieruchomości na teren ośrodka wypoczynkowego oraz przyznania dzierżawcy prawa nabycia przedmiotu dzierżawy w drodze bezprzetargowej, na zasadach określonych w odrębnych przepisach w przypadku zabudowy na podstawie pozwolenia na budowę. Powódka podawała, że były one niezgodne z rzeczywistością, bowiem w odniesieniu do części nieruchomości toczyło się postępowanie administracyjne w przedmiocie zwrotu nieruchomości na rzecz wywłaszczonych właścicieli, o czym poprzedniczka powódki nie wiedziała. Sąd wskazał, że art. 84 k.c. stanowi, że w razie błędu co do treści czynności prawnej można uchylić się od skutków prawnych swego oświadczenia woli. Jeżeli jednak oświadczenie woli było złożone innej osobie, uchylenie się od jego skutków prawnych dopuszczalne jest tylko wtedy, gdy błąd został wywołany przez tę osobę, chociażby bez jej winy, albo gdy wiedziała ona o błędzie lub mogła z łatwością błąd zauważyć; ograniczenie to nie dotyczy czynności prawnej nieodpłatnej (§ 1). Można też powoływać się tylko na błąd uzasadniający przypuszczenie, że gdyby składający oświadczenie woli nie działał pod wpływem błędu i oceniał sprawę rozsądnie, nie złożyłby oświadczenia tej treści, a więc błąd istotny (§ 2). Błąd na który powołuje się podmiot uchylający się od skutków wadliwie złożonego oświadczenia woli

25

musi dotyczyć czynności prawnej i być istotny, chyba, że wywołany był podstępem (art. 86 § 1 k.c.). Z tak prawidłowo rozumianej treści instytucji błędu, Sąd Okręgowy oceniając zebrany materiał dowodowy wyciągnął wadliwe wnioski. Zdaniem Sądu, z czym należy się zgodzić, stronie pozwanej nie można przypisać podstępnego działania mającego na celu wywołanie mylnego wrażenia o rzeczywistości. W ocenie jednak Sądu błąd poprzednika powoda miał miejsce, gdyż dotyczył okoliczności faktycznych związanych bezpośrednio ze statusem prawnym nieruchomości będącej przedmiotem umowy dzierżawy. Zdaniem bowiem Sądu istotnym warunkiem zawarcia umowy była przyszła sprzedaż nieruchomości, a to w związku z toczącym się postępowaniem o zwrot nieruchomości nie było możliwe. Zdaniem Sądu, gdyby spółka wiedziała o tym postępowaniu wykluczającym sprzedaż, takiej umowy by nie zawarła. Stwierdził też Sąd, że był to błąd istotny, sprowadzający się do tego, że gdyby strona znała prawdziwy stan rzeczy, to nie złożyłaby oświadczenia woli tej treści ( czyli nie zawarłaby umowy dzierżawy). Z tym stanowiskiem Sądu nie można się zgodzić. Ustalił Sąd bowiem, że przy negocjowaniu warunków umowy , przedstawiciele Spółki Antar wiedzieli, że Gmina nie ma zamiaru sprzedawać nieruchomości gdyż obawiała się podziału nieruchomości a Gmina chciała zachować jej dotychczasowy charakter ( strona 17 uzasadnienia). Strony umowy, reprezentowane przez profesjonalistów, zawarły jednak umowę w takim kształcie, który, wbrew stanowisku Sądu w żaden sposób nie gwarantował Spółce nabycie nieruchomości na własność. Wskazywany bowiem § 12 umowy, który zdaniem strony powodowej wskazuje na błąd, stanowi jedynie, że Spółka będzie mogła nabyć nieruchomość w trybie bezprzetargowym. Oznacza to tylko to, że w sytuacji, kiedy Gmina podejmie decyzje o sprzedaży, Spółka może nabyć nieruchomość w taki uprzywilejowany sposób. Z treści jednak tego zapisu umowy w żaden sposób nie można wysnuć wniosku o zobowiązaniu Gminy do sprzedaży.

26

Zgodzić się należy ze stroną skarżącą, że taki zapis umowy jest powtórzeniem ustawy o gospodarce nieruchomościami regulującej możliwość nabycia nieruchomości na zasadzie pierwszeństwa. W umowie nie określono ani terminu, ani innych okoliczności po spełnieniu których mogłoby dojść do sprzedaży, a w istocie ten zapis odnosił się tylko do przyszłego, i ewentualnego zachowania Gminy co do sprzedaży. W związku z tym, zdaniem Sądu Apelacyjnego nie można z tego zapisu wywodzić twierdzeń o błędzie Spółki, gdyż nie może być uznane za błąd wyobrażenie o niepewnej przecież, bo niczym nie zagwarantowanej przyszłości. To, że Gmina odmówiła sprzedaży jest zgodne z treścią umowy, która w żadnym miejscu nie zobowiązywała jej do sprzedaży, a jest tylko niespełnieniem oczekiwań drugiej strony umowy, zresztą też nie mających żadnego oparcia w umowie. Konstatując, Spółka Antar z pełną świadomością zawarła umowę dzierżawy, i z umowy tej w żaden sposób nie wynika, że miała co do jej treści błędne, uzasadnione okolicznościami, wyobrażenie. Jej więc oczekiwania co do nabycia nieruchomości na własność w żadnym razie nie mogą być uznane za błąd. Zgodzić się też należy ze stanowiskiem prezentowanym w toku procesu przez stronę pozwaną, że zawarcie umowy takiej a nie innej treści, być może nie do końca korzystnej dla strony powodowej ( odnośnie do przyczyn rozwiązania umowy czy zwrotu nakładów) nie może uzasadniać obecnego powoływania się na błąd. Również zgodna z prawdą była treść § 1 i 2 umowy, gdyż pozwana była i jest właścicielem nieruchomości, nieruchomość nie miała żadnych obciążeń i nie była obciążona jakimkolwiek prawem rzeczowym innych osób takich jak najem, dzierżawa, służebności, prawo użytkowania, hipoteka, użytkowanie wieczyste. Prowadzenie od 1991r. postępowania administracyjnego dotyczącego zwrotu części nieruchomości objętej działką nr 90 nie podpada w żadnym razie pod pojęcie „obciążeń i praw rzeczowych i zobowiązań osób trzecich" o których mowa w § 2 umowy. Paragraf ten nie oznacza bowiem, że obejmuje on

27

roszczenia czy jakiekolwiek uprawnienia osób trzecich. Wspomnieć też należy ustaloną również przez Sąd okoliczność, iż pozwana Gmina przez zawarciem inkryminowanej umowy ze Spółką Antar LTD, sama prowadziła ośrodek z uwagi na brak chętnych podmiotów zewnętrznych, a w ogłoszeniach –kierowanych przecież do wszystkich potencjalnych chętnych- nie wskazywała iż w stosunku do nieruchomości toczy się postępowanie rewindykacyjne, a przeciwnie, informowała o braku obciążeń nieruchomości. Tym samym nie można uznać, że zawarcie takiej informacji w umowie stanowiło błąd wywołany wobec Spółki Antar przez Gminę. Ponadto, co Sąd prawidłowo ustalił, Starostwo Powiatowe zawiadamiało Spółkę Antar o tym, że Jerzy Wojtasiewicz zgłaszał od 1991r. roszczenie o zwrot części działki nr 90. W czerwcu 2008r. w związku z postępowaniem o stwierdzenie nieważności decyzji Prezesa Urzędu Mieszkalnictwa i Rozwoju Miast z dnia 22 03 2000r. utrzymującej w mocy decyzję Wojewody Lubelskiego z dnia 14 grudnia 1998r. odmawiającej zwrotu przedmiotowej nieruchomości przeprowadzono oględziny nieruchomości z udziałem przedstawiciela-profesjonalnego pełnomocnika- Spółki, o terminie których spółka była wcześniej informowana. Oględziny te, co jest oczywiste, były prowadzone w związku z w/w postępowaniem administracyjnym dotyczącym zwrotu nieruchomości , przedstawiciel Spółki brał w tych czynnościach udział, czyli fakty dotyczące postępowania zwrotowego były w tej dacie Spółce doskonale znane. Sąd Okręgowy wskazuje na te kwestie ( strona 15 ,16 , 30 , 31 , 32 uzasadnienia) i podnosi, że okoliczności te niewątpliwie pozwalały Spółce na wykrycie błędu, tym bardziej, że postanowienia wydawane przez Starostę Łęczyńskiego doręczane Spółce zawierały informację o postępowaniu w sprawie zwrotu działki. Te ustalenia zostały jednak przez Sąd ocenione wadliwie, bowiem nie można zaaprobować stanowiska ,iż nieinformowanie Spółki przez Gminę o toczącym się postępowaniu o zwrot nieruchomości uzasadniały przekonanie Spółki,

28

że takie okoliczności nie występują. Jest to dalece idąca niedorzeczność, bowiem przecież niesporne jest i Sąd to ustalił, że Spółka doskonale wiedziała, ze takie postępowanie się toczy. Nie można więc zaakceptować stanowiska Sądu, że Spółka dopiero z pisma Wójta dowiedziała się formalnie, że toczy się takie postępowanie. Ponadto, co kompletnie uszło uwadze Sądu, nawet fakt toczącego się postępowania o zwrot części nieruchomości stanowiącej przedmiot umowy dzierżawy w żadnym razie nie umożliwia korzystania z tej nieruchomości zgodnie z umową. Odnośnie do kwestii dotyczącej możliwości kupna nieruchomości, zdaniem Sądu Apelacyjnego- o czym wyżej- nie można przyjąć, że Spółka pozostawała w błędzie. Natomiast fakt prowadzenia postępowania o zwrot-chociaż zdaniem Sądu Apelacyjnego nie może być uznany za wprowadzenie Spółki w błąd o czym też wyżej, był znany Spółce co najmniej w czerwcu 2008r. ( data oględzin ). Nawet więc przy teoretycznym przyjęciu, że Spółka mogła brak tej informacji uznać za błąd co do treści czynności prawnej, termin do uchylenia się od skutków minął w czerwcu 2009r. W sprawie jest też istotna jeszcze jedna okoliczność, a mianowicie fakt, że oświadczenie o uchyleniu się od skutków oświadczenia umownego, jako prawnokształtujące powinna złożyć strona zawierająca mowę. Nie można zaaprobować stanowiska Sądu, iż umowa przelewu skutecznie przeniosła takie uprawnienie na powoda. W ocenie Sądu Apelacyjnego na takie oświadczenie może powołać się strona , która takie wadliwe oświadczenie pod wpływem błędu złożyła. Strona powodowa mogłaby więc ewentualnie powoływać się na istotny błąd dotyczący umowy cesji, ale nie umowy zawartej przez swojego poprzednika prawnego. Z umowy przelewu wynika ponadto, że cedent przenosi na cesjonariusza ogół praw i obowiązków wynikających z umowy dzierżawy za kwotę 262 298,96 zł netto ( co stanowiło wartość dzierżawy ośrodka) co może uprawniać do stwierdzenia, że umowa ta przenosiła tylko prawa i obowiązki związane z dzierżawą. Niezależnie też od powyższego wskazać

29

należy, że w dacie zawierania umowy cesji to jest w dniu 23 09 2009r. Spółka Antar nie mogła takiego uprawnienia scedować, ponieważ już go nie posiadała. Termin do uchylenia się przez tę Spółkę od oświadczenia woli upływał bowiem najpóźniej w czerwcu 2009r. W związku z powyższym za zasadne uznać należy zarzuty naruszenia prawa materialnego art.84 §1 k.c. , art.88 §1 i 2 k.c., § 12 umowy dzierżawy, art.509 k.c. Trafne też są w związku z powyższym zarzuty naruszenia prawa procesowego sprowadzające się do wskazania błędnej oceny prawidłowo zgromadzonego materiału dowodowego, w szczególności treści umowy dzierżawy, umowy cesji, dokumentów wskazujących na wiedzę Spółki o toczącym się postępowaniu zwrotowym co skutkowało również niezasadnym przyjęciem zachowania terminu do uchylenia się od skutków złożonego oświadczenia. W sytuacji uznania zasadności tych zarzutów nie ma potrzeby odnoszenia się do zarzutów dotyczących oceny opinii biegłego i wartości nakładów. Mając na uwadze powyższe i w oparciu o art. 386 §1 k.p.c. oraz art.98 §1 i 3 k.p.c. w zw. z §2 ust.7 rozporządzenia Ministra Sprawiedliwości z dnia 28 09 2002r. w sprawie opłat za czynności adwokackie.. (Dz.U. z 2013r. poz. 461 ze zm.) oraz § 2 pkt 7 w zw. z § 10 ust.1 pkt 2 rozporządzenia Ministra Sprawiedliwości z dnia 22 10 2015r. w sprawie opłat za czynności adwokackie ( Dz.U. poz.1800 **) Sąd Apelacyjny orzekł jak w sentencji.**

Za zgodność z oryginałem
świadczy:
sekretarz sądowy

mgr inż. Magdalena Szymaniak